IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES FIDELITY &<br>GUARANTY COMPANY,<br><br><br><br>          Plaintiff,<br><br>     vs.<br><br><br>LEE INVESTMENTS LLC dba THE<br>ISLAND, et al.,<br><br><br>          Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. CV-F-99-5583 OWW/SMS<br><br>MEMORANDUM DECISION GRANTING<br>MOTION FOR INJUNCTION<br>AGAINST DEFENDANT AND<br>COUNTERCLAIMANT LEE<br>INVESTMENTS LLC FROM<br>PROCEEDING WITH REQUEST FOR<br>ARBITRATION OR OTHER<br>ADJUDICATION OF THE<br>COMPLAINT FOR RESCISSION OF<br>USF&G BEFORE THE WORKERS'<br>COMPENSATION APPEALS BOARD<br>(Doc. 826) |

        Plaintiff and Counter-Defendant United States Fidelity &
Guaranty Company (USF&G) and Counter-Defendant American Specialty
Insurance Services (American Specialty) move for the issuance of
an injunction barring Defendant and Counter-Claimant Lee
Investments LLC dba The Island (Lee) from pursuing arbitration or
other adjudication of USF&G's complaint for rescission before the
California Workers' Compensation Appeals Board.  USF&G and

1

American Specialty move pursuant to 28 U.S.C. § 1651 and 28 U.S.C. § 2283, on the ground that the injunction is necessary to protect or effectuate the judgment issued in this action by the District Court.  This motion is joined by Aon Risk Services, Inc. of Central California (Aon).  The motion is  opposed by Lee on the merits.

On March 1, 2007, following an extended jury trial, a "Partial Judgment on Jury's Verdicts Upon Multiple Claims Involving Multiple Parties (Fed.R.Civ.P. 55(b))", (Doc. 681), was entered:

> This case was tried before a jury commencing January 29, 2007, and concluded upon the return, by the jury, of its verdicts on February 26, 2007.  The case involves more than one claim for relief, including counter-claims and third-party claims and involved multiple parties.  The parties have reserved, by written stipulation and order: USF&G's alter ego claims against Richard K. Ehrlich, an individual, et al., the determination of the amount of attorneys' fees and interest claimed by USF&G; and the claim of Aon Risk Services Inc. of Central California Insurance Services ('Aon') for relief based on the tort of another.  All other claims of the parties were adjudicated by the jury, including USF&G's claim for rescission based on fraud; all claims of Lee Investments LLC, dba The Island, a California limited liability company.  Any claims as to Diane Conley have been determined by the parties' stipulation.
>
> Due to the prior delay in, complexity and contentiousness of this litigation, to avoid uncertainty and inconsistent verdicts, there is no just reason for delay and partial judgment should now therefore be entered.
>
> Based on the jury's written verdicts returned in open court February 26, 2007, the following verdicts were rendered:

2

**A.  The jury's verdicts finding in favor of USF&G on its claim for rescission finding fraud and intentional concealment; finding against Lee on all Lee's defenses of statutory waiver, common law waiver, estoppel, unreasonable delay, wrongful conduct, and awarding USF&G restitution damages in the amount of $875,034.99.**

**B.  On Lee's claims against USF&G, American Specialty and Aon, finding in favor of USF&G, American Specialty, and Aon and against Lee on all Lee's claims for fraud/intentional misrepresentation; concealment; conspiracy; negligent misrepresentation; and negligence. Finding against Lee and in favor of Aon on Lee's claim for breach of an oral contract against Aon.  Finding in favor of USF&G, American Specialty and Aon and against Lee on all their defenses to Lee's claims based on fraud of Lee; negligent misrepresentation by Lee; estoppel against Lee; wrongful conduct by Lee; common law waiver against Lee; as to Aon against Lee due to Lee's intentional tort as superseding cause; as to Aon, no unreasonable delay by Lee; and in favor of Aon and against Lee on Aon's defense of assumption of risk.**

**C.  On all Aon's claims against Lee, finding in favor of Aon and against Lee on Aon's claims for intentional misrepresentation, negligent misrepresentation and that Lee was 100% comparatively at fault; in favor of Aon's claim of negligence against Lee; that Aon was not negligent.  Finding in favor of Aon and against Lee on all Lee's affirmative defenses to Aon's claims, including fraud, negligent misrepresentation, estoppel, no wrongful conduct by Aon; no common law waiver by Aon, no unreasonable delay by Aon.**

**Accordingly, on each of these claims and defenses, JUDGMENT IS ENTERED AS FOLLOWS:**

**1.  In favor of USF&G and against Lee for rescission and USF&G shall recover from Lee restitutionary damages of $875,034.99;**

**2.  Against Lee on all Lee's defenses to USF&G'S claims for rescission;**

3

1    3.   Against Lee on all its claims and in
     favor of USF&G, American Specialty and Aon
2    against Lee and in favor of USF&G, American
     Specialty and Aon on all their affirmative
3    defenses to Lee's claims;

4    4.   In favor of Aon on all its claims and
     against Lee; and against Lee in favor of Aon
5    on all on [sic] Lee's affirmative defenses to
     Aon's claims; and

6

7    5.   USF&G, American Specialty and Aon shall
     recover costs of suit.

8    Also on March 1, 2007, a "Stipulation and Order Regarding Issues

9    To Be Determined By The Court" was filed, (Doc.682):

10   The parties hereto, by and through the
     undersigned, hereby stipulate and agree that
11   the Court, acting without a jury, will hear
     and decide the following issues:
12

13   1.   Whether any of Aon's claims
     against Lee are barred by
     applicable statutes of limitations;
14

15   2.   Whether any party is entitled
     to, and the extent of the reduction
16   in damages, if any, arising from
     the affirmative defense of failure
17   to mitigate;

18   3.   Whether USF&G is entitled to
     restitution of any amount in light
19   of Aon and Lee's contention that
     USF&G did not actually incur the
20   costs or expenses associated with
     Ms. Conley's injury (i.e. whether
21   USF&G is the real party in
     interest);

22   4.   The amount, if any, of
     restitution that USF&G is entitled
23   to recover from Lee for fees, costs
     and expenses paid allegedly to
24   defend Lee in the Worker's
     Compensation proceeding (and
25   whether USF&G is the real party in
     interest in relation to this
26   restitution);

5. The amount, if any, of punitive damages to which Lee is entitled if the jury makes the necessary factual determinations;

6. If applicable, the amount of damages, if any, Lee suffered and is entitled to recover against any liable party under their fraud, negligent misrepresentation, and negligence claims.

