IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA


UNITED STATES FIDELITY &
GUARANTY COMPANY,

                    Plaintiff,

          vs.

LEE INVESTMENTS LLC dba THE
ISLAND, et al.,

                    Defendants.

_____

No. CV-F-99-5583 OWW/SMS

MEMORANDUM DECISION GRANTING
PLAINTIFF AND
COUNTERDEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON
REMAINING CLAIMS OF LEE
INVESTMENTS LLC IN SECOND
AMENDED COUNTERCLAIM AND OF
COUNTERCLAIM AND CROSS-CLAIM
OF REXFORD PARTIES (Doc.
828)

        Plaintiff and Counter-Defendant United States Fidelity &
Guaranty Company and Counter-Defendants American Specialty
Insurance Services, Inc. and American Specialty Risk Management,
LLC (Movants) move for summary judgment on the remaining claims
for relief in the Second Amended Counterclaim of Lee Investments
LLC dba The Island (Lee), *i.e.,* the sixth claim for declaratory
relief, the eighth claim for breach of contract, and the ninth
claim for breach of the implied covenant of good faith and fair

1

dealing.  Movants seek summary judgment on all claims for relief alleged by Rexford Properties, LLC, Rexford Development Corp. and Richard K. Ehrlich (the Rexford Parties) in their Counterclaim and Cross-Claim.  Alternatively, Movants seek dismissal of the Rexford Parties' Counterclaim and Cross-Claim for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

With regard to Lee, Movants contend that the "Partial Judgment on Jury's Verdicts Upon Multiple Claims Involving Multiple Parties (Fed.R.Civ.P. 55(b))" entered on March 1, 2007 determined that the policy of insurance issued by USF&G was void *ab initio*; that, under controlling California law, Lee may not maintain claims for breach of contract or breach of the implied covenant of good faith and fair dealing arising from a contract of insurance that has been rescinded, and that there is no remaining controversy upon which declaratory relief for Lee may be rendered.

As to the Rexford Parties, Movants contend that the Rexford Parties assert all of their claims on behalf of Lee as potentially liable alter egos of Lee, that all of the same claims have been or shortly will be adjudicated against Lee, and that the Rexford Parties have no greater or different rights to pursue Lee's claims than Lee by virtue of their alter ego status.

A.  <u>BACKGROUND</u>.

1.  <u>Movant's Separate Statement of Undisputed Facts</u>.

<u>PUF 1</u>: By an Order dated July 30, 2004, this Court granted

2

summary judgment on the claims for relief of Lee against Lee and in favor of American Specialty Risk Management LLC (ASRM) in Lee's amended and supplemental counterclaim, holding that ASRM did not participate in providing workers' compensation insurance to Lee.

UNDISPUTED

PUF 2: On August 22, 2006, USF&G filed a supplemental and amended complaint against Lee adding as defendants based on alter ego allegations Richard K. Ehrlich, Rexford Properties LLC and Rexford Development Corporation.

UNDISPUTED

PUF 3: On August 31, 2006, Lee filed an answer to amended and supplemental complaint and counterclaim against USF&G, American Specialty and ASRM.  The counterclaim alleged nine claims for relief.

UNDISPUTED

PUF 4: On October 5, 2006, the Rexford Parties filed an answer to USF&G's amended and supplemental complaint and a counterclaim and cross-claim against USF&G, American Specialty and ASRM.  All the claims in the Rexford Parties' counterclaim are asserted through Lee only if the Rexford Parties are determined to be the alter ego of Lee.  All of the claims of the Rexford Parties are identical to those asserted by Lee in its amended and supplemental counterclaim.

UNDISPUTED

PUF 5: This Court issued its Order on Motions Re Issues for

3

Trial on December 21, 2006.  In its Order, the Court provided for a second phase trial depending on the outcome of the first phase trial, stating that in addition to USF&G's alter ego claims, the second phase would include "if there is no rescission, Lee's claims for breach of written contract related to performance and breach of the implied covenant of good faith and fair dealing (insurance bad faith) ...."

*Lee's Response*: Lee disputes PUF 5 on the ground that it does not fully state the record.  Lee refers to the Order on Motions re Issues for Trial filed on December 21, 2006:

> [A]t the conclusion of the first trial, the Court will set a scheduling conference TO SET A TRIAL DATE respecting the issues remaining to be tried in the second trial, and for discovery, if necessary, respecting USF&G's alter ego claims and respecting Lee's claims for breach of bad faith denial of insurance benefits and breach of the duty to defend."

*Movant's Reply*: By virtue of the rescission of the policy, no further trial is necessary.

PUF 6: The Pretrial Order issued on January 29, 2007. The Pretrial Order stated, among the Stipulated Facts, that ASRM was named as a counterdefendant but that the Court had granted summary judgment.

UNDISPUTED

PUF 7: Trial commenced on January 29, 2007 and concluded with jury verdicts on February 27, 2007.  The jury returned special verdicts in favor of USF&G and against Lee on USF&G's amended and supplemental complaint.  The jury found that Lee had

1  made an intentional misrepresentation of material fact and

2  concealed the material fact when it applied for the USF&G policy

3  (Special Verdict re Rescission, Question 1); that USF&G

4  reasonably relied on the misrepresentation and concealment

5  (Special Verdict re Rescission, Question 2); that USF&G proved

6  that it was entitled to restitution from Lee of $623,320.09 for

7  amounts paid to Diana Conley on her behalf through 2002 and an

8  additional amount of $251,714.90, for amounts paid thereafter, in

9  the total amount of $875,084.99 (Special Verdict re Rescission,

10  Question 9).  The jury found against Lee on all of Lee's

11  affirmative defenses against USF&G with respect to USF&G's claim

12  for rescission (Special Verdict re Rescission, Questions 4-8).

13      *Lee's Response*: Disputed on the ground that the special

14  verdict speaks for itself.

15      *Ruling*: Lee makes no assertion that the description of

16  the special verdicts in PUF 7 is inaccurate; PUF 7 is UNDISPUTED.

17      PUF 8: The jury also returned special verdicts against Lee

18  on all of its counterclaims against USF&G and American Specialty

19  tried before the jury (Special Verdict re Lee's Claims, Questions

20  1, 6, 11, 14, 20 and 25).  The jury found in favor of USF&G on

21  all of the affirmative defenses to Lee's counterclaims, except

22  for the affirmative defense of laches.  (Special Verdict re Lee's

23  Claims, Questions 32-39).  The jury verdict resolved Lee's claims

24  1 through 5 and 7 for negligence, fraud, conspiracy to defraud,

25  negligent misrepresentation, indemnity, and breach of oral

26  contract.

**UNDISPUTED**

**PUF 9**: On March 1, 2007, this Court issued a "Partial Judgment on Jury's Verdicts Upon Multiple Claims Involving Multiple Parties (Fed.R.Civ.P. 55(b))."  The Partial Judgment resolved USF&G's amended complaint for rescission, although some elements of its restitutionary recovery were left to the Court, and the claims of Lee in its amended and supplemental counterclaim tried to the jury.

*Lee's Response*: Disputed on the ground that "[n]othing in this case has been finally resolved," referring to the Ninth Circuit's dismissal of Lee's appeal from the Partial Judgment for lack of jurisdiction.

*Movants' Reply*: The Partial Judgment is final and the issue of rescission of the policy has been finally resolved.

*Ruling*: The issuance of the Partial Judgment is UNDISPUTED; its legal effect presents a question of law and all claims resolved by the jury's verdicts are finally decided in the trial court.

**PUF 10**: Lee's subsequently filed motions for judgment and new trial were denied by the Court on March 28, 2008.

**UNDISPUTED**

**PUF 11**: On March 18, 2008, the Court granted in part and denied in part Lee's motion to vacate the partial judgment on jury verdict.  The Court denied Lee's motion in substantial part, among other things ruling that the judgment for restitution in favor of USF&G was not premature.  The Court granted the motion

in other respects such as changing the reference in the judgment
to Rule 54(b) of the Federal Rules of Civil Procedure from Rule
55(b) and stating that the Court had not yet tried the issue of
Lee's contention that it was owed a duty to defend by USF&G in
the Workers' Compensation action and in the pending action before
this Court.

   *Lee's Response*: Undisputed that the Court's ruling
"states what it states."

   *Ruling*: Lee makes no assertion that the description of
the Court's ruling is inaccurate; PUF 11 is UNDISPUTED.

   <u>PUF 12</u>: By virtue of the jury verdicts in this matter and
the Partial Judgment of the Court that the USF&G policy is
rescinded for fraud and ordering restitution of benefits paid to
or on behalf of Diana Conley, the Court and the jury determined
that the policy issued by USF&G was void *ab initio* and Lee cannot
maintain a claim for breach of contract or breach of the implied
covenant of good faith and fair dealing with respect to a policy
on insurance which never came into existence.

   *Lee's Response*: Disputed on the ground that "[n]o
determinations are final and they will not be until appeal is
concluded, referring to the Ninth Circuit's dismissal of Lee's
appeal from the Partial Judgment for lack of jurisdiction.  Lee
objects to PUF 12 on the ground that Movants state a legal
conclusion to which Lee asserts various objections.

   *Movant's Reply*: The Partial Judgment is final for
purposes of res judicata.  Even if the Partial Judgment is not

final, a finding of the jury and the Court in the first phase of the trial is binding in the second phase.

*Ruling*: PUF 12 presents questions of law only.  The claim for insurance bad faith cannot survive.

<u>PUF 13</u>: All of the issues which were the subject of Lee's sixth claim for relief in its second amended and supplemental counterclaim for declaratory relief have been resolved by virtue of the Partial Judgment and jury verdicts on Lee's counterclaims and by summary judgment on the eighth and ninth claims of its second amended counterclaim for breach of contract and breach of the implied covenant of good faith and fair dealing.

*Lee's Response*: Disputed on the ground that "[n]o determinations are final and they will not be until appeal is concluded, referring to the Ninth Circuit's dismissal of Lee's appeal from the Partial Judgment for lack of jurisdiction.  Lee objects to PUF 12 on the ground that Movants state a legal conclusion to which Lee asserts various objections.

