IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES FIDELITY & GUARANTY COMPANY, | ) ) ) ) ) | No. CV-F-99-5583 OWW/SMS<br><br>MEMORANDUM DECISION GRANTING AON RISK SERVICES, INC. OF CALIFORNIA INSURANCE |
| Plaintiff, | ) ) | SERVICES MOTION FOR JUDGMENT ON THE PLEADINGS OR SUMMARY |
| vs. | ) ) ) | JUDGMENT AS TO CROSS-CLAIMS ASSERTED BY RICHARD K. EHRLICH, REXFORD DEVELOPMENT |
| LEE INVESTMENTS, LLC dba THE ISLAND, et al., | ) ) ) | CORPORATION AND REXFORD PROPERTIES LLC (Doc. 834) |
| Defendants. | ) ) ) ) | |

Third-Party Defendant Aon Risk Services, Inc. of Central California Insurance Services, ("Aon"), moves for judgment on the pleadings or summary judgment as to the claims of Richard K. Ehrlich, Rexford Development Corporation, and Rexford Properties LLC (the "Rexford Defendants") against Aon.  Aon contends that the Rexford Defendants' claims against Aon fail as a matter of law because (1) the Rexford Defendants, as the alter ego of Lee Investments, LLC ("Lee"), have no independent standing to assert

1

claims against Aon; (2) the Rexford Defendants' claims against Aon are barred because they are identical to the claims of Lee against Aon, which have been adjudicated at a lengthy jury trial against Lee and in favor of Aon; and (3), to the extent the Rexford Defendants' Ninth Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing is asserted against Aon, the claim fails as a matter of law because Aon was not a party to any insurance contract with the Rexford Defendants and the Court ruled that the claim could only proceed if there was no rescission in the first phase of trial.

**A.   GOVERNING STANDARDS.**

**1.   Judgment on the Pleadings.**

A Rule 12(c) motion challenges the legal sufficiency of the opposing party's pleadings after the pleadings are closed. Judgment on the pleadings is appropriate when, even if all the allegations in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. *Honey v. Distelrath*, 195 F.3d 531, 532-533 (9th Cir.1999). For purposes of a motion for judgment on the pleadings, the allegations of the non-moving party's pleading must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false. *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir.1990). The Court may also consider those "documents whose contents are alleged in a complaint and whose authenticity no party questions." *Branch v. Tunnell*, 14 F.3d 449, 453-454 (9th Cir.1994). However, "if matters outside

the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(c). Notice of intent to seek summary judgment must be given.

        2.  <u>Summary Judgment</u>.

Summary judgment is proper when it is shown that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A fact is "material" if it is relevant to an element of a claim or a defense, the existence of which may affect the outcome of the suit. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). Materiality is determined by the substantive law governing a claim or a defense. *Id*. The evidence and all inferences drawn from it must be construed in the light most favorable to the nonmoving party. *Id*.

The initial burden in a motion for summary judgment is on the moving party. The moving party satisfies this initial burden by identifying the parts of the materials on file it believes demonstrate an "absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to defeat summary judgment. *T.W. Elec.*, 809 F.2d at 630. The nonmoving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment," but must set forth by affidavit or other appropriate evidence "specific facts showing

there is a genuine issue for trial." *Id*.  The nonmoving party

may not simply state that it will discredit the moving party's

evidence at trial; it must produce at least some "significant

probative evidence tending to support the complaint." *Id*.  The

question to be resolved is not whether the "evidence unmistakably

favors one side or the other, but whether a fair-minded jury

could return a verdict for the plaintiff on the evidence

presented." *United States ex rel. Anderson v. N. Telecom, Inc.*,

52 F.3d 810, 815 (9th Cir.1995).  This requires more than the

"mere existence of a scintilla of evidence in support of the

plaintiff's position"; there must be "evidence on which the jury

could reasonably find for the plaintiff." *Id*.  The more

implausible the claim or defense asserted by the nonmoving party,

the more persuasive its evidence must be to avoid summary

judgment." *Id*.  In *Scott v. Harris*, 550 U.S. 372, 127 S.Ct.