7. If applicable, the amount of damages, if any, Aon suffered and is entitled to recover against Lee under their fraud, negligent misrepresentation, and negligence claims;

8. If applicable, the amount of damages Lee suffered and is entitled to recover from Aon for breach of oral contract.

The parties understand and agree to waive their Seventh Amendment right to a jury trial on these issues.

Lee filed three post-trial motions: (1) a motion for new trial; (2) a motion for judgment pursuant to Rule 50(b), Federal Rules of Civil Procedure; and (3) a motion to vacate partial judgment or jury verdicts upon multiple claims involving multiple parties or to alter or amend the partial judgment pursuant to Rules 59(e) and 60(a) & (b), Federal Rules of Civil Procedure. All of these post-trial motions were denied by memorandum decisions filed on March 18, 2008.[1]

_____

[1]Certain technical and nonsubstantive changes were made to the Partial Judgment in the Memorandum Decision issued in connection with Lee's motion to vacate the Partial Judgment or to alter or amend the Partial Judgment.

On March 30, 2007, Lee filed a Notice of Appeal from the Partial Judgment.  (Doc. 728).  On April 18, 2007, an "Order on Request of Parties for Temporary Stay of Appeal Pending Entry of Final Judgment of District Court," (Doc. 770), was filed:

> A bench trial to determine additional issues and damages to complete trial of the action was scheduled for April 4, 2007.  That trial was held April 4 through April 7, 2007, and the parties are submitting supplemental authorities and the matter will be finally submitted for decision as of April 30, 2007.

> Lee has timely filed and served three post-trial motions in the District Court: 1) a Motion to Vacate or, in the Alternative, to Alter, Amend [sic] the Judgment; 2) a Motion for Judgment as a Matter of Law; and 3) a Motion for New Trial, following the entry of the Partial Judgment on Jury Verdicts.  These motions are scheduled to be heard April 30, 2007.

> The parties have stipulated and the Court believes that it would be most prudent and would conserve the time, resources and serve judicial economy, for a partial stay of the appeal to be entered pending entry of final judgment following the jury and bench trial on the first and second phase issues.

> Respectful request is made that the Court of Appeal enter an interim stay of the appeal in this case of the Jury Verdicts and Partial Judgment pending entry of the Judgment on the issues to be tried to the Court without a jury.

On May 17, 2007, the Ninth Circuit issued an Order stating that "[t]he district court's order challenged in this appeal did not dispose of the action as to all claims and all parties" and that "appellant shall move for voluntary dismissal of this appeal or show cause why it should not be dismissed for lack of

1    jurisdiction."  On September 17, 2007, Lee's appeal of the

2    Partial Judgment was dismissed by the Ninth Circuit for lack of

3    jurisdiction.  (Doc. 814).

4       The Court trial conducted on April 4-6, 2007 was fully

5    briefed and proposed findings of fact and conclusions of law and

6    objections thereto submitted by May 2, 2007.

7       A.  <u>Governing Standards</u>.

8       28 U.S.C. § 1651(a) provides that "[t]he Supreme Court and

9    all courts established by Act of Congress may issue all writs

10   necessary or appropriate in aid of their respective jurisdictions

11   and agreeable to the usages and principles of law."

12       28 U.S.C. § 2283 provides that "[a] court of the United

13   States may not grant an injunction to stay any proceedings in a

14   State court except as expressly authorized by Act of Congress, or

15   where necessary in aid of its jurisdiction, or to protect or

16   effectuate its judgments."  Here, the injunction is sought "to

17   protect or effectuate" the Partial Judgment entered by this Court

18   on March 1, 2007.

19       This exception in the Anti-Injunction Act is known as the

20   relitigation exception.  *Merle Norman Cosmetics, Inc. v. Victa*,

21   936 F.2d 466, 468 (9th Cir.1991).  As explained in *Brother*

22   *Records, Inc. v. Jardine*, 432 F.3d 939, 942-943 (9th Cir.2005):

23            This exception is grounded in 'the well-
             recognized concepts of res judicata and

24            collateral estoppel,' ... and is intended to
             'prevent the harassment of successful federal

25            litigants through repetitious state
             litigation[.]' ... Thus, the exception

26            permits a district court to enjoin state

> court litigation if that litigation is barred
> by the res judicata effect of the district
> court's earlier judgment.

"[A] decision whether to enjoin a state court proceeding pursuant to the narrow exceptions to the Anti-Injunction Act is committed to the discretion of the district court." *Bechtel Petroleum, Inc. v. Webster*, 796 F.2d 252, 253 (9th Cir.1986). "Doubts as to the appropriateness of an injunction should be 'resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Id.* "'We take the view that a complainant must make a strong and unequivocal showing of relitigation of the same issue in order to overcome the federal courts' proper disinclination to intermeddle in state court proceedings. If we err, all is not lost. A state court is as well qualified as a federal court to protect a litigant by the doctrines of res judicata and collateral estoppel.'" *Id.* As explained in *Blalock Eddy Ranch v. MCI Telecommunications Corp.*, 982 F.2d 371, 375 (9th Cir.1992):

> In determining whether the injunction ...
> falls within the scope of the relitigation
> exception, we first examine whether there
> could be an actual conflict between the
> subsequent state court judgment and the prior
> federal judgment. If such a conflict is
> possible, then the district court could
> properly enjoin the state court proceedings
> ... However, even if no actual conflict is
> possible, the injunction could still be
> proper if res judicata would bar the state
> court proceedings.

*See also G.C. and K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1107 (9th Cir.2003).

1    The essential issue in resolving this motion is the effect

2  of the Partial Judgment entered pursuant to Rule 54(b), Federal

3  Rules of Civil Procedure.[2]

4    Movants argue that an injunction under the relitigation

5  exception applies to a partial judgment under Rule 54(b).

6    Movants cite *Rutledge v. Scott Chotin, Inc.*, 972 F.2d 820

7  (7th Cir.1992).   Rutledge brought a suit for personal injuries

8  under the Jones Act, 46 U.S.C. App. § 688, and general maritime

9  law after his claims had been dismissed by the Illinois state

10  court on grounds of forum non conveniens.   The District Court

11  granted summary judgment in favor of defendants and enjoined

12  Rutledge from seeking reinstatement of the state court action.

13  The Seventh Circuit held:

14          In this case, Chotin's motion for summary
            judgment had previously been granted on
15          COUNTS I and II, but COUNTS III and IV
            remained outstanding.   Judge Mihm had not yet

16  _____

17          [2]Rule 54(b), Federal Rules of Civil Procedure, provides:

18          When an action presents more than one claim
            for relief - whether as a claim, counterclaim,
19          crossclaim, or third-party claim - or when
            multiple parties are involved, the court may
20          direct entry of a final judgment as to one or
            more, but fewer than all, claims or parties
21          only if the court expressly determines that
            there is no just reason for delay.   Otherwise,
22          any   order   or   other   decision,   however
            designated, that adjudicates fewer than all
23          the claims or the rights and liabilities of
            fewer than all the parties does not end the
24          action as to any of the claims or parties and
            may be revised at any time before the entry of
25          a judgment adjudicating all the claims and all
            the parties' rights and liabilities.