*Movant's Reply*: The Partial Judgment is final for purposes of res judicata.  Even if the Partial Judgment is not final, the findings of the jury and the Court in the first phase of the trial are binding in the second phase.

*Ruling*: PUF 13 presents questions of law only.

<u>PUF 14</u>: All of the claims for relief of the Rexford Parties have been resolved by virtue of the jury verdicts and the Partial Judgment entered by this Court, disposing of claims 1 through 5 and 7 of Lee's counterclaims, by the Court granting summary

judgment on the eighth and ninth claims for relief for breach of written contract and breach of the implied covenant of good faith and fair dealing and the sixth claim for declaratory relief of Lee's claims set forth above.  Further, there is no independent ground for the Rexford Parties asserting those claims for relief other than as alter egos of Lee.

*Lee's Response*: Disputed on the ground that "[n]o determinations are final and they will not be until appeal is concluded, referring to the Ninth Circuit's dismissal of Lee's appeal from the Partial Judgment for lack of jurisdiction.  Lee objects to PUF 12 on the ground that Movants state a legal conclusion to which Lee asserts various objections.

*Movant's Reply*: The Partial Judgment is final for purposes of res judicata.  Even if the Partial Judgment is not final, a finding of the jury and the Court in the first phase of the trial is binding in the second phase.

*Ruling*: PUF 14 presents questions of law only.

2.  <u>Lee's Separate Statement of Disputed Facts</u>.

<u>DUF 15</u>: The injured worker, Ms. Conley, filed her application with the WCAB on March 15, 1999, more than one month before USF&G filed its action in this court.

*Movant's Response*: UNDISPUTED that Conley filed an application for benefits with the WCAB on March 15, 1999, against The Island and the claims adjuster, GAB, only.  Conley's application did not seek adjudication of USF&G's complaint for rescission.  DUF 15 is irrelevant to the motion for summary

1   judgment of USF&G, which is based on the determination of

2   rescission of the policy by the jury and the Court.

3       **DUF 16**: Lee's answer to USF&G's complaint included an

4   affirmative defense that USF&G's complaint failed to state a

5   claim upon which relief can be granted.

6       *Movant's Response*: UNDISPUTED but irrelevant.  Lee did

7   not assert as an affirmative defense the exclusive jurisdiction

8   of the WCAB.  When Lee sought to amend its answer to assert the

9   exclusive jurisdiction of the WCAB in September 2006, the Court

10  granted USF&G's motion to strike the affirmative defense on the

11  grounds that the Court had already adjudicated the affirmative

12  defense against Lee and that Lee had impermissibly delayed in

13  seeking to assert that affirmative defense.

14      **DUF 17**: Lee followed that answer with Lee's joinder in Ms.

15  Conley's motion to dismiss or stay this action based on the

16  exclusive jurisdiction of the WCAB.

17      *Movants' Response*: UNDISPUTED that Lee filed a brief

18  joinder to Conley's motion to dismiss or stay the action based

19  upon the exclusive jurisdiction of the WCAB, but Lee did not join

20  in Conley's subsequent petition for reconsideration to the Court

21  after the motion to dismiss was denied.

22      **DUF 18**: By letter dated June 24, 1999, attorney Mark Volk

23  entered an appearance on behalf of "The Island Water Park" before

24  the WCAB.

25      *Movant's Response*: Irrelevant and immaterial.  Lee had

26  no right to defense or indemnity under the policy because it was

procured by fraud and rescinded.  Lee previously discussed this letter and an August, 1999 letter from Jacobs & Solomon withdrawing from the WCAB matter in connection with Lee's motion to disqualify counsel.

**DUF 19**: By letter dated June 25, 1999, Mr. Katz informed GAB Business Services, Inc., that Mr. Katz had informed Lisa Ehrlich that his office had been retained to defend "The Island Water Park."  He states on page 3 of that letter, "I have represented to house counsel, Lisa Ehrlich, that our office has been retained to defend the Island Water Park in defense of the workers' compensation claims and for subrogation of workers' compensation benefits."  This letter was not copied to Lisa Ehrlich.

*Movants' Response*: Irrelevant and immaterial.  Lee had no right to defense or indemnity under the policy because it was procured by fraud and rescinded.  There is no evidence authenticating the letter or allowing the admission of the hearsay set forth therein.  Ms. Ehrlich testified in her declaration that she does not remember such a conversation.

**DUF 20**: By letter dated July 16, 1999, Mark Katz wrote to GAB Robbins North America that: "per our telephone conversation of July 16, 1999, I need follow-up and response from you concerning what position you wish our firm to take in terms of any potential upcoming hearings at the Workers' Compensation Appeals Board ... As I explained, there is now a conflict in light of the federal litigation attempting to rescind the policy of workers' compensation issued to the insured ... Our office was

retained to defend the uninsured in the workers' compensation claim prior to the litigation.  A notice letter should issue to the insured and their attorneys, placing them on notice of the conflict, and offering outside counsel for representation in defense of the workers' compensation claim, if it has not already occurred, issued by Mr. Charlston or USF&G.  If the notice has not gone out, the contents of the notice should be coordinated with Mr. Charlston's office."  This letter was not copied to Lisa Ehrlich.

*Movants' Response*: Irrelevant and immaterial.  Lee had no right to defense or indemnity under the policy because it was procured by fraud and rescinded.  There is no evidence authenticating the letter or allowing admission of the hearsay set forth therein.

<u>DUF 21</u>: By letter dated August 9, 1999, Mr. Katz notified Workers' Compensation Judge Zimmerman and the WCAB that his firm was withdrawing from its representation of Lee with all future communications to be sent to GAB Robins North America, Inc.  This withdrawal did not provide for new attorneys to substitute in the representation of Lee and was not copied to Lisa Ehrlich.

*Movants' Response*: Irrelevant and immaterial.  Lee had no right to defense or indemnity under the policy because it was procured by fraud and rescinded.  There is no evidence authenticating the letter or allowing admission of the hearsay set forth therein.  There is no evidence whether or not Lisa Ehrlich was copied or informed.  Lee was kept abreast of

12

developments in the WCAB matter because Lisa Ehrlich was served
with copies of the WCAB pleadings by USF&G and Conley and signed
scheduling conference statements discussing the status of the
WCAB proceeding.  Lee obviously knew that it did not have
"independent" counsel when it made its demand for such counsel in
April, 2000.  Lee previously discussed this letter from Jacobs &
Solomon withdrawing from the WCAB matter in connection with Lee's
motion to disqualify counsel.

DUF 22: Lee was not notified of its right to have
independent counsel appointed at USF&G's expense and remained
without such counsel until on or about July 18, 2000.  This was
over one year after Mr. Katz had instructed GAB Robins to inform
Lee of its right to such counsel.  This appointment of
independent counsel occurred only because Lisa Ehrlich, by letter
dated April 18, 2000, questioned whether anyone was representing
Lee in the WCAB proceedings and demanded "Cumis" counsel.  By
letter dated April 26, 2000, Mr. Charlston agreed on behalf of
USF&G that it owed an obligation to provide Lee with independent
counsel in accordance with Civil Code § 2860.  USF&G provided Lee
with no notice that USF&G objected to providing a defense in the
WCAB proceeding and that it would later seek to deny that it owed
a duty of coverage, and gave Lee no notice that USF&G would seek
reimbursement of defense costs.

*Movants' Response*: Disputed and irrelevant.  Lee had no
right to defense or indemnity under the policy because it was
procured by fraud and rescinded.  Movants dispute virtually all

13

of this lengthy litany of unfounded allegations, misstatements of evidence and inadmissible hearsay.  All of such allegations are irrelevant to the motion for summary judgment, which is based upon the jury's determination of rescission of the policy. Movants do not dispute that by a letter dated April 18, 2000, Lisa Ehrlich, an attorney experienced in insurance law, requested independent counsel and that USF&G agreed to such request by letter dated April 26, 2000 from Jeffrey A. Charlston. Lee was kept abreast of developments in the WCAB matter because Lisa Ehrlich was served with copies of the WCAB pleadings by USF&G and Conley and signed scheduling conference statements discussing the status of the WCAB proceedings.  Lee obviously knew that it did not have independent counsel when it made its demand for such counsel in April, 2000.  Lee's contention that it was not provided notice is unfounded.  USF&G provided notice that it was seeking rescission of the policy and restoration to it of all the benefits it had paid and would pay in the future in its complaint for rescission which was served on Lee shortly after the filing of the Complaint in April, 1999.  USF&G also reserved all rights, remedies and defenses in its letter of April 26, 2000, to Lisa Ehrlich, agreeing to provide independent counsel.

   <u>DUF 23</u>: Had Lee been informed in July 1999 of its right to independent counsel, at USF&G's expense, it would have retained such counsel to pursue prompt arbitration of coverage before the WCAB.

        *Movants' Response*: Disputed and irrelevant.  Lee had no

14

right to defense or indemnity under the policy because it was procured by fraud and rescinded.  Lee's preposterous contention based on revisionism that it would have promptly pursued arbitration of coverage before the WCAB in July 1999 is refuted by the fact that after it obtained independent counsel in April, 2000 and for six years thereafter and only after its motion for summary judgment in the District Court was denied and it was faced with an imminent jury trial in federal court did Lee seek arbitration before the WCAB.  Diana Conley sought arbitration of the complaint in June, 1999 and was prevented from proceeding by USF&G's objections, the last of which was not disposed of until April, 2000, when Lee requested independent counsel.  Thus, Conley prevailed against USF&G without any help from Lee. Neither Conley nor Lee could have proceeded to arbitration before April 2000 because of USF&G's objections to proceeding before the WCAB.  Lee was kept abreast of developments in the WCAB matter because Lisa Ehrlich was served with pleadings in that matter by USF&G and Conley and signed scheduling conference statements discussing the status of the WCAB proceedings.  Lee obviously knew that it did not have independent counsel when it made its demand for such counsel in April, 2000.