1769, 1776 (2007), the Supreme Court held:

> When opposing parties tell different stories,
> one of which is blatantly contradicted by the
> record, so that no reasonable jury could
> believe it, a court should not adopt that
> version of the facts for purposes of ruling
> on a motion for summary judgment.

As explained in *Nissan Fire & Marine Ins. Co. v. Fritz Companies*,

210 F.3d 1099 (9th Cir.2000):

> The vocabulary used for discussing summary
> judgments is somewhat abstract.  Because
> either a plaintiff or a defendant can move
> for summary judgment, we customarily refer to
> the moving and nonmoving party rather than to
> plaintiff and defendant.  Further, because
> either plaintiff or defendant can have the
> ultimate burden of persuasion at trial, we

4

refer to the party with and without the ultimate burden of persuasion at trial rather than to plaintiff and defendant.  Finally, we distinguish among the initial burden of production and two kinds of ultimate burdens of persuasion: The initial burden of production refers to the burden of producing evidence, or showing the absence of evidence, on the motion for summary judgment; the ultimate burden of persuasion can refer either to the burden of persuasion on the motion or to the burden of persuasion at trial.

A moving party without the ultimate burden of persuasion at trial - usually, but not always, a defendant - has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment ... In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial ... In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact ....

If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial ... In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything ... If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense ... If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment ... But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion.

210 F.3d at 1102-1103.

B.  **FACTUAL BACKGROUND**.

1.  **Aon's Statement of Undisputed Facts**.

**UDF 1**:  On September 12, 2001, Lee filed its third-party complaint against Aon, alleging claims for (1) negligence, (2) fraud, (3) conspiracy to defraud, (4) negligent misrepresentation, (5) equitable indemnity, (6) declaratory relief, and (7) breach of oral contract.

*Rexford Parties' Response*: UNDISPUTED

**UDF 2**:  On August 22, 2006, USF&G filed its Amended and Supplemental Complaint, which sought rescission of the workers' compensation policy issued to Lee, and added alter-ego allegations against Richard Ehrlich, Rexford Development Corporation, and Rexford Properties (collectively, "the Rexford Defendants").

*Rexford Parties' Response*: UNDISPUTED

**UDF 3**:  On October 5, 2006, the Rexford Defendants answered USF&G's Supplemental and Amended Complaint, and purported to assert cross-claims against Aon "if, and only if" the Rexford Defendants were determined to be an alter-ego of Lee. The counter and crossclaims asserted by the Rexford Defendants are virtually identical to the cross-claims asserted by Lee in its third-party complaint, except that two new counter-claims were added: the Eighth Claim for Breach of Written Contract (not alleged against Aon), and the Ninth Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

(not alleged against Aon, but which alleges that Aon had duties).

     *Rexford Parties' Response*: UNDISPUTED

    <u>UDF 4</u>:  Prior to the commencement of trial, the Court ordered that the case would be heard in two phases. In the first phase the jury would hear, "Lee's third party complaint against Aon and Aon's counterclaim thereto related to issuance of the disputed insurance policy."  The Pretrial Order specified that in the first phase of trial, the jury would "act as an advisory jury of facts related to any alleged equitable claims ..." and that "findings on factual issues raised by equitable claims or defenses shall be submitted to the jury." The Pretrial Order also confirmed certain undisputed facts including the fact that "USF&G issued to Lee a policy of worker's compensation insurance…."

     *Rexford Parties' Response*: UNDISPUTED that "the Order states what it states."

    <u>UDF 5</u>:  As to the second phase of trial, the Court ordered that a separate jury would hear the claims of USF&G against the Rexford Defendants, and that "if there is no rescission [in the first phase of trial]…" the jury would also hear Lee's claims for breach of written contract and breach of the implied covenant of good faith and fair dealing."