26

9

entered a final judgment on COUNTS I and II under Fed.R.Civ.P. 54(b) at the time Rutledge filed his motion to reinstate in the state court.  Judge Mihm did, however, enter a final judgment on COUNTS I and II under Rule 54(b) simultaneously with his order of injunctive relief.

A federal court may employ the relitigation exception to § 2283 in order to protect a final judgment entered under Rule 54(b). *Donelon v. New Orleans Terminal Co.*, 474 F.2d 1108, 1113 (5th Cir.1973).  In *Donelon*, the Fifth Circuit stated that the injunctive order was granted after the court made the partial summary judgment order final under Rule 54(b), but both orders appear to have been entered on the same day.  We see no reason for requiring that the district court direct entry of final judgment under Rule 54(b) by a separate order.  Since the order directing entry of final judgment on COUNTS I and II was included within the injunction order, Judge Mihm's injunctive order was appropriate ... as an order to protect or effectuate a final judgment.

972 F.2d at 824-825.  *See also* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4226, p.550.

Movants argue that the Partial Judgment bars Lee's attempt at relitigation because the Partial Judgment is res judicata. Movants cite *Continental Airlines, Inc. v. Goodyear Tire & Rubber Company*, 819 F.2d 1519 (9th Cir.1987), and *Acuna v. Regents of University of California*, 56 Cal.App.4th 639 (1997).

In *Continental Airlines*, after a serious accident involving a Continental DC-10 aircraft, Continental filed two suits, one state and one federal.  In state court, Continental sued McDonnell Douglas Corporation (MDC) and Sargent Industries, supplier of escape slides.  In federal court, Continental sued

Goodyear and B.F. Goodrich, each of which had supplied one of the two blown-tires.  MDC unsuccessfully attempted to remove the state court action to federal court.  When removal was denied for lack of subject matter jurisdiction, MDC filed a federal declaratory judgment action in which it named Continental, Sargent, Goodyear and Goodrich as defendants, basing jurisdiction on diversity.  All federal actions were consolidated. Proceedings in Continental's remanded case continued independently in state court.  In early 1985, MDC sought summary judgment in its federal action.  At the same time, Continental moved to dismiss or stay MDC's federal action in favor of the state litigation.  The District Court denied Continental's motion to dismiss and granted partial summary judgment in favor of MDC, ruling that MDC's exculpatory clause was enforceable under California law and effective against Continental's negligence and strict liability claims as to loss of the aircraft.  The partial summary judgment did not reach Continental's fraud or breach of warranty theories of recovery or its passenger indemnification claims.  Later in 1985, the District Court also granted partial summary judgment to the parts manufacturers on the basis of its holding that MDC's exculpatory clause barred any action against them for damage to the airplane.  On motion by MDC and the parts manufacturers shortly before the state trial was to begin, the District Court certified these partial summary judgments as final for appeal under Rule 54(b).  The state court correctly held that these judgments, because certified as final, were res judicata

1    for purposes of the state jury trial.  Nevertheless, Continental

2    pursued and prevailed on its fraud/breach of warranty claims for

3    damage to the aircraft, which state court judgment was on appeal

4    in the higher California courts.  During the trial, the parties

5    settled passenger indemnity claims.  Only the loss of the

6    aircraft remained at issue.  810 F.2d at 1521-1522.  On appeal to

7    the Ninth Circuit, Continental challenged appellate jurisdiction,

8    on the ground that the Rule 54(b) certification of the judgments

9    was an abuse of discretion because the requirements of Rule 54(b)

10   were not met and the purpose of the certifications was to

11   generate a res judicata effect.  *Id.* at 1524.  After concluding

12   that the Rule 54(b) certification was proper, the Ninth Circuit

13   held:

14            This case raises the question, which we
             believe is novel in this circuit, of whether
15            a 54(b) certification may be awarded for the
             purpose of procuring res judicata effects
16            elsewhere.  At least two circuits have
             suggested it may ... Continental would have
17            us hold that a judgment's res judicata effect
             is an improper consideration in determining
18            whether to certify it for appeal under Rule
             54(b).  This we decline to do.  Because a
19            Rule 54(b) ruling in fact has res judicata
             ramifications, which are potentially very
20            important, it would be unsound and
             ineffectual to hold that the district courts
21            may not consider this factor in deciding for
             or against certification.

22
             We do not wish to encourage the district
23            courts to use their 54(b) powers to promote a
             race to judgment or to 'snatch from the state
24            courts' a dispute properly litigated there
             ... But we would be reluctant to adopt a rule
25            that, in the circumstances of complex
             parallel state and federal litigation, the
26            district court must either become inactive or

                                  12

1          incur the risk of wasting its efforts.  We
           hold that an otherwise permissible 54(b)
2          certification designed to produce res
           judicata effects in another forum was proper
3          under the circumstances.

4    *Id.* at 1525.

5         In *Acuna*, Acuna applied for a tenured position at UCSB.

6    After his application was denied, Acuna filed suit against the

7    Regents and individual University employees in state court

8    alleging violations of the FEHA based on race, ethnicity, and

9    age, employment discrimination based on Acuna's political views

10   and speech, and age discrimination under the ADEA.  The action

11   was removed to federal court.  The Regents moved to dismiss the

12   state causes of action as barred by the Eleventh Amendment.

13   Acuna filed a cross-motion to remand the FEHA causes of action to

14   state court.  The District Court remanded the FEHA causes of

15   action and retained jurisdiction over the ADEA claim.  Acuna

16   amended the federal complaint to include causes of action for

17   race and ethnic discrimination under Title VII.   The District

18   Court granted summary judgment for the Regents on the Title VII

19   causes of action.  Acuna proceeded to trial on the ADEA claim and

20   was awarded damages and attorney's fees against the Regents.