DUF 24: In reliance on USF&G's offer to pay for independent counsel, Lee hired Dowling, Aaron & Keeler to represent itself in the WCAB case and has incurred considerable legal fees, consisting of approximately $199,000.00 in defending Lee in the WCAB and in the rescission issue through jury trial and has

incurred attorney fees defending in the WCAB since the jury verdicts.

    *Movants' Response*: UNDISPUTED that Lee hired Dowling, Aaron & Keeler to represent it in the WCAB matter and incurred legal fees of approximately $190,000.  At the time Lee hired Dowling, Aaron & Keeler, USF&G had pending against Lee for a full year its complaint for rescission and restitution of all benefits paid or to be paid under the policy, which included defense fees. USF&G also reserved all rights, remedies and defenses in its letter of April 26, 2000, to Lisa Ehrlich agreeing to provide independent counsel.

  <u>DUF 25</u>: Lee has suffered damages in that USF&G seeks restitution of approximately $199,000.00 based on the "Partial Judgment."

    *Movants' Response*: DISPUTED.  Lee has suffered no damages.  USF&G is entitled to restitution of the attorney's fees it has advanced to Lee's counsel, Dowling, Aaron & Keeler, from Lee by virtue of Lee's material misrepresentations in obtaining the policy.

  <u>DUF 26</u>: Lee is exposed to additional damages in that Lee may be forced to settle or suffer an award in favor of Ms. Conley.

    *Movants' Response*: DISPUTED.  Any exposure Lee has to Ms. Conley is as a result of its own material misrepresentations in the policy application process and its own negligence with regard to the circumstances of her accident.

    <u>DUF 27</u>: The California Supreme Court denied review of the

WCAB's rejection of USF&G's objection to WCAB jurisdiction on
April 12, 2000.

UNDISPUTED.

DUF 28: On April 26, 2000, Susan McAlister on behalf of
American Specialty wrote to GAB Robins that "The action is
pending at both the Federal level and before the WCAB.  The first
one to rule will determine what will happen overall.  As per our
discussion on April 25 we have instructed you to obtain a WC
attorney to represent the medical and legal WC issues."

*Movants' Response*: Disputed, irrelevant and
inadmissible hearsay.

DUF 29: Greg Giesler was retained and sent out a notice of
association of attorneys on May 10, 2000 as attorneys for
"Defendants" with Charlston, Revich & Williams.  Consistent with
the previous retention of Mr. Katz and the Jacobs & Solomon firm,
both Lisa Ehrlich and the Dowling firm understood Mr. Giesler and
his firm were retained to represent Lee on the medical and legal
issues before the WCAB.  Mr. Giesler confirmed that he
represented "The Island Water Park" on multiple occasions.

*Movants' Response*: DISPUTED.  Mr. Giesler and his law
firm were retained by the claims agent, GAB Robbins, for USF&G as
workers' compensation counsel with USF&G's counsel, Charlston,
Revich & Williams, to represent it.  Lee consciously adopted a
strategy of litigating its counterclaims and defenses to USF&G's
complaint in the District Court, filing a motion for summary
judgment in 2001 and again in 2002.  Lee's own counsel, Dowling,

17

1  Aaron & Keeler, performed its own investigation of the status of

2  the WCAB proceeding and was retained to defend Lee in that

3  proceeding.

4       <u>DUF 30</u>: Between August 2000 and May 2002, numerous

5  depositions were jointly taken in both the WCAB proceeding and

6  this action.  Mr. Giesler noticed the deposition and continued

7  deposition of Ms. Conley as attorneys for "Defendant(s)" in the

8  WCAB proceeding, represented to Mr. Sherwood that Mr. Giesler was

9  counsel for Lee, and stated on the record of the August 3, 2001

10 deposition of Ms. Conley, "I represent your employer The Island

11 Water Park."

12      *Movants' Response*: UNDISPUTED that between August 2000

13 and May 2002 numerous depositions were jointly taken in both the

14 WCAB proceeding and this federal action.  All the rest is

15 disputed and irrelevant.  The Court has already found that

16 Giesler never represented Lee.  Lee had its own independent

17 counsel as well as Ms. Ehrlich representing it from May 2000 to

18 the present.

19      <u>DUF 31</u>: Mr. Giesler led both Ms. Ehrlich and Mr. Sherwood to

20 believe that no action could be taken in the WCAB proceedings.

21      *Movants' Response*: DISPUTED and irrelevant.  Lee had no

22 right to defense or indemnity under the policy because it was

23 procured by fraud and rescinded.  Inadmissible hearsay,

24 speculative, no foundation.  Lisa Ehrlich was served with a copy

25 of the Order of the WCAB stating that the matter may be held in

26 abeyance by Conley's counsel shortly after it was filed by the

1  WCAB in early January 2000.  Lee's independent counsel billed

2  time for investigating the status of the WCAB matter with the

3  WCAB.

4      <u>DUF 32</u>: Had Lee in December 1999 had independent counsel

5  pursuing a prompt arbitration of coverage before the WCAB, Lee

6  likely would have deferred filing a counterclaim.  Relying on Mr.

7  Giesler's representation of Lee and his statement that the WCAB

8  proceedings were stayed, and forced by federal and court rules

9  and by orders of the court to proceed with its defense and

10 counterclaim in this action, Lee took no further action in the

11 WCAB proceedings until early 2006 when the Dowling firm

12 discovered Mr. Giesler's misrepresentation of his status as Lee's

13 attorney and his misrepresentation of the alleged stay.

14      *Movants' Response*: Irrelevant and inadmissible

15 speculation.  Lee had no right to defense or indemnity under the

16 policy because it was procured by fraud and rescinded.  This

17 Court has already found the Giesler never represented Lee.  Lee

18 had its own independent counsel as well as Ms. Ehrlich

19 representing it from May 2000 to the present.  Neither Conley nor

20 Lee could have proceeded to arbitration before April 2000 because

21 of USF&G's objections to WCAB jurisdiction.  Lee was kept abreast

22 of all developments in the WCAB matter because Lisa Ehrlich was

23 served with copies of the WCAB pleadings by USF&G and Conley and

24 signed scheduling conference statements discussing the status of

25 the WCAB proceedings.  Lee made a strategic determination not to

26 seek arbitration in this matter from 1999 to 2006, deciding to

file and litigate its counterclaims and filing motions for

summary judgment in the federal case where Lee sought affirmative

relief.

DUF 33: On April 18, 2006, Mr. Jamison of the Dowling firm

filed with the WCAB a Declaration of Readiness to Proceed to

Arbitration of the issue of insurance coverage under Labor Code §

5275.

*Movants' Response*: UNDISPUTED and irrelevant.

DUF 34: After Lee filed its Declaration of Readiness to

proceed to arbitration of the issue of coverage, USF&G has sought

at every turn to delay any rulings by the WCAB.  USF&G first

demanded and persuaded the WCAB Chief Judge to schedule for trial

USF&G's contention that USF&G [sic] has somehow waived or was

estopped to assert WCAB jurisdiction.  In order to meet these

contentions, Lee subpoenaed the records of Mr. Giesler, who then

in August 2006, filed a motion to quash that subpoena based on

his alleged attorney-client privilege with USF&G.  USF&G then

persuaded the WCAB Chief Judge that the question whether Mr.

Giesler represented Lee should be tried before any other issue.

*Movants' Response*: DISPUTED and irrelevant.  USF&G has

maintained that the waiver and estoppel of Lee to seek

arbitration before the WCAB by virtue of its taking no action to

proceed to arbitration for six years in that proceeding and its

subsequent seeking of arbitration only after it lost in the jury

trial it sought before the District Court be adjudicated by the

WCAB before it determines whether to allow arbitration.  Lee's

absurd contention that Giesler represented it has been rejected
by this Court in response to Lee's motion for disqualification.
Lee has employed a bad faith "cat and mouse" strategy of
asserting that Giesler represented Lee to delay the trial in this
action, then being forced to file a motion before the WCAB to
have such issue adjudicated if it intended to make such
allegation, withdrawing the motion and impliedly withdrawing the
allegation, but then nonetheless asserting subsequently before
the WCAB and here that Giesler represented Lee.  Having lost the
motion for disqualification in this Court, Lee obviously is
afraid to have the motion filed and lost again before the WCAB.

   <u>DUF 35</u>: Mr. Giesler's conduct reflected USF&G's unabashed
strategy to purport to offer Lee a defense before the WCAB on the
one hand, but take it away with the other through nonaction on
Mr. Katz's instruction, through Mr. Giesler's misrepresentations,
and through the strategy that Mr. Smyth has been following since
spring 2006 to delay any substantive rulings before the WCAB.

   *Movants' Response*: DISPUTED and irrelevant. USF&G has
sought to confirm that the waiver and estoppel of Lee to seek
arbitration before the WCAB by virtue of its taking no action to
proceed to arbitration for six years in that proceeding and its
subsequent seeking of arbitration only after it lost in the jury
trial it sought before the District Court be adjudicated by the
WCAB before it determines whether to allow arbitration.  Lee's
absurd contention that Giesler represented it has been rejected
by this Court in response to Lee's motion for disqualification.

1  Lee has employed a bad faith "cat and mouse" strategy of

2  asserting that Giesler represented Lee to delay the trial in this

3  action, then being forced to file a motion before the WCAB to

4  have such issue adjudicated if it intended to make such

5  allegation, withdrawing the motion and impliedly withdrawing the

6  allegation, but then nonetheless asserting subsequently before

7  the WCAB and here that Giesler represented Lee. Lee is not

8  permitted to allege that opposing counsel represented it in a

9  proceeding without seeking adjudication of that claim by a prompt

10 motion to disqualify.  Having lost the motion for

11 disqualification, Lee is afraid to file the same motion before

12 the WCAB.