     *Rexford Parties' Response*: *Lee* disputes UDF 5 on the ground that it does not fully state the record.  The Court also ordered "that at the conclusion of the first trial, the Court

will set a scheduling conference TO SET A TRIAL DATE respecting the issues remaining to be tried in the second trial, and for discovery, if necessary respecting USF&G's alter ego claims and respecting Lee's claims for breach of bad faith denial of insurance benefits and breach of duty to defend."  The Court's March 18, 2008 "Memorandum Decision Granting in Part and Denying in Part Lee's Motion to Vacate Partial Judgment on Jury Verdict on Multiple Claims Involving Multiple Parties or To Alter or Amend Partial Judgment" granted Lee's motion to amend the partial judgment to the extent that the parties had reserved the issue whether USF&G had breached the duty to defend.

UDF 6:  The first phase of trial began on January 29, 2007 and concluded with jury verdicts on February 27, 2007. At trial, Lee did not present any evidence or argument that Aon ever entered into any written contract with Lee or the Rexford Defendants to insure or provide indemnity to Lee or the Rexford Defendants.  The jury found that Lee had made an intentional misrepresentation to USF&G and Aon. The jury further found against Lee and in favor of Aon on Lee's claims for negligence, fraud, conspiracy to defraud, negligent misrepresentation, and breach of oral contract. Except for the defense of laches, the jury found in favor of Aon as to all of its affirmative defenses against Lee, and found that Lee acted "unfairly or in bad faith." The jury further found in favor of Aon and against Lee for Aon's claims for fraud, negligent misrepresentation, and negligence/ tort of another, and against Lee and in favor of Aon as to all

affirmative defenses asserted by Lee.

*Rexford Parties' Response*: Disputed because "[t]he special verdict states what it states."

UDF 7:  The Court entered Partial Judgment "against Lee on all of its claims and in favor of USF&G, American Specialty and Aon…. and in favor of USF&G, American Specialty and Aon on all of their affirmative defenses to Lee's claims."  The Court further entered Partial Judgment in favor of Aon and against Lee on Aon's affirmative defenses, including: the fraud of Lee; negligent misrepresentation by Lee; estoppel against Lee; wrongful conduct by Lee; common law waiver against Lee; Lee's intentional tort as a superseding cause; and Lee's assumption of risk. The Court additionally entered judgment in favor of Aon on all of its claims against Lee, including "Aon's claims for intentional misrepresentation, negligent misrepresentation and that Lee was 100% comparatively at fault; in favor of Aon's negligence claim against Lee; that Aon was not negligent…" and "in favor of Aon and against Lee on all Lee's affirmative defenses to Aon's claims, including fraud, negligent misrepresentation, estoppel, no wrongful conduct by Aon; no common law waiver by Aon, no unreasonable delay by Aon."

*Rexford Parties' Response*: UNDISPUTED that the Partial Judgment "states what it states."

      2.  Rexford Parties' Statement of Disputed Facts.

DUF 8: At the time Lee filed its answer in 1999, none of the Rexford Parties were named in the action, none were represented

by independent counsel, and none joined in Lee's answer.

**DUF 9**: None of the Rexford Parties had the opportunity to assert the affirmative defense that the Workers' Compensation Administrative [sic] Board had exclusive jurisdiction over the lawsuit when Lee filed its answer in 1999.

**DUF 10**: None of the Rexford Parties was put on notice that they faced possible liability in the lawsuit until August 22, 2006 when USF&G filed its Amended and Supplemental Complaint adding alter ego allegations against the Rexford Parties.

**DUF 11**: The Rexford Parties, and especially Richard K. Ehrlich, did not share a similar interest to Lee in defending against the USF&G lawsuit.

**DUF 12**: Lee has faced the possibility of bankruptcy throughout this proceeding and the specter of corporate bankruptcy does not offer the same incentive to litigate as to the personal liability that now faces Richard K. Ehrlich.

**DUF 13**: Richard K. Ehrlich did not direct how the litigation should proceed.

**DUF 14**: USF&G has argued that Lee waived its right to assert the exclusive jurisdiction of the WCAB.

**DUF 15**: The Court granted USF&G's motion to strike Lee's affirmative defense asserting the exclusive jurisdiction of the WCAB in the December 21, 2006 Order on Motions Re Issues for Trial Heard on November 13 and 20, 2006.