21   Because the ADEA claim did not permit general or punitive

22   damages, the District Court entered judgment for the individual

23   employees under the ADEA claim because they had no personal

24   liability under the ADEA.  In the state court action, the Regents

25   and employees were granted summary adjudication on the cause of

26   action for speech discrimination as barred by the statute of

                                   13

limitations.  Acuna then filed an amended complaint alleging

causes of action for race, ethnic and age discrimination in

violation of the FEHA which were identical to the Title VII

claims but sought damages under the FEHA.  The Regents/individual

employees were granted summary adjudication on the FEHA claims as

barred by the federal summary judgment.  The state trial court

stayed the action on the age discrimination claim until the

federal ADEA action was tried.  Thereafter, the Regents were

granted summary judgment on the FEHA age discrimination claim on

the ground that it was barred by the federal judgment against the

Regents.  The Court of Appeal affirmed the trial court's rulings

that the federal judgments barred Acuna's state law claims

because they arose from the same primary right.  *Id.* at 648-649.

The Court of Appeal further ruled:

> Appellant asserts that the federal summary
> judgment was an interlocutory order and not
> final.  We disagree.  '"[A] judgment or order,
> once rendered, is final for purposes of res
> judicata until reversed on appeal or modified
> or set aside in the court of rendition."
> ....' ....

*Id.* at 649-650.

Movants argue that the Ninth Circuit's dismissal of Lee's

Rule 54(b) appeal of the Partial Judgment for lack of

jurisdiction does not invalidate the Partial Judgment, citing

*Tripati v. Henman*, 857 F.2d 1366, 1367 n.1 (9th Cir.1988):

> We note that a pending Rule 59 motion
> deprives a case of finality for appellate
> jurisdiction purposes - indeed, this was the
> reason we remanded action #1 for
> consideration of the motion ... This

14

observation does not suggest, however, that a pending Rule 59 motion deprives the judgment of finality for preclusion purposes. *See* 18 C. Wright, A. Miller, & E. Cooper, *supra*, at 4432, p.299 ('it is clear that definitions of finality cannot automatically be carried over from appeals cases to preclusion problems'). The policies served by the finality requirement are very different in the two instances. In the case of appellate jurisdiction, the requirement ensures that appellate courts do not waste time reviewing cases whose outcome might change. By setting the point of 'finality' after the disposition of the Rule 59 motion, we save trial courts and appellate courts from duplicating each other's work. In the case of preclusion, the finality requirement ensures that parties have a full opportunity to litigate a claim before they are barred from asserting it again. The claim has already been fully litigated by the time a Rule 59 motion is pending; the considerations of economy underlying preclusion militate in favor of setting the point of 'finality' sooner rather than later.

Lee argues that the Partial Judgment entered under Rule 54(b) is not final and cannot be res judicata. Lee cites *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978): "Federal appellate jurisdiction generally depends on the existence of a decision by the District Court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Lee acknowledges that a final judgment may be entered pursuant to Rule 54(b) that disposes of less than all claims in a pending action or against less than all of the parties if the District Court makes "an express determination that there is no just reason for delay." Lee then sets forth the standards governing Rule 54(b) certification and argues that the Court

15

should not certify the Partial Judgment under Rule 54(b) at this juncture.

Lee's position is baffling.  The Partial Judgment was entered and certified by the Court under Rule 54(b).  Lee's arguments that certification now would be improper are simply wrong.  The Partial Judgment's purpose was to conclude this seemingly endless litigation over insurance coverage. However, as explained in Moore's Federal Practice 3rd, § 54.28[1]:

> A district court has the power to enter a
> Rule 54(b) judgment with respect to an order
> that: (1) finally disposes of one or more but
> fewer than all of the claims for relief; or
> (2) finally disposes of all of the claims
> asserted by or against one or more but fewer
> than all of the parties ... Rule 54(b) does
> not and cannot relax in any way the statutory
> requirement of finality, and by its own terms
> establishes the minimum unit of disposition.
> Both requirements are jurisdictional
> prerequisites to the exercise of the district
> court's power.  If the court enters judgment
> under Rule 54(b) on an order that is either
> nor final or does not dispose of at least one
> claim for relief or all of the claims by or
> against at least one party, the judgment is
> beyond the power of the district court, and
> the court of appeals must dismiss any appeal
> from the judgment, unless there is some
> independent basis for appeal of the order.

Lee contends that a Partial Judgment that is not reviewable cannot be the basis for claim preclusion.  Lee cites Moore's Federal Practice 3rd § 131.30(2)(c)(i):

> Generally, a ruling that is not appealable
> cannot be the basis for claim preclusion.
> Thus, such interim rulings as a finding of
> liability without determination of the
> appropriate relief, or denial of a summary
> judgment motion, cannot be the basis for
> application of the claim preclusion doctrine.

> Although the concept of a final judgment for purposes of claim preclusion parallels in many respects the requirement under 28 U.S.C. § 1291 for appeals only from 'final decisions' of district courts, the analogy with appealable orders and judgments cannot be carried too far.  The Supreme Court has construed the term 'final decision' to embrace some collateral orders the effect of which cannot be rectified on appeal from final judgment.  Furthermore, 28 U.S.C. § 1292 provides for appeals of certain interlocutory orders.  Even though such matters are 'appealable,' they could not be the basis for claim preclusion.

The Ninth Circuit dismissal of Lee's appeal from the Partial Judgment for lack of jurisdiction simply means that the Court of Appeal found that the existence of undecided claims prevented entry of judgment.

Lee argues that, because subject matter jurisdiction in this action is based on diversity, the Court must apply the preclusion law to the Partial Judgment that the California courts would apply.  *See Giles v. General Motors Acceptance Corp.* 494 F.3d 865, 884 (9th Cir.2007), citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-509 (2001).

In *Semtek*, a plaintiff, whose claims under California law had been dismissed by the District Court in California as barred by the California statute of limitations, brought an action in Maryland state court asserting similar claims under Maryland law.  The Maryland state court dismissed plaintiff's action on res judicata grounds.  The Supreme Court held that the claim preclusive effect of the federal diversity court's dismissal was governed by the federal rule that in turn incorporated the forum

state's law of claim preclusion.  In so ruling, the Supreme Court cautioned:

> This federal reference to state law will not obtain, of course, in situations in which the state law is incompatible with federal interests.  If, for example, state law did not accord claim-preclusive effect to dismissals for wilful violation of discovery orders, federal courts' interest in the integrity of their own processes might justify a contrary federal rule.  No such conflict with potential federal interests exists in the present case.  Dismissal of this state cause of action was decreed by the California federal court only because the California statute of limitations so required; and there is no conceivable federal interest in giving that time bar more effect in other courts that the California courts themselves would impose.