13     <u>DUF 36</u>: Owing to Mr. Giesler's having met with Mr. Sherwood

14 in confidence before the WCAB deposition of Ms. Conley, and owing

15 to Mr. Giesler's association with Mr. Smyth in the WCAB

16 proceedings, Lee filed a motion in this court for Mr. Smyth (not

17 Mr. Giesler) to be disqualified in this action.  Since Lee's

18 subpoena of Mr. Giesler's records had already caused the WCAB to

19 require Lee to try first the issue whether Mr. Giesler

20 represented Lee, Lee also expanded that WCAB trial to include a

21 motion to disqualify both Mr. Smyth and Mr. Giesler as counsel

22 for the insurer in the WCAB proceedings.

23          *Movants' Response*: DISPUTED and irrelevant.  This Court

24 has already found that Giesler never represented Lee.  Lee's

25 motion to disqualify Smyth was based on its contention that

26 Giesler represented Lee, an allegation this Court has rejected.

1  Lee had its own independent counsel as well as Ms. Ehrlich

2  representing it from May 2000 to the present.

3      **DUF 37**: USF&G's Rescission Action prejudiced Lee in the WCAB

4  proceeding because (1) the Rescission Action exposed Lee to

5  potential penalties under Labor Code §§ 3706, 3710-3712, and 4555

6  and to Conley's potential civil lawsuit; and (2) USF&G and Conley

7  can use evidence developed in the Rescission Action against Lee.

8      *Movants' Response*: DISPUTED. Lee's legal contention is

9  unsupported by either of the declarations.  USF&G's rescission

10 action did not prejudice Lee.  This Court and the jury found that

11 Lee's material misrepresentations in the policy application

12 process required rescission of the policy.  The rescission was

13 caused by Lee's own wrongful and fraudulent actions.

14     **DUF 38**: USF&G has used this illegal tactic to induce and

15 force Ms. Conley not to pursue the coverage issue in the WCAB

16 proceedings, and to enable USF&G to claim that it has no duty to

17 pay for Lee's defense in the rescission action before this court,

18 which duty is clear were that issue being pursued solely in the

19 WCAB proceedings.

20     *Movants' Response*: DISPUTED.  These contentions are

21 unsupported by the alleged declarations.  USF&G had no duty to

22 pay for Lee's defense of the rescission action before this Court

23 as a matter of controlling California law and as a result of the

24 jury verdicts and the Partial Judgment.

25     **DUF 39**: Following the Partial Judgment in this action, Lee

26 sought to have the WCAB proceed with the issues before it.  It is

Lee's position that in this diversity jurisdiction case before
this court, the California rule applies that nothing is final for
res judicata purposes until appeal is finally concluded.  Since
the WCAB (and state court) and this court are both exercising
general jurisdiction, the first jurisdiction to reach a final
judgment after appeal will control.  Also following the Partial
Judgment," USF&G, which had been paying for most of the Dowling
firm's bills for services in the WCAB proceeding, refused further
to pay for the defense of Lee, but continued to pay workers'
compensation benefits to Ms. Conley.

*Movants' Response*: DISPUTED.  Lee's contention is
refuted by controlling law.

<u>DUF 40</u>: On May 17, 2007, the Ninth Circuit issued its order
that Lee either dismiss its appeal of the Partial Judgment or
show cause why the appeal should not be dismissed for failing to
be a final disposition of all claims and all parties.

*Movants' Response*: UNDISPUTED.

<u>DUF 41</u>: On June 5, 2007, seeking to expedite the WCAB
proceedings, Lee withdrew its motion to disqualify Mr. Giesler
and Mr. Smyth without waiving its contention Giesler had
purported to represent Lee.

*Movants' Response*: UNDISPUTED that Lee withdrew its
motion to disqualify Giesler and Smyth.  Lee did not assert at
that time that it intended to continue to assert that Giesler had
represented Lee.  Lee withdrew the motion because it had already
lost the same motion before this Court.  USF&G believes that Lee

cannot continue to assert that Giesler represented Lee without filing a motion to disqualify before the WCAB or affirmatively withdrawing that contention.  The WCAB required the motion to disqualify to be filed if Lee was going to make that assertion.

**DUF 42**: With it being unclear whether the Ninth Circuit would dismiss the appeal of the Partial Judgment and with the court phase of the trial still under submission, the WCAB Chief Judge on June 5, 2007 ordered the WCAB case off calendar "until the federal trial court decision becomes final."

*Movants' Response*: UNDISPUTED that the WCAB chief administrative judge on June 5, 2007 ordered Lee's request for arbitration of USF&G's complaint off calendar, "until the federal trial court decision becomes final."  The WCAB did not mention the appeal in the Ninth Circuit, but the discussion focused on the decision regarding elements of restitution recovery under the complaint of USF&G which was the subject of the bench trial.  At the time of that hearing all the parties had requested that the appeal be stayed and this Court entered an order requesting such a stay.

**DUF 43**: By Order filed August 27, 2007, the Ninth Circuit dismissed the appeal of the Partial Judgment "for lack of jurisdiction without prejudice to refiling following the entry of final judgment in the district court as to all claims and all parties."

UNDISPUTED.

**DUF 44**: The Ninth Circuit entered judgment dismissing Lee's

1   appeal of the Partial Judgment on September 20, 2007.

2           **UNDISPUTED.**

3       **DUF 45**: Following receipt of the Ninth Circuit's August 27,

4   2007 Order, Mr. Jamison advised Mr. Smyth by letter dated

5   September 24, 2007 that nothing was final in the trial court and

6   that USF&G therefore continued to owe Lee a defense in the WCAB

7   proceedings, but USF&G denied that obligation by Mr. Smyth's

8   letter dated October 9, 2007.

9           *Movants' Response*: UNDISPUTED that USF&G through the

10  the letter of Bruce T. Smyth date October 9, 2007 disputed the

11  contentions of Mr. Jamison in his letter of September 24, 2007.

12  Such exchange of letters of counsel is completely irrelevant to

13  any issue in the pending motion for summary judgment.

14      **DUF 46**: In early 2008, Lee associated workers' compensation

15  specialist Robin Woolsey to assist Lee in the WCAB proceedings

16  with the workers' compensation medical and legal issues and with

17  settlement negotiations with Ms. Conley.  Since the Ninth Circuit

18  ruling indicates that nothing will be final in the district court

19  until all claims and all parties are disposed of, Lee filed

20  another Declaration of Readiness to proceed to arbitration of the

21  issue of coverage and of Mr. Giesler's motion to quash the

22  subpoena for his records.

23          *Movants' Response*: UNDISPUTED that Lee associated

24  Robin Woolsey as counsel in the WCAB proceeding, though

25  irrelevant.  All other contentions are disputed and irrelevant

26  and unsupported by any admissible evidence.  Lee's legal

1  contention that the decision of the Ninth Circuit not to hear

2  Lee's appeal at that time does not mean that the decisions of the

3  jury and the Court that the policy is rescinded are not final.

4  <u>DUF 47</u>: USF&G repeatedly sought on June 26, 2008, August 18,

5  2008, and September 30, 2008 to delay, and obtained a delay of, a

6  WCAB decision on these issues.  USF&G asserted the earlier

7  contentions of waiver and estoppel to assert WCAB jurisdiction,

8  and now added the contention that proceedings in the district

9  court were res judicata and that the WCAB should await the

10 outcome of USF&G's motion to enjoin Lee from proceeding before

11 the WCAB.  At USF&G's specific request and over Lee's objection,

12 all of the WCAB issues have been continued for a "Mandatory

13 Settlement Conference," which is actually analogous to a pretrial

14 conference, to December 9, 2008.

15 *Movants' Response*: UNDISPUTED that at USF&G's request

16 and over Lee's objection, the hearing on issues before the WCAB

17 has been continued to December 9, 2008.  USF&G has consistently

18 asserted that before any arbitration can be ordered, the issues

19 of Lee's waiver and estoppel to pursue arbitration before the

20 WCAB need to be resolved, among other issues.  USF&G previously

21 understood that Lee had withdrawn its contention that Giesler had

22 previously represented it.  If Lee continues to make that

23 contention, it needs to file a motion for disqualification before

24 the WCAB to have that issue resolved.  Lee agreed to resolve by

25 post-trial proceedings, the alter ego issues; there are no

26 coverage issues remaining.

1          B.   <u>GOVERNING STANDARDS</u>.

2               1.   <u>SUMMARY JUDGMENT</u>.

3          Summary judgment is proper when it is shown that there

4     exists "no genuine issue as to any material fact and that the

5     moving party is entitled to judgment as a matter of law."

6     Fed.R.Civ.P. 56.   A fact is "material" if it is relevant to an

7     element of a claim or a defense, the existence of which may

8     affect the outcome of the suit.   *T.W. Elec. Serv., Inc. v.*

9     *Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th

10    Cir.1987).   Materiality is determined by the substantive law

11    governing a claim or a defense.   *Id*.   The evidence and all

12    inferences drawn from it must be construed in the light most

13    favorable to the nonmoving party.   *Id*.

14         The initial burden in a motion for summary judgment is on

15    the moving party.   The moving party satisfies this initial burden

16    by identifying the parts of the materials on file it believes

17    demonstrate an "absence of evidence to support the non-moving

18    party's case."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

19    (1986).   The burden then shifts to the nonmoving party to defeat

20    summary judgment.   *T.W. Elec.*, 809 F.2d at 630.   The nonmoving

21    party "may not rely on the mere allegations in the pleadings in

22    order to preclude summary judgment," but must set forth by

23    affidavit or other appropriate evidence "specific facts showing

24    there is a genuine issue for trial."   *Id*.   The nonmoving party

25    may not simply state that it will discredit the moving party's

26    evidence at trial; it must produce at least some "significant

                                  28

probative evidence tending to support the complaint." *Id*. The question to be resolved is not whether the "evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir.1995). This requires more than the "mere existence of a scintilla of evidence in support of the plaintiff's position"; there must be "evidence on which the jury could reasonably find for the plaintiff." *Id*. The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment." *Id*. In *Scott v. Harris*, ___ U.S. ___, 127 S.Ct. 1769, 1776 (2007), the Supreme Court held:

> When opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

As explained in *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099 (9th Cir.2000):

> The vocabulary used for discussing summary judgments is somewhat abstract. Because either a plaintiff or a defendant can move for summary judgment, we customarily refer to the moving and nonmoving party rather than to plaintiff and defendant. Further, because either plaintiff or defendant can have the ultimate burden of persuasion at trial, we refer to the party with and without the ultimate burden of persuasion at trial rather than to plaintiff and defendant. Finally, we distinguish among the initial burden of production and two kinds of ultimate burdens of persuasion: The initial burden of

1    production refers to the burden of producing
     evidence, or showing the absence of evidence,
2    on the motion for summary judgment; the
     ultimate burden of persuasion can refer
3    either to the burden of persuasion on the
     motion or to the burden of persuasion at
4    trial.