**DUF 16**: Lee, and now the Rexford Parties as alleged alter ego defendants (which status is denied), dispute that Lee waived

10

the exclusive jurisdiction affirmative defense by Lee's answer because, in the October 6, 1999 Joint Scheduling Report filed by Lee, Diana Conley, and USF&G, USF&G expressly agreed that the Court's jurisdiction was a contested legal issue.

**DUF 17**: Because this case never should have gone to trial, all of the factual issues that were tried in the federal jury trial still remain as genuine issues of material fact between the Rexford Parties and Aon.

C.  **MERITS OF MOTION**.

Aon argues that the Rexford Parties have no standing to assert affirmative claims against Aon because the Rexford Parties do not and cannot any factual basis for suing Aon.  There are no allegations that Aon had any legal or business relationship with the Rexford Parties or entered into any agreements with the Rexford Parties.  The Rexford Parties' claims against Aon are entirely derivative of Lee's claims and are asserted only if the Rexford Parties are determined to be the alter ego of Lee.

Aon further argues that the Rexford Parties cannot assert a legal basis for standing since the alter ego doctrine does not provide a corporation's alter ego with standing to sue.

"Generally, the corporate veil can be pierced only by an adversary of the corporation, not by the corporation itself for its own benefit."  *Disenos Artisticos E Industriales, S.A. v. Costco Wholesale Corp.*, 97 F.3d 377, 380 (9th Cir.1996).  As explained in *Communist Party v. 522 Valencia, Inc.*, 35 Cal.App.4th 980, 995 (1995):

11

> 'Alter ego is a limited doctrine, invoked
> only where recognition of the corporate form
> would work an injustice to a third person
> ...' ... Alter ego is utilized to prevent two
> parties with the *same* interest from
> inequitably using the corporate form to
> thwart a third party's rights; it is not
> designed to unite two separate entities with
> *opposing* interests for the benefit of the one
> claiming to control the other ... Respondents
> have cited no case authority, and we have
> found none, in which rather than being used
> to reach behind the corporate form to attach
> liability to another individual or entity,
> the alter ego doctrine has been employed to
> establish a relationship of identity between
> the defendant corporation and the plaintiff
> itself, in order to allow the plaintiff to
> obtain for itself the assets of the
> corporation.

Here, Aon contends, USF&G and Aon alleged alter ego liability against the Rexford Parties to prevent fraud and injustice should Lee seek to avoid the Partial Judgment.  The Rexford Parties are not entitled to use the alter ego doctrine as a "sword" in order to assert affirmative claims.  Permitting the Rexford Parties to relitigate claims that already have been adjudicated in Aon's favor would contravene the doctrine's requirement of preventing fraud or injustice.

The Rexford Parties concede the general law applicable to alter egos cited by Aon.  The Rexford Parties contend that courts "have regularly recognized that alter ego defendants possess their own due process rights independent of the primary corporate defendant."

The Rexford Parties cite *Hennessey's Tavern, Inc. v. American Air Filter Co., Inc.*, 204 Cal.App.3d 1351, 1359-1360

(1988):

> When a defendant is first named in an amended
> complaint and is alleged to be the alter ego
> of a defendant named in the original
> complaint, he is brought into the action as a
> new defendant and the action is commenced
> against him at the time the amended complaint
> naming him is filed.  It is necessary that
> the new defendant be named in the amended
> complaint and summons issued thereon, and
> that they be served upon him, in order for
> the court to acquire jurisdiction over him
> and he be afforded his due process rights to
> notice and the opportunity to be heard.  This
> is true event though the alter ego defendant
> is considered to be identical with, i.e., the
> 'other self' of, the defendant named in the
> original complaint.