531 U.S. at 1028-1029.

"The doctrine of res judicata applies only to judgments and orders that are final in the sense that no further judicial act remains to be done to end the litigation.  Intermediate determinations, such as rulings on motions and interlocutory orders, are not conclusive."  7 Witkin, California Procedure, Judgment, § 363, p.985.  "A judgment or order may be final in nature, but it does not become res judicata until it is final in the other sense of being free from direct attack.  Hence, while an appeal is pending or, though no appeal has yet been taken, the time for appeal has not expired, the judgment is not conclusive." *Id.*, § 364.  "'"California and federal law differ in their definition of finality for purposes of res judicata.  The pendency of an appeal precludes finality under California law,

but, under federal law and the law of many other states, the pendency of an appeal does not alter the res judicata effect of an otherwise final judgment." ...'....." *Nathanson v. Hecker*, 99 Cal.App.4th 1158, 1163 n.1 (2002), quoting *In re Bellucci*, 119 B.R. 763, 768-769 (E.D.Cal.Bkrptcy 1990).

Relying on this authority, Lee contends that the Partial Judgment is not res judicata to the WCAB proceeding and, therefore, "the parallel state action by definition does not seek to relitigate issues that were already finally adjudicated in the federal system and the relitigation exception of the AIA does not apply." This assertion is incomprehensible. The issues surrounding issuance of the insurance policy have been fully litigated and jury verdicts entered. Lee sought a jury trial, and only when the jury decided every issue against Lee, now seeks to avoid the effects of the trial following which the Partial Judgment was entered. It will be the height of judicial waste to permit Lee to yet again, a fourth time, seek to relitigate the issues, going backward to an administrative hearing.

Movants respond that the finality of the Partial Judgment is not determined by state law. They cite *Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir.2006). In *Sosa*, DIRECTV sent thousands of demand letters alleging that the recipients had accessed DIRECTV's satellite television signal illegally and would be sued if they did not quickly settle DIRECTV's claims against them under the Federal Communications Act. Plaintiffs, including Sosa, filed an action in the California Superior Court, referred

to as the *Blanchard* case, alleging that the letters constituted

extortion and violated California's unfair business practices

statute.   DIRECTV filed a motion to strike under California's

anti-SLAPP statute, which was granted by the state court.   Sosa

appealed.   Thereafter, Sosa filed an action in the District Court

against DIRECTV, alleging claims for violation of RICO based on

extortion and mail fraud.   DIRECTV filed a motion to dismiss,

alleging that Sosa failed to state a claim under RICO and that

Sosa's claims were barred by various abstention doctrines and the

*Noerr-Pennington* doctrine.   The District Court granted DIRECTV's

motion to dismiss solely on the *Noerr-Pennington* doctrine.   Sosa

appealed the dismissal to the Ninth Circuit.   After the federal

action was dismissed but before the hearing on Sosa's appeal, the

California Court of Appeal affirmed the anti-SLAPP ruling and the

California Supreme Court denied review.   DIRECTV argued to the

Ninth Circuit that it need not address the merits of the District

Court's dismissal because, under the doctrine of res judicata,

the state court decision in the *Blanchard case* precludes the

District Court case.   The Ninth Circuit held:

> Like the federal courts, California courts
> recognize the rule that where parallel
> litigation is pending in different tribunals,
> the first case to reach final judgment is
> accorded preclusive effect, regardless of the
> order in which the cases were filed ....
> California and federal law differ, however,
> with respect to when a judgment rendered by a
> trial court becomes a 'final judgment' for
> res judicata purposes.   'Under California
> law, ... a judgment is not final for purposes
> of res judicata during the pendency of and
> until resolution of an appeal.' ... The

judgment in the *Blanchard* litigation is now final, because there has been a decision on appeal as well as the denial of review by the California Supreme Court.

In contrast, '[i]n federal courts, a district court judgment is "final" for purposes of res judicata.' ... This is so even during the pendency of an appeal ... Moreover, '[a] federal [district court] judgment is as final in California courts as it would be in federal courts.' ....

437 F.3d at 928.  Because the District Court reached the merits and entered judgment before the *Blanchard* plaintiffs had exhausted their appeals and because of the differing rules governing the finality of state and federal judgments, the *Blanchard* state case could not be given preclusive effect.  *Id.*

Movants also cite *Lumpkin v. Jordan*, 49 Cal.App.4th 1223 (1996).  Lumpkin filed suit in state court against the Mayor of San Francisco, alleging employment discrimination on the basis of religion in violation of the FEHA.  The state court action was removed to the District Court, the City was added as a defendant, and a claim for deprivation of the right to exercise constitutionally protected religious beliefs in violation of 42 U.S.C. § 1983 was alleged.  The District Court granted summary judgment for the Mayor and the City on all claims, except for claims based on the FEHA over which the District Court declined to exercise supplemental jurisdiction.  The state FEHA claims were dismissed without prejudice to refiling in the state court. Lumpkin appealed the summary judgment ruling to the Ninth Circuit.  While that appeal was pending, Lumpkin filed his FEHA

21

claims against the Mayor and the City in state court.  The Mayor
and the City successfully demurred on the ground that the summary
judgment ruling was final under federal law and operated as
collateral estoppel on the issue of Lumpkin's removal for
religious belief.  The Court of Appeal affirmed, ruling that all
of prerequisites for the application of collateral estoppel were
satisfied, i.e., the parties were in privity; the federal summary
judgment was a judgment on the merits, and the federal court's
ruling on summary judgment, even though appealed, is final under
the federal rule.  *Id.* at 1230-1231.

Movants argue that *Semtek* is not controlling because *Semtek*
had nothing to do with the finality of the federal decision.

The fact that the Ninth Circuit dismissed Lee's appeal from
the Partial Judgment for lack of jurisdiction does not preclude
application of the relitigation exception.  The Partial Judgment
is now final on all issues related to the insurance contract.
The jury rendered its verdicts and all post-trial motions
directed to the jury trial and the jury's verdicts have been
decided.