5    A moving party without the ultimate burden of
     persuasion at trial - usually, but not
6    always, a defendant - has both the initial
     burden of production and the ultimate burden
7    of persuasion on a motion for summary
     judgment ... In order to carry its burden of
8    production, the moving party must either
     produce evidence negating an essential
9    element of the nonmoving party's claim or
     defense or show that the nonmoving party does
10   not have enough evidence of an essential
     element to carry its ultimate burden of
11   persuasion at trial ... In order to carry its
     ultimate burden of persuasion on the motion,
12   the moving party must persuade the court that
     there is no genuine issue of material fact
13   ....

14   If a moving party fails to carry its initial
     burden of production, the nonmoving party has
15   no obligation to produce anything, even if
     the nonmoving party would have the ultimate
16   burden of persuasion at trial ... In such a
     case, the nonmoving party may defeat the
17   motion for summary judgment without producing
     anything ... If, however, a moving party
18   carries its burden of production, the
     nonmoving party must produce evidence to
19   support its claim or defense ... If the
     nonmoving party fails to produce enough
20   evidence to create a genuine issue of
     material fact, the moving party wins the
21   motion for summary judgment ... But if the
     nonmoving party produces enough evidence to
22   create a genuine issue of material fact, the
     nonmoving party defeats the motion.

23   **210 F.3d at 1102-1103.**

24        2.   <u>MOTION TO DISMISS</u>.

25        A motion to dismiss under Rule 12(b)(6) tests the

26

30

sufficiency of the complaint. *Novarro v. Black*, 250 F.3d 729, 732 (9th Cir.2001). "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Williams ex rel. Tabiu v. Gerber Products Co.,* 523 F.3d 934, 938 (9th Cir.2008), quoting *Bell Atlantic Corp. v. Twombley*, ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007). "'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, *id.* at 1964-1965. Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th

31

Cir.2002).  The court must construe a *pro se* plaintiff's pleadings liberally in determining whether a claim has been stated.  *Ortez v.  Washington County, State of Or.*, 88 F.3d 804, 807 (9th Cir. 1996); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).  However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003). Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)  When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.  *Parrino v. FHP, Inc*, 146 F.3d 699, 705-706 (9th Cir.1988).

    C.  <u>LEE'S CLAIMS FOR BREACH OF CONTRACT AND BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING</u>.

    Movants seek summary judgment on Lee's Eighth and Ninth Claims for Relief in its Second Amended Counterclaim, for breach of contract and breach of the implied covenant of good faith and fair dealing.  Movants assert that these claims are barred as a matter of law because of the jury's verdicts and the Partial Judgment.

    "[A] rescission effectively renders the policy totally

unenforceable from the outset so that there was never any coverage and no benefits are payable." *Imperial Casualty & Indemnity Co. v. Sogomonian*, 198 Cal.App.3d 169, 182 (1988); *see also Atmel Corp. v. St. Paul Fire & Marine Ins. Co.*, 426 F.Supp.2d 1039, 1044 (N.D.Cal.2005); *Cigna Property and Cas. Ins. Co. v. Polaris Pictures Corp.,* 159 F.3d 412, 419 (9th Cir.), *cert. denied,* 528 U.S. 815 (1998)("The district court's bench trial ended in a judgment in favor of Cigna granting rescission, which judgment we affirm in this appeal.  All of Polaris's counterclaims for damages, therefore, are precluded."); *Pacific Ins. Co. v. Kent*, 120 F.Supp.2d 1205, 1214, 1215 (C.D.Cal.2000)("Where an insurer prevails on its rescission claim, any breach of contract and bad faith counterclaims brought by the insured are necessarily precluded ... Because Pacific has prevailed on its rescission claim, the Court GRANTS summary judgment for Pacific on Kent's counterclaims for breach of contract and bad faith.").

Lee responds that USF&G has a duty to defend under the policy until there is a final judgment of rescission.  Lee argues that, because the Partial Judgment is not final within the meaning of Rule 54, Federal Rules of Civil Procedure.  Lee cites California law that there can be no final judgment for res judicata purposes until the appeal is exhausted.  Lee cites *Maniar v. Capital Bank of California*, 1993 WL 515880 (N.D.Cal.1993) that "[t]he contract is not void and the unilateral rescission is thus revocable until effectuated by the

court."    Lee also cites *Perini Corp. v. Orion Ins. Co.*, 331
F.Supp. 453, 457 (E.D.Cal.1971):

> ... I reject the insurers' contention that
> their unilateral rescission of the policy
> relieves them of obligations under the
> service of suit clause.  Common sense, first
> of all, says that one cannot singlehandedly
> obliterate contractual obligations without
> court approval, either in a suit for
> restitution after rescission or as a defense
> to a breach of contract action ... [O]nly
> after a contract is *finally* rescinded do the
> obligations cease to exist.

Although Lee appears to be correct that the Partial Judgment
is not final for purposes of appeal, that lack of finality is
irrelevant to Lee's counterclaims for breach of contract and
breach of the implied covenant of good faith and fair dealing.

Lee's contention that Movants' rescission of the policy was
unilateral based on the cases cited by Lee is preposterous given
the record in this action and indisputable under California and
federal law.  In *Maniar*, the District Court granted summary
judgment simultaneously against the debtor who unilaterally
rescinded a note and in favor of the FDIC.  The *Maniar* Court
held:

> [T]he rescission is not irrevocable and the
> contract is not void until the court's final
> determination.  '[O]ne cannot singlehandedly
> obliterate contractual obligations without
> court approval ... [O]nly after a contract is
> *finally* rescinded do the obligations cease to
> exist.' ... In the instant case, '[t]he bank
> therefore had and could transfer to the FDIC
> voidable title, which is enough to constitute
> "title or interest" in the note.'

In *Perini Corp.*, the District Court merely enforced a service of

34

suit clause in an insurance policy before remanding the case to state court for determination of the rescission claim of the insurer.

The Partial Judgment in this action was entered following a jury trial and is based on the jury's verdicts. Lee filed three post-trial motions: (1) a motion for new trial; (2) a motion for judgment pursuant to Rule 50(b), Federal Rules of Civil Procedure; and (3) a motion to vacate partial judgment or jury verdicts upon multiple claims involving multiple parties or to alter or amend the partial judgment pursuant to Rules 59(e) and 60(a) & (b), Federal Rules of Civil Procedure. All of these post-trial motions were denied by memorandum decisions filed on March 18, 2008.[1] That the policy has been effectively rescinded by virtue of the jury's verdicts and the Partial Judgment as a matter of law cannot be disputed. As Movants argue, the factual and legal determinations made in the first phase of trial must bind the parties in subsequent phases:

> If Lee's views were accepted, trials could never be phased because the findings of the jury and the court in the initial phase would not be binding in a second or subsequent phase unless there is an interim appeal, and Lee contends that there can be no appeal. This clearly is not the law and Lee cites no authority in support of its contention.

Lee argues that the "wait and see approach" raises serious

---

[1]Certain technical and nonsubstantive changes were made to the Partial Judgment in the Memorandum Decision issued in connection with Lee's motion to vacate the Partial Judgment or to alter or amend the Partial Judgment.

policy concerns.  Lee concedes that no authority has been found that directly addresses "whether an insurer owes a duty to defend during this in-between time before a final judgment of rescission has been entered," but nonetheless argues that the authority cited above should be disregarded:

> This approach simply waits and resolves the rescission claim first.  If rescission is granted, the court finds no duty to defend was ever owed.  Conversely, if rescission is denied, a duty to defend was always owed.  The 'wait-and-see approach,' as a practical matter, denies the right to a defense that may be owing.  An insurance company can assert a claim for rescission, refuse to defend, and thereby unilaterally impose a substantial time delay and litigation cost on an insured party.  By refusing to assume defense costs, large insurance companies, like USF&G, can easily take advantage of this tactic and avoid claims altogether.  Newer and/or small businesses may not be so fortunate; they will often cave under the delay and cost associated with litigating a protracted rescission issue.
>
> ...
>
> *Sogomonian* and *Atmel* greatly underestimate the potential for abuse their 'wait-and-see' approach' creates.  The remaining right to assert a bad faith claim after resolution of the rescission claim provides precious little protection if the refusal to defend pending final determination of the rescission issue financially destroys the insured.

This "policy argument" is unpersuasive.  The jury found and the Partial Judgment orders that the insurance policy was rescinded because of Lee's fraud and misrepresentation.  The rescission is effective *ab initio*.  Lee's "policy" argument is based on its contention that the Partial Judgment is not final.

1    Even if not technically final, it is final for purposes of this

2    litigation because the jury trial has concluded, verdicts were

3    rendered, post-trial motions denied, and the Partial Judgment

4    entered that finally concludes the rescission claim.

5         Lee argues that, even if USF&G had no duty to defend because

6    of the jury's verdicts and the Partial Judgment, California law

7    permits actions for negligence and breach of the covenant of good

8    faith and fair dealing where an insurer voluntarily assumes the

9    defense.  Lee cites *Travelers Insurance Co. v. Lesher*, 187

10   Cal.App.3d 169 (1986), *overruled on other grounds*, *Buss v.*

11   *Superior Court*, 16 Cal.4th 35 (1997).