The Rexford Parties also cite *NEC Electronics Inc. v. Hart*, 208

Cal.App.3d 772 (1989).  In *NEC Electronics Inc.*, the plaintiff

won a default judgment in a contract action against a corporation

for nonpayment of goods sold to the corporation.  After the

corporation filed bankruptcy, the trial court granted plaintiff's

motion to amend the judgment pursuant to California Civil Code §

187 to name the corporation's chief executive officer and sole

shareholder as an additional judgment debtor.  The Court of

Appeal reversed, holding in pertinent part:

> Judgments are often amended to add additional
> judgment debtors on the grounds that a person
> or entity is the alter ego of the original
> judgment debtor ... This is an equitable
> procedure based on the theory that the court
> is not amending the judgment to add a new
> defendant but is merely inserting the correct
> name of the real defendant ... 'Such a
> procedure is an appropriate and complete
> method by which to bind new individual
> defendants where it can be demonstrated that
> in their capacity as alter ego of the
> corporation they in fact had control of the

previous litigation, and thus were virtually
represented in the lawsuit.' ... In other
words, '[i]f the claim of individual
liability is made at some later stage in the
action, the judgment can be made individually
binding on a person associated with the
corporation only if the individual to be
charged, personally or through a
representative, had control of the litigation
and occasion to conduct it with a diligence
corresponding to the risk of personal
liability that was involved.' ....

208 Cal.App.3d at 778-779.

The Rexford Parties argue that, "assuming, _arguendo_, that
any of the Rexford parties are found to alter egos of Lee, the
Rexford parties, as alleged alter egos of Lee, <u>do</u> have standing
to assert an affirmative defense claim that their due process
rights were not adequately protected in the earlier litigation
[because they] were not given notice or an opportunity to be
heard on the issue of the exclusive jurisdiction of the WCAB."
The Rexford Parties acknowledge that a Section 187 motion is not
at issue in this case but assert that the "<u>NEC Electronics</u> line
of cases do support by analogy ... the general proposition that a
court should consider whether the due process rights of an alter
ego shareholder have been adequately protected prior to being
named as a party."

The Rexford Parties recognize that the _NEC Electronics_ line
of cases involved default judgments where notice and opportunity
to be heard are the primary concerns, and that there is another
line of cases, _Dow Jones Co. v. Avenal_, 151 Cal.App.3d 144
(1984), where the judgment was amended to add judgment debtors.

14

In *Dow Jones Co. v. Avenal*, the plaintiff's motion for summary judgment was granted and plaintiff then moved to amend the judgment to additional judgment debtors.  The new judgment debtors argued that amendment to the judgment was improper because they did not actually litigate the issue of their liability in the hearing on the motion for summary judgment.  The *Dow Jones* Court rejected this contention, stating:

> While appellants themselves, technically were
> not given the opportunity to convince the
> trial court that material issues of fact did
> exist because they were not then named
> parties, they were able to do so through the
> vehicle of Communimark.  Communimark did
> present a defense at that first summary
> judgment hearing.

151 Cal.App.3d at 150.  The Rexford Parties argue:

> The present case is more analogous to the
> default judgment line of cases because of
> USF&G's allegation that Lee waived a crucial
> defense.  The dispositive inquiry under both
> the NEC Electronics cases and the Dow Jones
> cases is whether the due process rights of
> the alter ego were protected.  As discussed,
> the Rexford Parties did not have notice or a
> fair opportunity to be heard when Lee's all-
> important answer was filed.

Although Aon concedes that USF&G argued that Lee waived the exclusive jurisdiction defense, this assertion is misleading because Judge Coyle twice adjudicated Lee's exclusive jurisdiction contention on the merits and Judge Wanger denied Lee's motion to vacate the Partial Judgment on the ground that the WCAB has and had exclusive jurisdiction, deciding the question a third time.  Further, Aon argues, the Rexford Parties' contention that they have the right to reargue the exclusive

15

1   jurisdiction issue is immaterial because that argument is an

2   affirmative defense to USF&G's claims against Lee.  Aon argues

3   that the WCAB cannot exercise jurisdiction over the claims

4   between Aon and Lee or the Rexford Parties because those are

5   supplemental to the claims between USF&G and Lee.  Further, the

6   cases relied upon by the Rexford Parties are distinguishable.