Movants argue that the injunction should issue because a
determination by the WCAB of the claim preclusive effect of the
Partial Judgment entered on the jury's verdicts does not provide
an adequate remedy.  Movants point to this Court's extensive
familiarity with this case, having litigated it for over nine
years, presided over a five-week jury trial and entered the
judgment on the jury's verdicts, and having considered all of the

22

issues in numerous pre-trial and post-trial motions.   Movants

contend that the claim preclusive effect of the Partial Judgment

is determined under federal law.   Finally, Movants note that the

issue of claim preclusion in the WCAB proceedings, if allowed to

go forward, is determined initially by an Administrative Law

Judge or, potentially, an attorney arbitrator, whose experience

may be limited to workers' compensation matters.   Movants

contend:

> A determination of res judicata by a workers'
> compensation arbitrator, whose experience may
> be solely as an applicant's attorney in
> workers' compensation matters, is extremely
> unlikely to involve practitioners with
> extensive knowledge or experience in the
> application of federal res judicata law.
> Although the WCAB arbitration process does
> provide judicial review through a writ
> process, such determinations are made based
> upon extremely relaxed standards, such as
> whether the decision was not based on
> substantial evidence ... Further, the WCAB
> arbitration process, which involves privately
> paid arbitrators, is not designed to provide
> the level of trial testimony and
> consideration of legal issues of a federal
> jury trial.   Indeed, the arbitrator's fee is
> subject to a review process if the time spent
> is believed to be excessive ... Determination
> of res judicata by the WCAB does not provide
> an adequate remedy to protect this Court's
> judgment.

Lee responds that the WCAB is competent to address all

issues related to workers' compensation insurance, including the

validity of policies, interpretation of their provisions, and

fraud in their procurement.   Lee contends that the WCAB is a

constitutional court authorized by the California Constitution.

It is not a court.   It is an administrative tribunal where the

23

right to jury trial is not afforded.  Although WCAB proceedings
are not overseen by judges with life tenure, their proceedings
are subject to oversight by the California Courts of Appeal and
the California Supreme Court.

Lee argues that, even if authorized under the AIA, the
permanent injunction sought by Movants should not be granted.
Lee contends that the injunction should not issue because
California has a substantial interest in its workers'
compensation scheme.  This rings hollow, after nine years and
Lee's voluntary election not to actively pursue the state
administrative proceeding, but rather to seek huge tort damages
remedies in the federal litigation.  Lee cites *Daewoo Electronics
Corp. of America, Inc. v. Western Auto Supply Co.*, 975 F.2d 474,
478-479 (8th Cir.1992):

> The fact that an injunction may issue under
> the Anti-Injunction Act does not mean that it
> must issue.  The injunction must be an
> otherwise proper exercise of the district
> court's equitable power.  Accordingly, the
> district court below found that Western Auto
> would suffer irreparable harm if injunctive
> relief were not issued because it would face
> relitigation of claims already adjudicated in
> its favor.  Daewoo, however, argues for a
> higher standard.  Daewoo argues that before
> the district court exercised its equitable
> power to enjoin a state proceeding, it should
> have found that Western Auto was 'threatened
> with great and immediate irreparable injury
> that cannot be eliminated by his defense to
> the state court proceeding."  *Goodrich v.
> Supreme Court of South Dakota*, 511 F.2d 316,
> 317 (8th Cir.1975)(citing *Younger v. Harris*,
> 401 U.S. 37, 46 ... (1971).
>
> In *Goodrich*, an attorney admitted to practice
> in South Dakota brought an action under 42

24

U.S.C. § 1983 alleging that the state's disbarment procedure violated his constitutional right to due process.  We found that the principles of federal-state comity required that this higher standard be meet before the district court could enjoin the state disbarment proceeding.  We noted that as a general rule courts of equity, in the exercise of their discretionary powers, should refuse to interfere with or embarrass state court proceedings except in extraordinary cases where the threat of harm is severe and imminent.  *Goodrich*, 511 F.2d at 318.  Inherent in our reasoning was the understanding that the state has a strong interest in protecting the standards of its bar and in adhering to its disbarment procedure.

In contrast to *Goodrich*, no similarly important state interest is at stake here.  The injunction in this case does not threaten the authority of the New Jersey judiciary or state law.  Neither does the injunction challenge the processes by which New Jersey compels compliance with the judgments of its courts.  New Jersey has no interest in the action enjoined by the district court beyond that of adjudicating a wholly private dispute.  Accordingly, considerations of comity do not require the district court to apply the *Goodrich* standard here ... Rather than interfere with New Jersey's interests, the injunction will promote judicial economy and protection of parties from harassing, duplicative litigation, interests which the federal and state courts share.

Lee cites *Tucci v. Club Mediterranee, S.A.,* 89 Cal.App.4th 180, 189-190 (2001), a choice of law case, for the proposition that California has a substantial interest in the welfare and subsistence of disabled workers.  In *S.G. Borello & Sons, Inc. v. Department of Industrial Relations,* 48 Cal.3d 341, 354 (1989), the California Supreme Court held that the purposes of the workers' compensation act are several:

1
2
3
4
5

> It seeks (1) to ensure that the cost of
> industrial injuries will be part of the cost
> of goods rather than a burden on society, (2)
> to guarantee prompt, limited compensation for
> an employee's work injuries, regardless of
> fault, as an inevitable cost of production,
> (3) to spur increased industrial safety, and
> (4) in return, to insulate the employer from
> tort liability for his employees injuries.

6 **Lee,** reiterating its position that the WCAB has exclusive

7 jurisdiction over the rescission issue and noting that USF&G

8 agreed to comply with California statutory scheme by issuing

9 workers' compensation insurance in California, argues:

10
11
12
13
14

> California's interest in its workers'
> compensation scheme raises the standard that
> the Insurers must meet before being entitled
> to an injunction.  This is a hurdle the
> Insurers cannot meet as it is within the
> interests of comity and federalism to permit
> the state courts to continue to refine and
> control their policies in this area free from
> the interference of the federal courts.

15 Lee's argument is based on abstention principles.  Lee's

16 motion to dismiss on abstention grounds was denied by Judge Coyle

17 in 1999.

18 Lee argues that the injunction should be denied because

19 Movants have an adequate remedy at law.  Lee cites *Aristud-*

20 *Gonzalez v. Government Dev. Bank for Puerto Rico,* 501 F.3d 24

21 (1st Cir.2007).  In *Aristud-Gonzalez*, an employee of the

22 Government Development Bank for Puerto Rico brought a Section

23 1983 suit against the Bank, charging that he had been deprived of

24 his payroll manager position based on his political views in

25 violation of the First Amendment.  After the District Court

26 dismissed the Section 1983 action, Aristud brought a new lawsuit

26

in the Puerto Rico Superior Court, again alleging political discrimination in violation of the First Amendment.  The Bank moved the District Court for an injunction on the ground that the Superior Court action was an attempt to relitigate matters foreclosed by the federal judgment.  The District Court denied the injunction because res judicata and collateral estoppel defenses could be asserted in the Superior Court proceedings and, therefore, there was no irreparable injury and an adequate alternative remedy existed.  The First Circuit affirmed:

> Some overlap exists between Aristud's two lawsuits but we have no intention of pursuing the issue - and for the same reason as the district judge.  True, a federal court can issue an injunction to protect its judgment; this is a conventional ground for equitable relief and an explicit exception to the Anti-Injunction Act ..., which otherwise limits the ability of federal courts to derail state litigation.
>
> However, the 'protect the judgment' category covers more than one type of case.  For example, ancillary injunctive relief is common where a defendant has failed to comply with a prior injunction ... Injunctive relief incident to an interpleader action is also common - the whole purpose being to avoid inconsistent results in separate lawsuits ....
>
> By contrast, the need for an injunction barring a new lawsuit, where relief is sought solely on the ground that the claim has already been litigated in a prior action, takes more justification ..., and injunctive relief based on issue preclusion would be even rarer.  Yes, the judge in the prior case knows the scope of his own litigation, but the judge in the new case has the advantage in assessing its scope.  And res judicata in both its forms turns on the relationship between the two lawsuits.