12        In *Lesher*, the court found that an insured under a valid

13   policy could maintain a claim for a deficient defense even though

14   the court found no coverage under the terms of the policy and no

15   duty to defend.  *Lesher* explained:

16                Lesher's theory of liability at trial was not
                  dependent on a determination that Travelers
17                had a duty to defend or indemnify under the
                  terms of the policy.  Instead, Lesher's
18                theory was as follows.  Despite the coverage
                  dispute, once Travelers undertook Lesher's
19                defense, it was obligated to conduct that
                  defense with the same duty of care as if
20                there were no coverage dispute.  If Travelers
                  breached that duty of care, it was liable for
21                all damage to Lesher proximately caused by
                  its acts or omissions, even though there was
22                no actual coverage under the policy.  Neither
                  party has cited any case in which liability
23                has been imposed on an insurer under similar
                  facts.  Nevertheless, Travelers does not
24                contend that an insured has no cause of
                  action under such circumstances.

25   187 Cal.App.3d at 187.

26

37

*Sogomonian*, *supra,* 198 Cal.App.3d at 183-185, distinguished *Lesher*:[2]

> There is some authority for the proposition
> that an insurer owes a duty to the insured
> under section 790.03, subdivision (h) even
> where it is established that there is no
> coverage and thus no duty either to indemnify
> or defend. (*Travelers Ins. Co. v. Lesher*
> (1986) 187 Cal.App.3d 169, 190) ... However,
> this may well be appropriate where the
> dispute is limited to the question of
> coverage as to a particular claim, since
> there still remains viable the underlying
> relationship of insurer-insured.  But what of
> the circumstance where the dispute between
> the insurer and the insured goes beyond the
> issue of coverage and results in the
> rescission of the entire contract of
> insurance?

> 'A contract is extinguished by rescission.'
> (Civ. Code § 1688.)  The consequences of
> rescission is not only the termination of
> further liability, but also the restoration
> of the parties to their former positions by
> requiring each to return whatever
> consideration has been received.  (1 Witkin,
> Summary of Cal. Law (9th ed. 1987) Contracts,
> § 869, p.781).  Here, this would require the
> refund by Imperial of any premiums and the
> repayment by the defendants of any proceed
> advance which they may have received.  The
> policy would be 'extinguished' *ab initio*, as
> though it had never existed.  In other words,
> defendants, in law, never were insureds under
> a policy of insurance.  That status cannot
> exist in a vacuum, but must necessarily
> depend upon the existence of a valid policy
> of insurance.  No compelling reason has been
> suggested to us, nor can we conceive of any,
> as to why defendants, having obtained the
> policy upon the basis of material
> concealment, should now have a greater right

---

[2]*Sogomonian* pre-dated the California Supreme Court's decision in *Moradi-Shalal v. Fireman's Fund Insurance Companies*, 46 Cal.3d 287 (1988), which held that there is no private right of action to enforce Insurance Code § 790.03(h).

38

1

> under section 790.03, subdivision (h) than a
> party whom Imperial may have declined to

2

> insure because of truthful answers in a
> policy application.

3

4

> We therefore hold that upon a rescission of a
> policy of insurance, based upon a material

5

> concealment or misrepresentation, all rights
> of the insured thereunder (except the right

6

> to recover any consideration paid in the
> purchase of the policy) are extinguished,

7

> including the right or standing to prosecute
> a claim against the insurer for a violation

8

> of Insurance Code section 790.03, subdivision
> (h).  Therefore, as a matter of law,

9

> defendants can assert no such claim here and
> the summary resolution of their cross-
> complaint was proper.

10

*Sogomonian* as well as other case authority, including that

11

of the Ninth Circuit, *see discussion supra*, unequivocally

12

establish, that Lee's argument, as a matter of contract law,

13

that it can proceed with its claims for breach of contract and

14

breach of the implied covenant of good faith and fair dealing

15

based on a negligent performance of the duty to defend, is

16

without merit as a matter of law.[3]

17

Lee argues that triable issues of fact exist whether USF&G

18

waived and/or should be estopped from asserting that it properly

19

reserved the right to deny its duty to defend and seek

20

reimbursement.

21

By letter dated April 26, 2000, USF&G advised Lee that it

22

would provide Lee independent counsel in connection with the

23

workers' compensation proceedings.  The April 26, 2000 letter

24

---

25

[3]This rulings makes unnecessary resolution of Lee's claim that

26

USF&G negligently performed the duty to defend under a reservation
of rights.

1  stated:

2          The purpose of this letter is to advise you
           that USF&G will provide Lee Investments LLC
3          with independent counsel in connection with
           the workers' compensation proceedings.  In
4          accordance with Civil Code § 2860, counsel
           selected by Lee Investments LLC must have at
5          least five years of experience in litigating
           workers' compensation claims and must provide
6          evidence of professional liability insurance.
           In addition, USF&G's obligation to provide
7          counsel is limited to the hourly rates
           typically paid by USF&G to attorneys on its
8          panel who handle workers' compensation
           litigation, and that rate is $100 per hour.
9
           If you have any questions, please do not
10         hesitate to give me a call.  Nothing
           contained herein shall constitute a waiver of
11         any claims, rights, causes of action, rights
           of action, defenses, positions, or remedies
12         possessed by USF&G or American Specialty, all
           of which are expressly reserved.
13
        Lee argues that "USF&G's vague, boilerplate reservation gave
14
   Lee no notice that USF&G objected to providing a defense in the
15
   WCAB proceeding or would seek reimbursement of defense expenses,"
16
   "gave Lee no notice USF&G would later seek to deny that it owed a
17
   duty of coverage," and "gave no notice that USF&G would seek
18
   reimbursement of defense costs."
19
        However, as Movants note, all of the cases upon which Lee
20
   relies involve circumstances where a reservation of rights was
21
   issued in connection with the defense provided under a valid,
22
   unrescinded insurance policy.  *See Ins. Co. of the West v.*
23
   *Haralambos Beverage Co.*, 195 Cal.App.3d 1308 (1987), *overruled on*
24
   *other grounds*, *Vandenburg v. Superior Court*, 21 Cal.4th 815
25
   (1999) and *Buss v. Superior Court*, *supra*, 16 Cal.4th 35; *Tamrac,*
26

                                 40

1  *Inc. v. Cal. Ins. Guarantee Ass'n*, 63 Cal.App.4th 751 (1998);

2  *Travelers Ins. Co. v. Lesher*, *supra*, 187 Cal.App.3d 169.

3      Movants note that, as of April 26, 2000, when USF&G agreed

4  to provide independent counsel in the workers' compensation

5  proceedings and reserved its rights, USF&G's action for

6  rescission of the policy based on Lee's fraud and

7  misrepresentation and reimbursement of all benefits paid under

8  the policy had been proceeding in this Court for one year.  Lee's

9  contention that it had no notice that USF&G would later seek to

10  deny coverage is ludicrous given this record; USF&G already had

11  an action pending for rescission.

12      Movants argue that, under *Sogomonian* and the other cases

13  cited above, rescission of the policy entitles the insurer to

14  restitution of all consideration received from the insured and

15  returns each party to their former position.

16      Lee argues that triable issues of fact exist whether USF&G

17  should be estopped from asserting that it properly reserved its

18  rights.  Lee has to demonstrate that USF&G (1) assumed and

19  conducted the defense in the underlying suit; (2) without

20  disclaiming liability under a reservation of rights; and (3) that

21  Lee relied upon such conduct to its detriment.  *See Legion Ins.*

22  *Co. v. Wisconsin-California Forest Products ...,* 2001 WL 35809243

23  (E.D.Cal.2001), citing *Ringler Assoc., Inc. v. Maryland Casualty*

24  *Co.*, 80 Cal.App.4th 1165, 1190 (2000).

25      Lee again argues that the reservation of rights did not

26  provide notice to Lee that USF&G objected to coverage under the

1  policy or that USF&G would seek reimbursement of defense costs.

2  Lee contends that, in reliance on USF&G's letter, Lee hired

3  Dowling, Aaron & Keeler to represent Lee in the WCAB case; that

4  Lee has incurred approximately $200,000 in defense costs, a

5  substantial portion of which has been paid for services in

6  defending the federal action for rescission; and that, had USF&G

7  refused to defend the WCAB proceedings or made it clear to Lee

8  that it would seek reimbursement, Lee could have explored

9  settlement with Ms. Conley and then a bad faith action to recover

10 the settlement.

11     Again, Lee's contention that the April 26, 2000 letter did

12 not give notice that USF&G was challenging coverage is baseless;

13 Lee was already an adverse party to USF&G's federal action for

14 rescission of the policy and reimbursement of benefits.  Lee had

15 complete notice that USF&G believed it had been the victim of

16 Lee's fraud and that the policy was void *ab initio*.

17     Lee argues that triable issues of fact exist whether USF&G

18 waived its right to deny a duty to defend or seek reimbursement

19 of defense costs.

20     Lee cites *Miller v. Elite Ins. Co.*, 100 Cal.App.3d 739, 754-

21 755 (1980):

22              Waiver is the voluntary and intentional
               relinquishment of a known right ... Waiver
23              may be express ... or implied from conduct
               ... An insurer can waive policy provisions
24              that would otherwise defeat coverage ...
               Where an insurer reserves its right to claim
25              noncoverage under the policy, notice of the
               reservation must be given to the insured or
26              the reservation is deemed waived ... '[I]f a

> liability insurer with knowledge of a ground
> for forfeiture or noncoverage under the
> policy, assumes and conducts the defense of
> an action brought against the insured,
> without disclaiming liability and giving
> notice of its reservation of rights, it is
> thereafter precluded in an action upon the
> policy from setting up such ground of
> forfeiture or noncoverage.  In other words,
> the insurer's unconditional defense of an
> action brought against its insured
> constitutes a waiver of the terms of the
> policy and an estoppel of the insurer to
> assert such grounds.