7   Aon does not seek to impose liability on the Rexford Parties:

8            Instead, Aon's motion ... seeks to adjudicate
             the affirmative claims of the Rexford
9            Defendants after the underlying facts were
             adjudicated by a jury.  Moreover, no (even
10           arguable) due process concerns are present
             here because the Rexford Defendants
11           affirmatively elected to assert these claims.
             The Rexford Defendants could have avoided any
12           concerns about having these claims
             adjudicated against them by simply not filing
13           a counterclaim [sic].

14       Aon correctly asserts that seven of the claims alleged

15   against Aon by the Rexford Parties are identical to those alleged

16   by Lee against Aon, i.e., claims for negligence, fraud,

17   conspiracy to defraud, negligent misrepresentation and breach of

18   oral contract.  The jury returned verdicts against Lee on all

19   these claims and the Partial Judgment was entered against Lee as

20   to these claims.  The Rexford Parties' status is derivative; the

21   had no role in these matters.

22       Aon contends that its motion for judgment on the pleadings

23   and/or summary judgment against the Rexford Parties should be

24   granted under the doctrines of res judicata, collateral estoppel

25   and/or law of the case.

26       As explained in *Zevnik v. Superior Court*, 159 Cal.App.4th

76, 82 (2008):

> 'Res judicata, or claim preclusion, prevents
> relitigation of the same cause of action in a
> second suit between the same parties or
> parties in privity with them.  Collateral
> estoppel, or issue preclusion, "precludes
> relitigation of issues argued and decided in
> prior proceedings." ....'  Res judicata
> precludes the relitigation of a cause of
> action only if (1) the decision in the prior
> proceeding is final and on the merits; (2)
> the present action is on the same cause of
> action as the prior proceeding; and (3) the
> parties in the present action or parties in
> privity with them were parties to the prior
> proceeding ....
>
> Collateral estoppel precludes the
> relitigation of an issue only if (1) the
> issue is identical to an issue decided in a
> prior proceeding; (2) the issue was actually
> litigated; (3) the issue was necessarily
> decided; (4) the decision in the prior
> proceeding is final and on the merits; and
> (5) the party against whom collateral
> estoppel is asserted was a party to the prior
> proceeding or in privity with a party to a
> prior proceeding ... Even if the minimal
> requirements for application of collateral
> estoppel are satisfied, courts will not apply
> the doctrine if considerations of policy or
> fairness outweigh the doctrine's purposes as
> applied in a particular case ..., or if the
> party to be estopped had no full and fair
> opportunity to litigate the issue in the
> prior proceeding.

"As most commonly defined, the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case". *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 815-816 (1988).  "The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs."  *Milgard Tempering, Inc.*

1   *v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir.1990).  Under

2   the doctrine, a court is generally precluded from reconsidering

3   an issue previously decided by the same court or a higher court

4   in the identical case.  *Id*.  "For the doctrine to apply, the

5   issue in question must have been 'decided explicitly or by

6   necessary implication in [the] previous disposition." *United*

7   *States v. Lummi Indians*, 235 F.3d 443, 452 (9th Cir.2000). As

8   explained in *United States v. Alexander*, 106 F.3d 874, 876 (9th

9   Cir. 1997):

10              Under the 'law of the case' doctrine, 'a
                court is generally precluded from
11              reconsidering an issue that has already been
                decided by the same court, or a higher court
12              in the identical case.' ... The doctrine is
                not a limitation on a tribunal's power, but
13              rather a guide to discretion.