27

Accordingly, many judges would take the view that, absent unusual circumstances, res judicata is just another defense that ought to be asserted in the new lawsuit; and judges are even more likely to take this view where, as here, the res judicata question is itself subject to debate and might not yield an all or nothing answer.  We ourselves have said that substantial justification should be provided for such intervention ....

No doubt some cases will call out for preemption: considerations might be the number and frequency of new suits, whether they are obviously barred by res judicata, the burden imposed by re-litigation in a far away or unfriendly venue, improper motivations for the new suit or suits and the extent to which the res judicata issue turns on judgments that are clearly better able to be made by the first judge.  Courts have adverted to such concerns to inform their discretion.

This case has nothing that leaps out as a reason for taking the res judicata issues away from the local court - let alone reasons so compelling that we would think that the district court had abused its discretion. The bank criticizes the district judge for failing to spell out his calculations; but the considerations so plainly supported a decision to leave the matter to the local court that no one needed further explanation and the appeal, although not technically frivolous, is hopeless.

The district judge spoke both of a lack of irreparable injury and of an available remedy of urging res judicata defensively in the new lawsuit.  The bank says that the defense against the new lawsuit will cost time and money and that this counts as irreparable injury; it does not address the adequate remedy issue but conceivably could argue that it would cost more to litigate in the new case.

Courts sometimes treat the cost of further litigation as an important equitable consideration, sometimes say it is not

1     irreparable injury, and sometimes disregard
     irreparable injury as a requirement where
2     someone seeks to re-litigate a previously
     decided issue.  Possibly there is some
3     pattern to this contrariety of statements;
     not all litigation expenses are the same in
4     magnitude or certainty or symmetry as between
     alternative forums.

5

6     In all events, Puerto Rico courts are an
     alternative forum and any assumption that it
     would cost less to decide the res judicata
7     issue in the district court is unsupported.
     If the res judicata issue can be easily
8     resolved, the local court can do that.  And,
     to the extent that res judicata has some
9     application but does not end the local
     litigation, only one court need tackle the
10     problem rather than two.

11 **501 F.3d at 27-28.**

12   Lee argues that nearly every factor listed in *Aristud-*

13 *Gonzalez* favors denying Movants' injunction.  Lee contends that

14 there is only one prior lawsuit, which was not initiated by Lee;

15 the WCAB proceeding is not barred by res judicata or collateral

16 estoppel because the Partial Judgment is not final; and there is

17 little burden on Movants defending the action before the WCAB

18 because they consented to WCAB jurisdiction when they sold

19 workers' compensation insurance in California.  Lee contends:

20     [I]t was the insurers, not Lee who initiated
     the second action.  If anyone has a
21     complaint, it should be Lee.  It was, and is,
     entitled to a prompt and efficient resolution
22     of the issues before the WCAB and it has
     instead been dragged, kicking and screaming,
23     for years in this federal proceeding.
     Accordingly, there are no improper
24     motivations for the WCAB action.  Any
     additional cost in continuing dual
25     federal/state litigation is minimal in light
     of the costs the parties have incurred to
26     date.  The cost of complying with state law

1          in finishing the WCAB action cannot serve as
           the basis of irreparable harm to a workers'
2          compensation insurer and broker.

3      Lee's revisionist assertion that it was dragged kicking and

4  screaming into the federal litigation is categorically belied by

5  the record.  Although Lee did join Diana Conley's initial motion

6  to dismiss, Lee did not join in her subsequent motion for

7  reconsideration and filed counterclaims in this action and moved

8  for summary judgment in 2001.  Lee did not even seek arbitration

9  before the WCAB until 2006.

10     Lee further opposes the requested injunction on the ground

11 that Movants have unclean hands.  Lee asserts:

12         USF&G, by machinations in the WCAB, led Lee
           to believe that attorney Giesler was hired by
13         USF&G to serve as primary counsel for Lee in
           the WCAB proceedings.  As the primary
14         counsel, Giesler should have protected Lee in
           those proceeding [sic] and kept Lee and its
15         independent counsel appropriately informed
           regarding conflicts of interest between Lee
16         and USF&G which would have required an
           intervention of independent counsel in the
17         WCAB proceedings.  Because Lee did not
           receive a single correspondence from Giesler
18         or his firm and because Giesler told Lee's
           counsel, James Sherwood, that the WCAB
19         proceedings were stayed, Lee was under the
           reasonable impression that the WCAB stayed
20         its proceedings.  Otherwise Sherwood would
           have taken every opportunity to advance Lee's
21         interest in those proceedings.  Due to
           Giesler's apparent loyalty to only one of its
22         clients, USF&G, he took no action to protect
           Lee and prosecute the action before the WCAB.
23
           Moreover, USF&G intentionally subjected Lee
24         to economic duress by compelling Lee to
           remain in federal court, and for several
25         years, even paid Lee's defense costs in
           federal court, only to stop paying fees near
26         the time of expert discovery.  USF&G's action

30

were performed for the purpose of it
advancing its own interests above that of its
insured Lee.  USF&G's actions were taken in
bad faith and USF&G should be denied
equitable relief it seeks due to its unclean
hands.

Lee asserts that the Court should deny the injunction on purely

legal grounds but that, if the Court reaches the issue of USF&G's

actions, Lee requests "a full evidentiary hearing before a

permanent injunction is issued."  Lee does not identify any

unresolved evidentiary issues that require such a hearing.

     With regard to the disqualification of Mr. Giesler, Lee

filed a motion for disqualification on September 22, 2007 (Doc.

271).  The motion was opposed and argued and denied on the record

by the Court from the bench on November 14, 2006 (Doc. 363).

     Movants argue that the injunction should issue because

allowing the arbitration to go forward will violate Movants'

Seventh Amendment rights by relitigating a jury's determinations

of fact.