Lee argues that USF&G's "vague, boilerplate" reservation of rights was insufficient to disclaim liability or to seek reimbursement of defense costs, "especially where USF&G admitted that it was under an 'obligation' to provide services."  Lee asserts that "[b]y admitting they owed an 'obligation' to provide counsel, USF&G *expressly* waived its right to seek reimbursement." Lee contends that the April 26, 2000 letter did not provide Lee with notice that USF&G "objected to providing or paying for coverage" and that "USF&G's inadequate reservation, coupled with payment for Dowling, Aaron & Keeler's services, demonstrates that USF&G also *impliedly* intended to relinquish its rights to deny a duty to defend and to seek reimbursement.

Lee's arguments are without merit.  USF&G provided independent counsel pursuant to Civil Code § 2860(a) to Lee in the workers' compensation proceeding because USF&G had conflict of interest with Lee concerning the policy.  USF&G, as Lee was then well aware, had sued Lee for rescission of the policy and reimbursement of benefits because Lee's fraud and

43

misrepresentation in obtaining the policy.  As USF&G argues, "an insurer who is prosecuting a rescission action and who has provided a letter with a complete reservation of rights has not manifested the intentional relinquishment of its claims for rescission and restitution of all benefits paid under the policy."

Lee argues that triable issues of fact exist whether USF&G tortiously breached the covenant of good faith and fair dealing when USF&G filed a declaratory relief action against Lee and, after admitting it owed a duty to defend, failed to defend Lee in the federal action, undermined Lee's defense before the WCAB, and then abandoned that defense.  Lee argues:

> [W]here a workers' compensation policy provides a duty to defend a WCAB proceeding and the insurer believes that there is no coverage because of the insured's alleged misrepresentation, the insurer must either deny a defense and indemnity outright or assume the defense under a proper reservation of rights that specifically informs the insured of the reserved claims, wait until the WCAB proceeding is concluded, and then seek to recover the defense costs and indemnity payments from the insured via an action for deceit and misrepresentation.

> However, an insured may not assume the defense of a proceeding under a reservation of rights and then file a declaratory relief action against the insured if doing so would prejudice the insured in the underlying proceeding; only where there is no potential conflict between the trial of the coverage dispute and the underlying action can the insurer proceed with the coverage case before the resolution of the underlying case.

Lee cites *Scottsdale Insurance Company v. MV Transportation*,

**36 Cal.4th 643, 661-662 (2005):**

> The instant Court of Appeal suggested that an
> insurer uncertain of its defense obligations
> might initially assume the defense, then seek
> to 'stop the bleeding' by obtaining a prompt,
> though prospective, 'extinguishment' of its
> duty to defend.  But where, as here, there
> was never a duty to defend, this limited
> remedy provides the insured more, and the
> insurer less, than the parties' bargain
> contemplated.  Moreover, as Scottsdale and
> its amici curiae point out, it also forces
> the insurer to commence litigation of defense
> and coverage issues, and to press for early
> resolution of those issues, while the third
> party litigation is still pending.  However,
> this is a tactic which, in many cases, the
> insurer is not allowed to pursue, and in
> general should be discouraged for policy
> reasons.

> 'When an insured calls upon a liability
> insurer to defend a third party action, the
> insurer as a general rule may not escape the
> burden of defense by obtaining a declaratory
> judgment that it has no duty to defend.  Were
> the rule otherwise, the insured would be
> forced to defend simultaneously against both
> the insurer's declaratory relief action and
> the third party's liability action.  Because
> the duty to defend turns on the potential for
> coverage, and because coverage frequently
> turns on factual issues to be litigated in
> the third party liability action, litigating
> the duty to defend in the declaratory relief
> action may prejudice the insured in the
> liability action.  To prevent this form of
> prejudice, the insurer's action for
> declaratory relief may be either stayed ...
> or dismissed ....'  (*Montrose*, *supra*, 6
> Cal.4th 287, 305 (conc. opn. of Kennard, J.)
> ....

> Indeed, '[i]t is only where there is no
> potential conflict between the trial of the
> coverage dispute and the underlying action
> that an insurer can obtain an early trial
> date and resolution of its claim that
> coverage does not exist ....

45

> The Court of Appeal's analysis contravenes these sound rules and policies.  Unlike the Court of Appeal, we decline to require an insurer uncertain about the law relevant to its coverage and defense obligations to engage its insured in a futile 'two-front war.' ....

Lee cannot rely on this line of reasoning to withstand summary judgment on its claim for breach of the implied covenant of good faith and fair dealing.  The jury's verdicts and the Partial Judgment following an exhaustive trial on the merits, establish that there never was an insurance policy between USF&G and Lee, i.e., the policy was void *ab initio*.  Therefore, USF&G could not have breached the implied covenant of good faith and fair dealing when it filed the federal action.

Lee argues that summary judgment on its claims for breach of contract and breach of the implied covenant of good faith and fair dealing should be denied because Lee needs time for further discovery.  Lee asserts, based on Mr. Jamison's declaration, that it plans further discovery regarding the issues raised by it, including:

> (1) expert testimony whether USF&G's filing for declaratory relief was outside industry standards of good faith and fair dealing; (2) expert testimony whether USF&G's admission that it owed a duty to defend in the WCAB proceeding, and then denying Lee a defense in that proceeding, and all other proceedings, was outside industry standards of good faith and fair dealing; (3) expert testimony whether USF&G committed direct acts of negligence by failing to advise Lee, as they were directed to do by their attorneys Jacobs & Solomon, of Lee's right to independent counsel in the summer of 1999, in failing to clarify USF&G's contention that Mr. Giesler

did not represent Lee, and then after entry
of the partial judgment, by refusing to
defend Lee at all in the WCAB proceedings;
and (4) expert testimony on how Lee in 1999-
2000 could have protected itself from the
liabilities it now potentially facts. Jamison
Decl. ¶ 10.  Insurance industry and workers'
compensation experts need to be consulted on
these issues.  Jamison Decl. ¶ 10.  The
depositions of Mark Katz, who was the
original Jacobs & Solomon attorney who
advised USF&G to provide Lee independent
counsel, of Susan McAlister, who in 2000
directed GAB Robins to retain WCAB counsel
for WCAB medical and legal issues, of Mr.
Giesler, and of Mark Volk, who handled the
WCAB proceeding for GAB Robins, need to be
taken.  Jamison Decl. ¶ 10.  The depositions
of Mr. Giesler and Mr. Gratigny are also
tentatively planned.  Jamison Decl. ¶ 10.

Lee also seeks leave pursuant to Rule 15(a) to file a third
amended counterclaim adding the following allegations:

26.  Before June 24, 1999, USF&G retained the
law firm of Jacobs & Solomon to represent Lee
before the WCAB and that firm entered its
appearance for Lee before the WCAB on or
about June 24, 1999.  On or about June 24,
1999, attorney Mark Katz of that law firm
informed Lisa Ehrlich that Jacobs & Solomon
had been retained to represent Lee.  By
letter dated July 16, 1999 to GAB Robins
North America, Mr. Katz informed USF&G that
there was a conflict in light of the federal
litigation attempting to rescind the WC
Policy, reiterated that his firm had been
retained to represent Lee, and advised USF&G
to issue to Lee and their attorneys a letter
placing them on notice of the conflict and
offering at USF&G's expense outside counsel
for representation of Lee in the defense of
the workers' compensation claim.  Lee was not
copied with this July 16, 1999 letter and was
not informed of the conflict nor of its right
to independent counsel.  By letter dated
August 9, 1999 to the WCAB, Jacobs & Solomon
withdrew from representation of Lee before
the WCAB without informing Lee and without
securing a replacement attorney for Lee.

47

USF&G likewise did not inform Lee of this withdrawal and did not secure counsel to replace Jacobs & Solomon in the defense of the WCAB proceeding.

...

31.   Thereafter, between August 2000 and May 2002, numerous depositions were jointly taken in the WCAB and federal court proceedings. After July, 2000, Giesler represented to James Sherwood of Dowling, Aaron & Keeler that proceedings in the WCAB were stayed pending resolution of the federal court proceedings.  In reliance on Mr. Giesler's and USF&G's representations that Mr. Giesler represented Lee before the WCAB, and in reliance on Mr. Giesler's representation that the WCAB proceedings were stayed and no action could be taken before that tribunal to proceed to arbitration for coverage, Dowling, Aaron & Keeler elected not to formally appear before the WCAB and did not seek arbitration before the WCAB following Dowling, Aaron & Keeler's retention in July, 2000.

...

33. ... Since on or about February 28, 2007, USF&G has refused to defend Lee at all before the WCAB, notwithstanding that the 'partial judgment' on a jury verdict in federal court and all other proceedings in the federal court are not final and Lee therefore continues to be entitled to a defense before the WCAB.  USF&G has also systematically engaged in tactics designed to, and that have actually resulted in, Lee not being able to proceed to arbitration of coverage before the WCAB, which arbitration, if it becomes final before a judgment of the federal courts is final, will control whether or not there is coverage under the WC policy.

34. ...(5) failing to provide Lee with representation before the WCAB; (6) falsely representing to Lee after July 16, 2000 that the WCAB proceedings were stayed pending the outcome of the federal court proceedings ....

48

...

36.   As a legal and proximate result of
USF&G'S conduct as alleged above, Lee is
forced to negotiate with Conley and is
exposed to an award or WCAB approved
settlement with Ms. Conley that should be
paid by USF&G, but which USF&G refuses to
pay.

...

76.   USF&G and American Specialty also owed
Lee a duty to act in good faith and deal
fairly with Lee in that the WC Policy and/or
public policy required USF&G to provide Lee
with a defense in the WCAB proceedings;
alternatively, to the extent, if any, that
USF&G was not legally required to provide Lee
with a defense in these proceedings, USF&G
was duty bound to act in good faith toward
Lee, deal fairly with Lee, and not conduct
Lee's defense in a negligent manner.