14  A court abuses its discretion in applying the law of the case

15  doctrine only if (1) the first decision was clearly erroneous;

16  (2) an intervening change in the law occurred; (3) the evidence

17  on remand was substantially different; (4) other changed

18  circumstances exist; or (5) a manifest injustice would otherwise

19  result.  *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th

20  Cir.1998).

21          The Rexford Parties argue that, because they were not able

22  to assert the exclusive jurisdiction of the WCAB, they should not

23  be bound by the Partial Judgment against Lee:

24              The Due Process rights of the Rexford Parties
                were not protected from the start of this
25              case all the way until no earlier than August
                22, 2006, when USF&G filed its Amended and
26              Supplemental Complaint naming the Rexford

18

Parties as defendants ... Because these rights were not protected, the Rexford Parties lost the opportunity to assert the exclusive jurisdiction of the WCAB ... If jurisdiction were exclusive to the WCAB, the case never would have gone to trial in federal court.  Thus, the Rexford Parties should not be bound by the jury and court findings against Lee.

Based on the federal court's lack of jurisdiction, common law alter ego liability should not be found, but if it were, the trial result should be ignored, and the Rexford Parties should be allowed to assert the cross-claims of Lee.

The law of the case doctrine precludes the Rexford Parties' contention that they have the right to relitigate the exclusive jurisdiction issue.  As noted, that issue has been fully addressed on the merits adversely to Lee in this action.  The issue is one of law; there is nothing to be added that has not already been presented to the Court in the thorough briefing of the issue by USF&G and Lee.  The Rexford Parties are represented by the same counsel who represents Lee in this action and vexatiously continues to assert the same argument.  There is no manifest injustice or due process violation under these circumstances.[1]

_____

[1] At the hearing, the Rexford Parties argued that they had a due process right to assert Lee's claims against Aon based on agency and dual agency because those claims were not tried to the jury, the Court ruling on motions in limine that these claims were not fairly disclosed in discovery, were not included in the pleadings and were prejudicial.  *See* "Order Granting Motion in Limine No. 9 of USF&G and American Specialty to Exclude Evidence and Testimony Relating to Lee Investment LLC's Contention that Aon Risk Services, Inc. of Central California is the Agent of USF&G and/or American Specialty," filed on January 30, 2007 (Doc. 620); "Orders on Lee Investment LLC's Motions in Limine", Motion No. 11,

1    Aon correctly argues that the Rexford Parties' Ninth Cross-

2 Claim for breach of the implied covenant of good faith and fair

3 dealing fails as a matter of law.  It has no insurer-insured

4 relationship with the Rexford Parties.  The implied covenant of

5 good faith and fair dealing arises only from an insurance

6 contractual relationship.  *Issacson v. California Ins. Guarantee*

7 *Ass'n*, 44 Cal.3d 775, 789 (1988).  No written contract of any

8 kind with Aon is alleged and the jury found that no oral contract

9 was formed.  In addition, Aon accurately argues that the Ninth

10 Cross-Claim is barred because of the jury's verdict and the

11 Partial Judgment of rescission of USF&G's insurance policy.

12 There can be no bad faith breach of contract claim.

13                          CONCLUSION

14    For the reasons stated:

15    1. Third-Party Defendant Aon Risk Services, Inc. of Central

16 California Insurance Services,'s ("Aon") motion for judgment on

17 the pleadings or summary judgment, as to the claims of Richard K.

18 Ehrlich, Rexford Development Corporation, and Rexford Properties

19 LLC (the "Rexford Defendants") against Aon, is GRANTED;

20    2.  Counsel for Aon shall prepare and lodge a form of order

21 that reflects the rulings in this Memorandum Decision  within

22 
23 filed on February 1, 2007 (Doc. 596).  The Rexford Parties
   improperly raised this contention for the first time at the
   hearing.  The jury found in favor of USF&G and Aon and against Lee
24 on all claims.  The issue of agency and/or dual agency is no longer
   relevant to any issues remaining in this action.  Finally, because
25 Lee failed to timely allege the claims of agency and/or dual agency
   during the jury trial, the Rexford Parties cannot, under the case
26 authority cited above, now assert these claims on behalf of Lee.

1    **five (5) days following the date of service of this decision by**

2    **the Court's Clerk.**

3    IT IS SO ORDERED.

4    **Dated:     December 3, 2008**              **/s/ Oliver W. Wanger**
                                           UNITED STATES DISTRICT JUDGE

21