     Movants cite *Lytle v. Household Mfg., Inc.* 494 U.S. 545

(1990).  In *Lytle*, the plaintiff filed an action under Title VII

and 42 U.S.C. § 1981, alleging that defendant had terminated his

employment because of his race and had retaliated against him for

filing a charge with the EEOC by subsequently providing

inadequate references to prospective employers.  Plaintiff

requested a jury trial on all issues triable by a jury.  The

District Court dismissed the Section 1981 claims on the ground

that Title VII provided the exclusive remedy and conducted a

31

bench trial on the Title VII claims.   It granted defendant's

motion to dismiss the discriminatory discharge claim pursuant to

Rule 41(b) at the close of plaintiff's case in chief and entered

a judgment for defendant on the retaliation claim after both

parties had presented all their evidence.   The Court of Appeals

affirmed but noted that the dismissal of the Section 1981 claims

was apparently erroneous because Title VII and Section 1981

remedies were separate, independent and distinct.   Nonetheless,

the Court of Appeals ruled that the District Court's findings

with respect to the Title VII claims collaterally estopped

plaintiff from litigating his Section 1981 claims because the

elements of a cause of action under the two statutes are

identical.   The Court of Appeals rejected plaintiff's claim that

the Seventh Amendment precluded affording collateral estoppel

effect to the District Court's findings, reasoning that the

judicial interest in economy of resources overrode plaintiff's

interest in relitigating the issues before a jury.   The Supreme

Court reversed:

> We decline to extend *Parkline Hosiery Co.* ...
> and to accord collateral-estoppel effect to a
> district court's determinations of issues
> common to equitable and legal claims where
> the court resolved the equitable claims first
> solely because it erroneously dismissed the
> legal claims.   To hold otherwise would
> seriously undermine a plaintiff's right to a
> jury trial under the Seventh Amendment.

494 U.S. at 555.   Relying on *Lytle*, Movants argue:

> This Court should similarly preserve this
> plaintiff's right to trial by jury by not
> allowing those same issues to be relitigated

32

1               by an arbitrator and administrative law
                judge.  Further, allowing Lee to proceed in
2               the WCAB may be futile because any
                determination by the WCAB cannot have res
3               judicata effect because previously determined
                by a jury.  A [sic] noted by the *Lytle* Court,
4               collateral estoppel cannot be used to deny a
                plaintiff his right to a jury trial.

5

Movants also cite *Hughes v. Atlantic Pacific Construction Co.,*

6

194 Cal.App.3d 987, 1003 (1987), holding, *inter alia*:

7

8               [S]ince a workers' compensation proceeding
                gives an employer no right to a jury trial,
9               were it applied in the case at bench, the res
                judicata doctrine would deny the defendant
10             its constitutional right concerning a key
                issue upon which liability turns.

11

*See also Kelly v. Trans Globe Travel Bureau, Inc.,* 60 Cal.App.3d

12

195, 202 (1976):

13             A jury trial is not available to the employer
                in the workers' compensation case.  If a
14             determination of scope of employment in that
                proceeding is deemed collaterally to estop
15             the employer from denying the scope of
                employment when a third person asserts it as
16             a basis for vicarious liability of the
                employer, the employer is denied his
17             California constitutional right ... to a jury
                trial on a key issue on which his liability
18             turns.

19

Movants assert that "[t]hose courts undoubtedly would be more

20

likely to deny collateral estoppel or res judicata effect where

21

the party already had a jury trial."

22

    Lee apparently misunderstands Movants' Seventh Amendment

23

argument because Lee refers to cases upholding workers'

24

compensation statutes against challenges based on the contention

25

that the statutory scheme does not provide a right to jury trial.

26

Movants contend that "[u]nder controlling precedent, once the

1   jury has reached a decision, a party cannot undercut that

2   determination through subsequent relitigation by a judge, let

3   alone by an arbitrator or administrative judge."[3]

4       It is undeniable that the change of emphasis from the

5   federal action to the WCAB proceedings did not occur until Mr.

6   Jamison and other attorneys associated with Dowling, Aaron &

7   Keeler, Inc., entered the case on April 7, 2005 before the

8   transfer of the action from Judge Coyle's docket to Judge

9   Wanger's docket on December 19, 2005.  Yet, Lee asserted numerous

10  tort claims in the federal action for which it sought substantial

11  monetary recovery.  Richard Ehrlich is reported to have said he

12  will never pay a penny of the judgment in his lifetime.  Lee's

13

14  [3]On October 20, 2008, Lee filed a "Notice of Claim of
    Unconstitutionality of State Law," (Doc. 848), contending that

15  Movants claim that the Workers' Compensation Act unconstitutionally
    denies them a right to a jury trial, and giving notice as required

16  by Rule 24-132(b), Local Rules of Practice:

17          If, at any time in an action to which neither
            a State nor any of its officers, agencies, or

18          employees are a party, any party draws in
            issue the constitutionality of any state

19          administrative regulation of general
            applicability, that party shall immediately

20          file a notice with the Clerk identifying the
            regulation in issue and setting forth in what

21          respects its constitutionality is questioned.
            Thereupon, or sua sponte, the Court shall

22          serve a copy of that notice on the Attorney
            General of the State and on all other parties.

23          If the party required to file such a notice
            fails to do so, every other party shall file

24          and serve such notice, provided that as soon
            as a notice is filed and served, all other

25          parties are relieved of this obligation.

26  Lee's notice is meritless; Movants do not challenge the
    constitutionality of the Workers' Compensation Act.

strategy is delay and convolution to keep the federal judgment from having effect and being enforced.

The sole purpose of the WCAB arbitration is to decide the *exact* issue that has been fully litigated after an extended jury trial to final Partial Judgment in the federal court.  There is no constitutional right to have such an administrative decision made by an arbitrator of what has already been fully tried to verdict and final judgment before a federal jury.  There has to be a way to stop this and enter a final appealable judgment in this case.

<u>CONCLUSION</u>

For the reasons stated:

1.  Movants' motion for injunction against Defendant and Counterclaim Lee Investments LLC from proceeding with its request for arbitration or other adjudication of USF&G's complaint for rescission before the Workers' Compensation Appeals Board is GRANTED;

2.  Counsel for Movants shall prepare and lodge a form of order that reflects the rulings made in this Memorandum Decision within five (5) days following the date of service of this decision by the Court's Clerk.

IT IS SO ORDERED.

Dated:   __December 1, 2008__                _____/s/ Oliver W. Wanger_____
                                                    UNITED STATES DISTRICT JUDGE