77.   Counter defendants have breached the
covenants of good faith and fair dealing and
acted in bad faith ... by ... (12) having
assumed Lee's defense before the WCAB,
intentionally conducting the defense in a
manner contrary to Lee's interests and in the
sole interest of USF&G; (13) having assumed
the defense of Lee before the WCAB,
negligently conducting the defense; and (140
forcing Lee to suffer a settlement and/or
award in favor of Ms. Conley in the WCAB
proceedings.

...

TENTH CLAIM FOR RELIEF (Negligent Provision
of Defense)

80. Lee incorporates herein and makes a part
hereof by this reference all of the
allegations contained in paragraphs 1 through
78 as set forth herein.

81.   Alternatively, USF&G and American
Specialty negligently failed to notify and
provide Lee with independent counsel for

Lee's defense in the WCAB proceedings when
they were instructed to do so by Mark Katz of
Solomon & Katz; negligently failed to keep
Lee informed of important developments in the
WCAB proceedings; negligently failed to
inform Lee that USF&G and American Specialty
contended that Giesler was not Lee's defense
attorney for medical and legal workers'
compensation issues; negligently advised Lee
that nothing could be done to move the WCAB
Proceeding to arbitration of coverage;
negligently withdrew Lee's defense altogether
after entry of the partial judgment on the
initial federal court jury verdict; and
otherwise negligently conducted Lee's defense
before the WCAB.

82.  Alternatively, to the extent, if any
that USF&G did not owe a duty to defend Lee
before the WCAB, USF&G nevertheless
voluntarily assumed that defense and thereby
undertook a duty to provide that defense
without negligence.  Upon assuming the
defense of Lee, USF&G and American Specialty
negligently conducted that defense as alleged
above.

83.  As a proximate and legal result of the
negligence of USF&G and American Specialty,
Lee has been damaged as alleged above in an
amount to be shown according to proof and
which amount will consist of attorney fees,
expert fees, and other litigation expenses
and costs incurred in defending both the WCAB
proceeding and the Rescission Action,
including any amounts awarded to USF&G
consequent to orders of this court in
connection with trials held in 2007; any
amounts paid to Diana Conley in the WCAB
proceedings by way of settlement, award or
otherwise; and any other amounts shown to
have been legally and proximately caused by
counterdefendants' thwarting of Lee's ability
to have the issue of coverage timely
determined in arbitration before the WCAB.

Lee argues that, since the court trial phase of the first

trial is not yet concluded and no scheduling conference has yet

been held for Lee's and USF&G's counterclaims, and "since key

evidence from Jacobs & Solomon only surfaced after the jury trial

so far had," there is no improper delay on Lee's part in doing

this discovery.  Lee also argues that there is no improper delay

in further amending Lee's counterclaim as set forth above and

that there is no prejudice to USF&G "since this action has

otherwise been inactive pending resolution of the court trial

phase of the first trial."

Lee's request to conduct further discovery and to amend it's

counterclaim is DENIED.

Lee's motion to further amend its counterclaim is governed

by Rule 16(b), Federal Rules of Civil Procedure, not Rule 15(a).

Rule 16(b) provides that a scheduling conference order may

modified "only for good cause and the judge's consent."

Because a pretrial scheduling order has been filed in this

action, resolution of this motion to amend is governed by Rule

16, Federal Rules of Civil Procedure.  *Johnson v. Mammoth*

*Recreations, Inc.*, 975 F.2d 604, 607-608 (9th Cir.1992).  Rule

16(b) provides that "[a] schedule shall not be modified except

upon a showing of good cause and by leave of the district judge."

As explained in *Mammoth Recreations, Inc.*:

> 'A court's evaluation of good cause is not
> coextensive with an inquiry into the
> propriety of the amendment under ... Rule
> 15.' ... Unlike Rule 15(a)'s liberal
> amendment policy which focuses on the bad
> faith of the party seeking to impose an
> amendment and the prejudice to the opposing
> party, Rule 16(b)'s 'good cause' standard
> primarily considers the diligence of the
> party seeking the amendment.  The district
> court may modify the pretrial schedule 'if it

51

1
2
3
4
5
6
7

> cannot reasonably be met despite the
> diligence of the party seeking the
> extension.'  Fed.R.Civ.P. 16 advisory
> committee's notes (1983 amendment) ...
> Moreover, carelessness is not compatible with
> a finding of diligence and offers no reason
> for relief ... Although the existence or
> degree of prejudice to the party opposing the
> modification might supply additional reasons
> to deny a motion, the focus of the inquiry is
> upon the moving party's reasons for seeking
> modification ... If that party was not
> diligent, the inquiry should end.

975 F.2d at 609.  Further, "[a]s a practical matter,

extraordinary circumstances is a close correlate of good cause."

*Id.* at 610.  "'The district court is given broad discretion in

supervising the pretrial phase of litigation, and its decisions

regarding the preclusive effect of a pretrial order ... will not

be disturbed unless they evidence a clear abuse of discretion.'"

*Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087

(9th Cir.2002).  Further, as Movants contend, even if Lee's

request is governed by Rule 15(a), the factors determining

whether to grant leave militate against amendment.  Four factors

are considered: (1) bad faith on the part of the movant; (2)

undue delay; (3) prejudice to the opposing party; and (4)

futility of the proposed amendment.  *Lockheed Martin Corp. v.*

*Network Solutions, Inc.* 194 F.3d 980, 986 (9th Cir.1999).

As Movants argue, Lee's proposed amendments are denied on

the ground of futility because the jury's verdicts and the

Partial Judgment resulted in the extinguishment of the insurance

policy and preclude that additional theories for relief asserted

by Lee.  *See discussion supra.*

1    Lee's proposed amendments are also futile because "an

2  insured seeking damages resulting from his insurer's failure to

3  provide an adequate defense must prove that he would have

4  prevailed at trial if a proper defense had been provided.  *See*

5  *Lesher*, *supra*, 187 Cal.App.3d at 197.  As Movants contend, Lee

6  cannot satisfy this standard because it did not prevail in the

7  jury trial.  Movants further assert:

8              Its contentions that it would have sought
             arbitration before the WCAB in 1999 is
9              refuted by the facts establishing that it did
             not seek such arbitration for almost six
10             years after USF&G provided an independent
             defense from 2000 to 2006.  Lee's contention
11             that it would have sought arbitration in 1999
             is also refuted by the undisputed facts that
12             objections asserted by USF&G to the
             jurisdiction of the WCAB and appeals or
13             petitions for writ were pending until April,
             2000, when Lee requested and obtained
14             independent counsel.  Lee could not pursue
             arbitration at that point, and when it then
15             obtained the independent counsel, chose not
             to pursue arbitration for six years.
16
     Lee's contention that Mr. Giesler represented Lee has been
17
   rejected by the Court.  Lee cannot explain why it's independent
18
   counsel, retained to defend in the WCAB proceedings, in
19
   consultation with "Lee's experienced business and litigation
20
   counsel, Ms. Ehrlich," did not pursue arbitration for six years.
21
   It is clear that Lee did not seek arbitration solely because it
22
   made the strategic decision that it wished to proceed in the
23
   District Court on its counterclaims to recover damages and on its
24
   defense to USF&G's complaint.
25
     As Movants argue, the other three Rule 15(a) factors support
26

denial of Lee's request to amend:

> Lee's bad faith in seeking this amendment solely to delay resolution of its claims for breach of contract in the ninth year of this litigation and solely for the purposes of delaying the resolution of this matter to allow it to proceed to relitigate the issues of the complaint before the WCAB.  Lee cannot show any excuse for its delay in asserting the purported new claim because it raised the same allegations that Giesler had represented to it at the time it filed its motion for leave to file a second amended complaint on March 3, 2006, over two and a half years ago. In its memorandum in support of that proposed amendment it alleged at page 7 that Giesler represented both Lee and USF&G and made that allegation in the second amended counterclaim.

> Further, Lee's contention that Jacobs & Solomon made an appearance for Lee in June though August 1999, and that Lee did not have independent counsel from that time until Lisa Ehrlich's April, 2000 demand was asserted in connection with its motion to disqualify Giesler and counsel for USF&G heard by this Court on November 13, 2006 ... As a result, none of the alleged 'issues' Lee asserts are in any event new.  There is no excuse for Lee's two year delay in seeking leave to amend its counterclaim, even if such new claim had any merit, which it does not.

Lee relies on revisionist history, largely the result of the entry of new counsel on its behalf who seeks to change the world, rewrite the legal history of this case, and ignore nine years of litigation in the federal court and the results of a jury trial wherein Lee was found to have acted fraudulently and each and every of its claims and contentions were unanimously rejected by the jury.  Such an imposition on the judicial process must not be permitted to endure.

54

1  Movant's motion for summary judgment on the eighth claim for
2  breach of contract, and the ninth claim for breach of the implied
3  covenant of good faith and fair dealing in Lee's Second Amended
4  Counterclaim is GRANTED.

5  **D.  LEE'S SIXTH CLAIM FOR DECLARATORY RELIEF AND CROSS-**
6  **CLAIMS AND COUNTERCLAIMS OF THE REXFORD PARTIES.**

7  Because summary judgment for Movants is granted on Lee's
8  claim for breach of contract and breach of the implied covenant
9  of good faith and fair dealing, Movant's motion for summary
10  judgment on Lee's sixth claim for declaratory relief in Lee's
11  Second Amended Counterclaim and on all claims for relief alleged
12  by the Rexford Parties in their Counterclaim and Cross-Claim is
13  GRANTED.

14  <u>**CONCLUSION**</u>

15  For the reasons stated:

16  1.  Movant's motion for summary judgment on remaining claims
17  of Lee Investments LLC in the Second Amended Counterclaim and on
18  the claims asserted by the Rexford Parties in their Counterclaim
19  and Cross-Claim is GRANTED;

20  2.  Counsel for Movants shall prepare and lodge a form of
21  order that reflects the rulings in this Memorandum Decision
22  within five (5) days following the date of service of this
23  decision by the Court's Clerk.

24  IT IS SO ORDERED.

25  Dated:   December 2, 2008            /s/ Oliver W. Wanger
                                    UNITED STATES DISTRICT JUDGE
26

55