IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES FIDELITY & GUARANTY COMPANY, | ) ) ) | No. CV-F-99-5583 OWW/SMS |
| | ) ) | FINDINGS OF FACT AND CONCLUSIONS OF LAW RE COURT TRIAL HELD ON APRIL 4-6 2007 |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| | ) | |
| LEE INVESTMENTS, LLC dba THE ISLAND, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |
| | ) | |

The initial phase of this action was tried by jury commencing January 30, 2007.  On February 21, 2007, during the jury trial, the following Stipulation and Order respecting issues to be tried to the Court, sitting without a jury, was entered in pertinent part:

> 3.  It is further stipulated and agreed that in the pending phase of the trial, the jury will address only the respective liabilities, if any, of Lee to USF&G, of the other parties to the pending phase to Lee, and of Lee to Aon, including the basis, if any, for punitive damages sought by Lee, and will not

address any party's damages in the pending
phase except that if rescission of the
subject USF&G insurance contract is awarded,
the jury shall address the amount of USF&G's
restitution, if any, unless such amount is to
be determined by the Court.

(Doc. 654).  The jury returned special verdicts on February 27,

2007 (Docs. 684-687).  On March 1, 2007, a Partial Judgment on

Jury's Verdicts Upon Multiple Claims Involving Multiple Parties,

was entered:

This case was tried before a jury commencing
January 29, 2007, and concluded upon the
return, by the jury, of its verdicts on
February 26, 2007.  The case involves more
than one claim for relief, including counter-
claims and third-party claims and involved
multiple parties.  The parties have reserved,
by written stipulation and order: USF&G's
alter ego claims against Richard K. Ehrlich,
an individual, et al., the determination of
the amount of attorneys' fees and interest
claimed by USF&G; and the claim of Aon Risk
Services Inc. of Central California Insurance
Services ('Aon') for relief based on the tort
of another.  All other claims of the parties
were adjudicated by the jury, including
USF&G's claim for rescission based on fraud;
all claims of Lee Investments LLC, dba The
Island, a California limited liability
company.  Any claims as to Diane Conley have
been determined by the parties' stipulation.

Due to the prior delay in, complexity and
contentiousness of this litigation, to avoid
uncertainty and inconsistent verdicts, there
is no just reason for delay and partial
judgment should now therefore be entered.

Based on the jury's written verdicts returned
in open court February 26, 2007, the
following verdicts were rendered:

A.  The jury's verdicts finding in favor of
USF&G on its claim for rescission finding
fraud and intentional concealment; finding
against Lee on all Lee's defenses of

2

statutory waiver, common law waiver, estoppel, unreasonable delay, wrongful conduct, and awarding USF&G restitution damages in the amount of $875,034.99.

B.  On Lee's claims against USF&G, American Specialty and Aon, finding in favor of USF&G, American Specialty, and Aon and against Lee on all Lee's claims for fraud/intentional misrepresentation; concealment; conspiracy; negligent misrepresentation; and negligence. Finding against Lee and in favor of Aon on Lee's claim for breach of an oral contract against Aon.  Finding in favor of USF&G, American Specialty and Aon and against Lee on all their defenses to Lee's claims based on fraud of Lee; negligent misrepresentation by Lee; estoppel against Lee; wrongful conduct by Lee; common law waiver against Lee; as to Aon against Lee due to Lee's intentional tort as superseding cause; as to Aon, no unreasonable delay by Lee; and in favor of Aon and against Lee on Aon's defense of assumption of risk.

C.  On all Aon's claims against Lee, finding in favor of Aon and against Lee on Aon's claims for intentional misrepresentation, negligent misrepresentation and that Lee was 100% comparatively at fault; in favor of Aon's claim of negligence against Lee; that Aon was not negligent.  Finding in favor of Aon and against Lee on all Lee's affirmative defenses to Aon's claims, including fraud, negligent misrepresentation, estoppel, no wrongful conduct by Aon; no common law waiver by Aon, no unreasonable delay by Aon.

Accordingly, on each of these claims and defenses, JUDGMENT IS ENTERED AS FOLLOWS:

1.  In favor of USF&G and against Lee for rescission and USF&G shall recover from Lee restitutionary damages of $875,034.99;

2.  Against Lee on all Lee's defenses to USF&G'S claims for rescission;

3.  Against Lee on all its claims and in favor of USF&G, American Specialty and Aon against Lee and in favor of USF&G, American

Specialty and Aon on all their affirmative
defenses to Lee's claims;

4.  In favor of Aon on all its claims and
against Lee; and against Lee in favor of Aon
on all on [sic] Lee's affirmative defenses to
Aon's claims; and

5.  USF&G, American Specialty and Aon shall
recover costs of suit.

(Doc. 681).  On March 1, 2007, a Stipulation and Order Regarding

Issues to be Determined by the Court was filed by which the

parties stipulated that the Court, sitting without a jury, would

hear and decide the following issues:

1.  Whether any of Aon's claims against Lee
are barred by the applicable statute of
limitations;

2.  Whether any party is entitled to, and the
extent of the reduction in damages, if any,
arising from the affirmative defense of
failure to mitigate;

3.  Whether USF&G is entitled to restitution
of any amount in light of Aon and Lee's
contention that USF&G did not actually bear
the costs or expenses associated with Ms.
Conley's injury (i.e. whether USF&G is the
real party in interest);

4.  The amount, if any, of restitution that
USF&G is entitled to recover from Lee for
fees, costs and expenses paid allegedly to
defend Lee in the Worker's Compensation
proceeding (and whether USF&G is the real
party in interest in relation to this
restitution);

...

7.  If applicable, the amount of damages, if
any, Aon suffered and is entitled to recover
against Lee under their fraud, negligent
misrepresentation, and negligence claims.

(Doc. 682).

4

1   Court trial pursuant to these stipulations was conducted on
2   April 4-6, 2007. The Court heard evidence and the parties'
3   respective oral arguments at the close of evidence.  The parties
4   submitted trial briefs, objections to evidence, requests for
5   judicial notice, proposed Findings of Fact and Conclusions of
6   Law, and objections thereto.  Plaintiff, counterclaimant and
7   counterdefendant USF&G and counterclaimant and counterdefendant
8   American Specialty Insurance Services, Inc. were represented by
9   Jeffrey A. Charlston and Bruce T. Smyth, of Charlston, Revich &
10  Chamberlin LLP.  Defendant, counterclaimant and counterdefendant
11  Lee Investments LLC dba The Island ("Lee"), were represented by
12  Daniel O. Jamison and Keith White of Dowling Aaron & Keeler.
13  Counterdefendant and counterclaimant Aon Risk Services, Inc. of
14  Central California Insurance Services ("Aon") was represented by
15  Margaret Parker and Matthew Covington of DLA Piper LLP.

16      After hearing all the evidence, including evidence
17  judicially noticed, legal submissions and arguments of the
18  parties presented on April 6, 2007, the following Findings of
19  Fact and Conclusions of Law are entered.[1]

20      I.   USF&G.

21           A.   FINDINGS OF FACT.

22      To the extent that any finding of fact can be interpreted as
23  a conclusion of law, it may be so construed.

24  _____

25      [1]No evidence was presented by the parties on the affirmative
26  defense of mitigation.

i.   **Payments to Diana Conley or For Her Benefit**.

1.   Aon, as insurance broker for Lee, obtained a workers' compensation insurance policy for Lee's water park from USF&G.

2.   American Specialty Insurance Services, Inc., and a successor corporation, American Specialty Insurance and Risk Services, Inc. (collectively "American Specialty"), acted as the managing general agent for USF&G with respect to the subject policy and a number of lines of insurance coverage including, but not limited to, general liability insurance, automobile insurance, excess and umbrella insurance, property insurance, errors and omissions insurance, director and officer liability insurance, disability insurance, and worker's compensation insurance. [Court Trial Exhibit 603].

3.   With respect to the workers' compensation insurance program, American Specialty delegated first level claims handling responsibility to GAB Robbins North America, Inc. ("GAB"). Benefits owed to injured workers and payments to medical providers rendering treatment to injured workers whose employers were insured under policies of workers' compensation insurance issued by USF&G were paid directly by GAB.  GAB would, in turn, send monthly invoices to American Specialty for reimbursement. [Court Trial Exhibits 332_1761 - 332_1816, 332_2251, and 332_2253].

4.   The monthly invoices submitted by GAB to American Specialty were accompanied by detailed summary sheets entitled "Monthly ACIS Payments Check Sequence Report" which lists the

amounts paid by GAB to workers injured in the course of employment with employers insured by USF&G, including, but not limited to, payments to Diana Conley on behalf of Lee. Information contained on the summary sheets for each payment included the check number, the check date, the date of injury, the file number, the name of the injured worker, the locations of the injury, the name of the payee, a description of the type of payment being made, and the amount of the payment. [Court Trial Exhibits 332_1817 - 332_2199, 332_2352, 332-2254, and 332_2253].

5.   Each month, American Specialty would electronically transfer the GAB monthly invoice to the entity authorized to receive such information on behalf of USF&G.

6.   Thereafter, American Specialty would receive notification from USF&G's duly authorized agent of amounts that USF&G would pay American Specialty to reimburse GAB for payments it made to and on behalf of injured workers whose employers were insured by USF&G.  The notification consisted of summary sheets which reported the information provided by GAB to American Specialty and forwarded by American Specialty to USF&G's agent by the policy number of each insured.  Simultaneously or shortly thereafter, money would be wired by or on behalf of USF&G into an American Specialty bank account.  [Court Trial Exhibits 332 Pt.2_2000 - 332-2248B].  This constitutes direct and uncontradicted evidence of payment by USF&G for the Diana Conley medical and related expenses under the USF&G policy.  Lee offered no conflicting evidence whatsoever on these issues.

7.   The procedure for USF&G paying benefits to injured workers whose employers were insured by USF&G, including payments to Diana Conley under the USF&G policy, was as follows: Payments were actually made by GAB.  GAB would send monthly invoices and backup summary sheets to American Specialty, USF&G's Managing General Agent, and American Specialty forwarded the backup sheets electronically to USF&G's designated agent.  Thereafter, American Specialty received from USF&G's agent a summary sheet reflecting the amounts that USF&G would be transferring to American Specialty for payment to GAB, and at or about that time, funds were transferred electronically into an American Specialty bank account from which it would thereafter pay GAB.

8.   These procedures have been in place and operative from February, 1998, when Diana Conley was first injured, through the time of the Court trial.  All sums paid to Diana Conley were paid through this procedure.  All payments were made under the USF&G policy pursuant to the workers' compensation program for which American Specialty acted as USF&G's Managing General Agent.  All of the funds paid to GAB by checks issued by American Specialty were funds transmitted to American Specialty by or on behalf of USF&G.  No evidence was presented from which it could be inferred that these funds came from any source other from than USF&G or on behalf of USF&G.

9.   USF&G is entitled to restitution of the sum of $875,084.99 for amounts it paid to or on behalf of Diana Conley under the USF&G workers' compensation policy through the date of

the jury trial.

10.  USF&G is the real party in interest who made the payments and is the only party the evidence establishes made these payments as the insurer under the contract of workers' compensation insurance between Lee and USF&G.

11.  USF&G made payments of an additional $5,266.97 to or on behalf of Diana Conley under the USF&G policy in January and February 2007, which were not documented until after the jury trial, but were submitted in evidence at the Court trial [Court Trial Exhibit 332_2251-2255].  USF&G is entitled to restitution from Lee of these amounts.

12.  USF&G is also entitled to reimbursement from Lee of amounts paid under the USF&G policy to or on behalf of Diana Conley after February, 2007.  Because these amounts are not in evidence, a motion to reopen to present this evidence or a stipulation by USF&G and Lee as to these amounts is required.

13.  The dates and amounts of payments made to or for the benefit of Diana Conley by USF&G pursuant to the workers' compensation policy were and are fixed, ascertainable and known.

14.  Lee is entitled to reimbursement of the amount of premiums paid to USF&G on the workers' compensation policy, $38,554.00.  [Court Trial Exhibit 333 Pt.4 - 005 -006].

ii.  <u>Payments to Dowling, Aaron & Keeler</u>.

15.  After USF&G filed its complaint for rescission in this action on April 16, 1999, the rescission issues were also raised in the workers' compensation proceedings which had been initiated

1   by Diana Conley to obtain compensation for the injuries she

2   sustained in Lee's employment.

3        16.  On April 18, 2000, Lisa Ehrlich, referencing "Diana

4   Conley v. Lee Investment Company, WCAB Case No. SBR 288749," sent

5   the following letter to Bruce Smyth, of Charlston, Revich and

6   Williams LLP:

> Upon review of the most recent proceedings in
> the Worker's Compensation case, it is clear
> that our insurer United States Fidelity and
> Guaranty Company is not providing Lee
> Investments LLC with any representation in
> that action.  Your pleadings indicate that
> you are representing USF&G and make no
> reference to Lee whatsoever.  Query then, who
> has filed responsive pleadings on Lee's
> behalf and who has been representing Lee at
> the court proceedings.  Clearly not your
> firm.  Additionally, it is clear that USF&G
> has taken a position which is clearly
> inconsistent with Lee's best interests.
> Consequently, immediate demand is made for
> cumis [sic] counsel in the worker's
> compensation case.

16  [Court Trial Exhibit 333 Pt.4_002].

17       17.  Lowell Gratigny, Senior Vice President of Claims for

18  American Specialty, had authority to agree on USF&G's behalf to

19  pay for Lee's independent counsel in the workers' compensation

20  proceeding pursuant to *San Diego Navy Federal Credit Union v.*

21  *Cumis Ins. Society, Inc.*, 162 Cal.App.3d 358 (1984), and agreed

22  to Lee's request, even though Mr. Gratigny did not believe Lee

23  was entitled to *Cumis* counsel.[2]

24  _____

25  [2] *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.*,
    162 Cal.App.3d 358 (1984), held that where an insurer has reserved
    its right to deny coverage to the insured, and where the
26  reservation creates a conflict of interest between insurer and

10

18.   On April 26, 2000, Jeffrey Charlston of Charlston, Revich and Williams LLP, wrote to Lisa Ehrlich:

> The purpose of this letter is to advise you that USF&G will provide Lee Investments LLC with independent counsel in connection with the workers' compensation proceedings.  In accordance with Civil Code § 2860, counsel selected by Lee Investments LLC must have at least five years of experience in litigating workers' compensation claims and must provide evidence of professional liability insurance. In addition, USF&G's obligation to provide counsel is limited to the hourly rates typically paid by USF&G to attorneys on its panel who handle workers' compensation litigation, and that rate is $100 per hour.
>
> If you have any questions, please do not hesitate to give me a call.  Nothing contained herein shall constitute a waiver of any claims, rights, causes of action, rights of action, defenses, positions, or remedies possessed by USF&G or American Specialty, all of which are expressly reserved.

[Court Trial Exhibit 333 Pt. 4_003].

19.   USF&G's agreement to pay for Lee's counsel was limited to the workers' compensation proceedings in which the rescission issue had been raised subsequent to the rescission action brought by USF&G in this action.  USF&G never agreed to pay for legal expenses incurred by Lee in connection with the litigation in this Court.

20. Lee contends that this finding is irrelevant to and

---

insured, the same attorney should not represent both the insurer and the insured in an action brought against the insured unless the insured knowingly consents to such representation.  Absent such consent, the insured is entitled to independent counsel paid for by the insurer.  An insured's right to independent counsel paid for by the insurer is now governed by California Civil Code § 2860.

should not addressed by the Court in this phase: "[I]f USF&G is entitled to restitution of amounts paid to Dowling, Aaron & Keeler ..., that restitution applies to Dowling, Aaron & Keeler's services on the restitution issue, irrespective whether the services were provided for both the workers' compensation proceedings or in connection with litigation before this court."

21.   Lee's position is untenable.  The only reason for defense of the workers' compensation case was that Lee claimed workers' compensation coverage under the USF&G policy.

22.   Lee retained the law firm of Dowling, Aaron & Keeler to represent it in the workers' compensation proceedings.  Dowling, Aaron & Keeler submitted bills to USF&G's managing general agent, American Specialty, for payment. [Court Trial Exhibits 333 Pt.1_0001- 333 Pt.1_0156; 333 Pt. 2_0001 - 333 Pt.2 _0040].

23.   USF&G did not insist that counsel for Lee be limited to the rates which were actually paid by USF&G to attorneys retained by it in the ordinary course of its business to represent employers in workers' compensation proceedings, as was the insurer's right under California Civil Code § 2860, and instead paid Dowling, Aaron & Keeler at the firm's standard billing rates, in the total sum of $199,029.08. [Court Trial Exhibits 333 Pt.3_002- 333 Pt.3_051; 333 Pt. 4_0001].

24.   The amounts paid to Dowling, Aaron & Keeler were paid from checking accounts that were neither created nor controlled by American Specialty.  Although American Specialty's name was on the checks, and it had signatory power to write checks on the

accounts, the accounts were created by USF&G in connection with the program under which American Specialty undertook to act as USF&G's managing general agent. [Court Trial Exhibit 603]. All funds in these checking accounts were deposited by or on behalf of USF&G. American Specialty did not deposit any of its own funds into the checking accounts, nor did it receive copies of the bank statements for these accounts. The sole purpose for the bank accounts was to pay expenses in connection with claims against policies issued by USF&G.

25. USF&G is the real party in interest on whose behalf such payments were made as the insurer of Lee under the USF&G workers' compensation policy. USF&G is entitled to restitution in the amount of $199,029.08 from Lee for the amounts paid to Dowling, Aaron & Keeler from bills submitted by the law firm to USF&G's managing general agent, American Specialty.

26. Neither USF&G's Amended and Supplemental Complaint against Lee, (Doc. 259), nor the Pretrial Order sought prejudgment interest to be awarded to USF&G against Lee. USF&G's Amended and Supplemental Complaint prayed for "such other and further relief as the Court deems appropriate."

27. The dates and amounts of payments made to Dowling, Aaron & Keeler were and are fixed, ascertained at the time of payment and known to the parties before trial. [Court Trial Exhibits 333 Pt.3_002 - 051; 333 Pt.4_001 (containing interest calculations)].

28. USF&G, through its Managing General Agent, American

Specialty, made payments to Dowling, Aaron & Keeler on the dates and in the amounts set forth in Court Trial Exhibit 333 Pt.4_001.

29.   The jury in this case decided the USF&G workers' compensation policy should be rescinded for Lee's fraud in the inception.

30.   The jury found against Lee and for USF&G on all claims, affirmative defenses, cross-claims and/or counterclaims tried to the jury.

B.   <u>CONCLUSIONS OF LAW</u>.

i.   <u>Subject Matter Jurisdiction</u>.

1.   Subject matter jurisdiction in this action exists based on diversity of citizenship.  28 U.S.C. § 1332(a).  USF&G is a Maryland corporation, Lee is a California limited liability company, Aon is a California corporation, and American Specialty is an Indiana corporation, and the amount in controversy exceeded $75,000.00, exclusive of interest and costs.

ii.   <u>Real Party in Interest</u>.

2.   An action must be prosecuted in the name of the real party in interest.  Rule 17(a)(1), Federal Rules of Civil Procedure.  "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.  After ratification, joinder, or substitution, the action proceeds as if it had been commenced by the real party in interest."  Rule 17(a)(3), Federal Rules of Civil Procedure.

1   The action must be brought by the person entitled under the

2   governing substantive law to enforce the asserted right. *Whelan*

3   *v. Abell*, 953 F.2d 683, 672 (D.C.Cir.), *cert. denied*, 506 U.S.

4   906 (1992). The function of Rule 17(a) "is simply to protect the

5   defendant against a subsequent action by the party actually

6   entitled to recover, and to insure generally that the judgment

7   will have its proper effect as res judicata." Rule 17(a)

8   advisory committee's note. California law requires that "[e]very

9   action must be prosecuted in the name of the real party in

10  interest ...." California Code of Civil Procedure § 367. In

11  general, the real party in interest is the person or entity

12  possessing the right sued upon. *Arnolds Management v. Eischen*,

13  158 Cal.App.3d 575, 581 (1984). This rule protects a defendant

14  from multiple actions based on the same occurrence, and preserves

15  for the defendant all the available personal defenses and

16  counterclaims. *Kaley v. Catalina Yachts*, 187 Cal.App.3d 1187,

17  1195 (1986).

18      3. USF&G was the only insurance company obligated to pay

19  benefits and otherwise perform as the insurer under the USF&G

20  workers' compensation policy issued to Lee.

21      4. As the insurer under the USF&G workers' compensation

22  policy issued to Lee, USF&G was and is the real party in interest

23  with respect to the claim for rescission and restitution set

24  forth in USF&G's complaint in this action against Lee. All

25  benefits to or for the benefit of Diana Conley were paid under

26  the USF&G policy, and all payments made to Dowling, Aaron &

Keeler as counsel for Lee in the workers' compensation proceeding before the WCAB were made under the USF&G policy.

5.   No other insurer has claimed any rights against Lee relative to the USF&G policy or to Diana Conley that are the subject of restitution.

6.   No other party insurer had any interest or incentive to pay any insurance benefit to indemnify Diana Conley.

7.   American Specialty was and is the managing general agent for USF&G in connection with the USF&G workers' compensation policy issued to Lee.  American Specialty had administrative, underwriting and claims handling responsibilities, including the responsibility to pay claims under policies issued by USF&G, as set forth in the Producer Agreement and its attachments, including the Claims Mandate attached to the Producer Agreement as Exhibit C.

8.   Under California law, the acts of a managing general agent are considered to be the acts of the insurer.  California Insurance Code § 769.83.

9.   Lee waived any objection that USF&G was not the real party in interest by failing to raise that contention in a timely manner.  *Whelan v. Abell*, *supra; Hefley v. Jones*, 687 F.2d 1383, 1388 (10th Cir.1982)(defense waived when made sixteen days before trial).  Although Lee raised the issue in the Pretrial Conference on December 11 and 12, 2006 and in the  Pretrial Order, *see* Docs. 386, pg. 161, 396, pg. 158; 700, pg. 163, this was just weeks before the commencement of the lengthy and complex jury trial on

1   January 29, 2007.  Discovery and pretrial motions proceedings

2   were long closed.

3        10.  By Order filed on July 30, 2004, Judge Robert E. Coyle,

4   addressing USF&G and Lee's cross-motions for summary judgment on

5   USF&G's claim for rescission, ruled:

6            Fidelity [USF&G] seeks 'an order that Lee
             Investments is obligated to reimburse USF&G
7            for all benefits paid to Diana Conley under
             the USF&G Policy, which USF&G would not have
8            been required to pay but for the
             misrepresentations by Lee Investments in
9            applying for the issuance of the USF&G
             Policy.'

10           The undisputed facts establish that Fidelity
11           has advanced $623,320.26 in medical costs,
             expenses and workers' compensation benefits
12           to Diana Conley pursuant to California
             Workers' Compensation law.

13           As a general rule, upon rescission of a
14           contract, the successful party is entitled to
             restitution, i.e., to recovery of the
15           consideration he gave and any other
             compensation to make him whole.  Witkin, 1
16           Summary of California Law, Contracts, § 884
             (1987).

17           Here, however, Fidelity has paid nothing to
18           Lee.  Rather, Fidelity paid the monies
             directly to Diana Conley on Ms. Conley's
19           direct action against Fidelity.

20           Lee argues that, because Fidelity has paid
             Ms. Conley on a direct obligation owed to Ms.
21           Conley, Fidelity is not entitled to
             restitution from Lee of these amounts.

22           Fidelity responds that the workers'
23           compensation policy issued to Lee makes clear
             that the benefits paid to Conley are on
24           behalf of Lee:

25               GENERAL SECTION, ITEM B

26               You are insured if you are an

17

employer named in Item 1 of the
Information Page (naming 'Lee
Investments LLC d.b.a. The
Island').

PART ONE, ITEM B

We will pay promptly when due the
benefits required by you by the
workers' compensation law.

Fidelity argues that, because it paid
benefits to Conley to indemnify Lee from its
obligations under the California Workers'
Compensation law, Fidelity is entitled to
reimbursement from Lee upon rescission of the
policy.

As explained in <u>Dunkin v. Boskey</u>, 82
Cal.App.4th 171, 198 (2000):

Restitution is defined "as
restoration of the status quo by
the awarding of an 'amount which
would put the plaintiff in as good
a position as he would have been if
no contract had been made and
restores to plaintiff value of what
he parted with in performing the
contract' ..." ... '"In modern
legal usage, its meaning has
frequently been extended to include
not only the restoration or giving
back of something to its rightful
owner, but also compensation,
reimbursement, indemnification, or
reparation for benefits derived
from, or for loss or injury caused
to, another."' ....

Consequently, the court concludes that, if
Fidelity prevails on its claim for
rescission, Fidelity will be entitled to the
amount sought by its complaint.

[Doc. 194, pg. 79:17-81:10].

Judge Coyle's ruling is "law of the case."  "As most
commonly defined, the doctrine of the law of the case posits that

18

1  when a court decides upon a rule of law, that decision should

2  continue to govern the same issues in subsequent stages in the

3  same case". *Christianson v. Colt Industries Operating Corp.*, 486

4  U.S. 800, 815-816 (1988). "The law of the case doctrine is a

5  judicial invention designed to aid in the efficient operation of

6  court affairs." *Milgard Tempering, Inc. v. Selas Corp. of Am.*,

7  902 F.2d 703, 715 (9th Cir.1990). Under the doctrine, a court is

8  generally precluded from reconsidering an issue previously

9  decided by the same court or a higher court in the identical

10 case. *Id*. "For the doctrine to apply, the issue in question

11 must have been 'decided explicitly or by necessary implication in

12 [the] previous disposition." *United States v. Lummi Indians*, 235

13 F.3d 443, 452 (9th Cir.2000). As explained in *United States v.*

14 *Alexander*, 106 F.3d 874, 876 (9th Cir. 1997):

15          Under the 'law of the case' doctrine, 'a
           court is generally precluded from
16         reconsidering an issue that has already been
           decided by the same court, or a higher court
17         in the identical case.' ... The doctrine is
           not a limitation on a tribunal's power, but
18         rather a guide to discretion.

19 A court abuses its discretion in applying the law of the case

20 doctrine only if (1) the first decision was clearly erroneous;

21 (2) an intervening change in the law occurred; (3) the evidence

22 on remand was substantially different; (4) other changed

23 circumstances exist; or (5) a manifest injustice would otherwise

24 result. *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th

25 Cir.1998). Although Lee argues that the law of the case doctrine

26 cannot apply to Judge Coyle's ruling because of the March 1, 2007

stipulation, Lee did not raise any claim that USF&G was not the real party in interest until a few weeks before the trial and presents no evidence from which an exception to application of the law of the case doctrine may apply.

11.   USF&G, as the real party in interest to the workers' compensation policy issued to Lee, is entitled to restitution of amounts paid to or on behalf of Diana Conley as of April 4, 2007 pursuant to the policy of $623,320.26 found by Judge Coyle in the July 30, 2004 Order to be undisputed, to restitution of amounts paid after May 2002, found by the jury to be the sum of $251,714.90, and to restitution of amounts paid pursuant to the policy in January and February 2007, totaling $5,266.97, offset by reimbursement to Lee of premiums it paid pursuant to the policy through April 4, 2007 of $38,554.00.   The total net amount of restitution to which USF&G is entitled through April 4, 2007 is $841,748.13.

12.   USF&G is the real party in interest with respect to its claim for restitution of attorneys' fees paid to Dowling, Aaron & Keeler pursuant to Lee's demand under the USF&G workers' compensation policy for *Cumis* counsel to defend Lee in Diana Conley's workers' compensation proceeding.

      iii.   <u>Restitution to USF&G for Lee's *Cumis* Counsel Fees</u>.

13.   Federal district courts sitting in diversity apply the substantive law of the forum state, here California.   *See Eire R.R. Co. v. Tompkins*, 30 U.S. 64, 78 (1938).

14.   Upon rescission of a contract, the prevailing party "shall be awarded complete relief, including restitution of benefits ... conferred by him as a result of the transaction and any consequential damages to which he is entitled ...." California Civil Code § 1692.  The Court may require the party to whom rescission is granted "to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties." *Id.*  "The consequence of rescission is not only the termination of further liability, but also the restoration of the parties to their former positions by requiring each to return whatever consideration has been received." *Imperial Casualty & Indemnity Co. v. Sogomonian*, 198 Cal.App.3d 169, 184 (1988).

15.   "Restitution is defined 'as restoration of the status quo by the awarding of "an amount which would put plaintiff in as good a position as he would have been if no contract had been made and restores to plaintiff value of what he parted with in performing the contract."'" *Dunkin v. Boskey*, 82 Cal.App.4th 171, 198 (2000).  "'"In modern legal usage, its meaning has frequently been extended to include not only the restoration or giving back of something to its rightful owner, but also compensation, reimbursement, indemnification, or reparation for benefits derived from, or for loss or injury caused to, another."'" *Id.*

16.   USF&G paid the sum of $199,029.08 to the law firm of Dowling, Aaron & Keeler, independent counsel selected by Lee, after Lee demanded that USF&G provide independent counsel under

the USF&G workers' compensation policy to defend Lee in claims brought by Diana Conley in proceedings before the California Workers' Compensation Appeals Board.  These payments were made by American Specialty on behalf of USF&G from a bank account created to pay claims under USF&G insurance policies and were made exclusively under the USF&G workers' compensation policy issued to Lee.

17.  USF&G is entitled to reimbursement from Lee of all amounts necessary to restore USF&G to its position prior to issuance of the workers' compensation policy.  Restitution to USF&G by Lee of the amounts paid to Dowling, Aaron & Keeler, totaling $199,029.08 as of April 4, 2007, is necessary and appropriate to restore USF&G to the position it would have been in if no contract of insurance had issued, and restores to USF&G the value of that which it parted in performing the contract of insurance prior to its rescission by jury verdict.

18.  Lee is entitled to a return of the premium payments it made for the USF&G policy.

### iv.  Prejudgment Interest.

19.  Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress.  *West Virginia v. United States*, 479 U.S. 305, 311 n.2 (1987), citing Comment, Prejudgment Interest: Survey and Suggestion, 77 N.W.U. L.Rev. 192 (1982).

1    20.   Prejudgment interest is a substantive aspect of a

2    plaintiff's claim, rather than merely a procedural mechanism, and

3    is governed by state law.  *In re Exxon Valdez*, 484 F.3d 1098,

4    1101 (9th Cir.2007).

5    21.   "A general prayer in the complaint is adequate to

6    support an award of prejudgment interest. 'No specific request

7    for interest need be included in the complaint; a prayer seeking

8    "such other and further relief as may be proper" is sufficient to

9    the court to invoke its power to award prejudgment interest

10   ....'" *North Oakland Medical Clinic v. Rogers*, 65 Cal.App.4th

11   824, 829 (1998); *see also Newby v. Vroman*, 11 Cal.App.4th 283,

12   286 (1992)("It has long been settled that, in a contested action,

13   prejudgment interest may be awarded even though the complaint

14   contains no prayer for interest").  Because USF&G's Amended and

15   Supplemental Complaint prayed for"such other and further relief

16   as the Court deems appropriate," USF&G's claim for prejudgment

17   interest is properly before the Court.

18   22.   California Civil Code § 3287(a) provides that "[e]very

19   person who is entitled to recover damages certain, or capable of

20   being made certain by calculation, and the right to which is

21   vested in him upon a particular day, is entitled also to recover

22   interest thereon from that day, except during such time as the

23   debtor is prevented by law, or by the act of the creditor from

24   paying the debt."

25   23.   California Civil Code § 3288 provides: "In an action

26   for the breach of an obligation not arising from contract, and in

1  every case of oppression, fraud, or malice, interest may be

2  given, in the discretion of the jury."  A trial court, when

3  acting as the trier of fact, may award prejudgment interest under

4  Section 3288.  *Bullis v. Security Pacific National Bank,*, 21

5  Cal.3d 801, 814 n.16 (1978).  This action was for rescission of a

6  contract for fraud in the inducement.  Section 3288 will not be

7  effected as no award for affirmative damages based on the tort of

8  fraud was asserted.

9      24.  The test for recovery of prejudgment interest under

10  Section 3287(a) is whether the defendant actually knows the

11  amount owed or could have computed that amount from reasonably

12  available information.  *Children's Hospital and Medical Center v.*

13  *Bonta*, 97 Cal.App.4th 740, 774 (2002), *cert. denied*, 537 U.S.

14  1160 (2003).

15      Section 3287(a) does not authorize prejudgment interest

16  where the amount of damage, as opposed to the determination of

17  liability, "depends upon a judicial determination based upon

18  conflicting evidence and it is not ascertainable from truthful

19  data supplied by the claimant to his debtor."  *Id.*, quoting

20  *Fireman's Fund Insurance Co. v. Allstate Insurance Co.*, 234

21  Cal.App.3d 1154, 1173 (1991).  Where the amount of damages cannot

22  be resolved except by verdict or judgment, prejudgment interest

23  is not appropriate.  *Id.*

24      "Damages are deemed certain or capable of being made certain

25  within the provisions of subdivision (a) of section 3287 where

26  there is essentially no dispute between the parties concerning

the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage." *Esgro Central, Inc. v. General Ins. Co.*, 20 Cal.App.3d 1054, 1060 (1971).

25. Lee cites *National Union Fire Ins. Co. v. Showa Shipping Co., Ltd.,* 47 F.3d 316 (9th Cir.1995). In *Showa*, the Campos family, who had been injured in an automobile accident, brought an action in state court against numerous potentially liable parties, many of whom cross-claimed against each other. National Union had issued a liability policy to Norton Lilly, the lessee of a trailer who subleased the trailer to Showa. The Campos' action was settled with the various insurance companies contributing various amounts. National Union then brought a state court action for declaratory judgment of equitable indemnity from Showa. The case was removed to the District Court. The District Court ruled that the insurer was entitled to indemnity and prejudgment interest. The Ninth Circuit reversed the District Court, ruling that National Union was required to prove more than mere potential liability in order to succeed on its equitable indemnity claim, that the district court erroneously ruled that California law required the parties to split the cost of settlement equally and should have determined the relative fault of the parties to determine each party's respective contribution to the settlement. The Ninth Circuit also reversed the award of prejudgment interest:

The district court held that National Union

25

1       was entitled to an award of pre-judgment
    interest on Showa's $250,000 contribution
2       from the date of settlement because from that
    date, damages were capable of being made
3       certain.  The court held that damages were
    capable of being made certain because the
4       only issue at trial was liability.  The court
    reasoned that although there 'may have been
5       some uncertainty about the extent of Showa's
    potential liability due to the various legal
6       theories presented, that uncertainty does not
    preclude the award of prejudgment interest
7       ... [because] ... the extent of [Showa's]
    exposure remained purely a question of law.'
8       The district court cited California Civil
    Code § 3287(a) and *Fireman's Fund Ins. v.*
9       *Allstate Ins. Co.*, 234 Cal.App.3d 1154 ...
    (1991) to support this conclusion.

10

11      California Civil Code § 3287(a) reads: '(a)
    Every person who is entitled to recover
12      damages certain, or capable of being made
    certain by calculation, and the right to
13      recover which is vested in him upon a
    particular day, is entitled to recover
14      interest thereon from that day ....'  Damages
    are certain or capable of being made certain
15      where there is essentially no dispute between
    the parties concerning the basis of
16      computation of damages, if any, are
    recoverable but where their dispute centers
17      on the issues of liability giving rise to the
    damages.  *Fireman's Fund*, 234 Cal.App.3d at
18      1173 ....

19      In the instant case, Showa not only disputed
    whether it was liable, but also, if liable,
20      its liability in proportion to that of the
    other settling defendants.  While the amount
21      National Union contributed to the settlement
    of the underlying action was capable of being
22      made certain as of the date of the
    settlement, Showa's share of that settlement
23      was uncertain.  Accordingly, the district
    court erred in awarding prejudgment interest.

24  **47 F.3d at 324.**

25      Lee also cites *Wisper Corp. v. California Commerce Bank,* 49

26  Cal.App.4th 948, 961 (1996).  In *Wisper*, Wisper hired an

26

accountant, Benetiz, whose duties included receiving checks from the operation of an apartment building owned by Wisper.  Benetiz did not disclose to Wisper that he had recently been convicted of embezzling checks from a previous employer.  A manager for Wisper knew that Benetiz was in jail shortly before he was hired but believed he had been convicted of driving under the influence.  A director of Wisper knew of Benetiz's jail term and loaned him bail money.  A bank, CCB, opened an account for Benetiz in the name of Wisper.  Benetiz represented himself to CCB as a corporate officer and signatory for Wisper but did not present any supporting documentation for those positions.  Benetiz ultimately deposited 28 checks intended for Wisper into his new account and diverted them for his own use.  Wisper filed an action for mistake and negligence against CCB and other defendants.  The jury found that both Wisper and CCB had been negligent and had caused damage to Wisper, and attributed 75% of the negligence to Wisper and 25% to CCB.  The trial court denied Wisper's motion for prejudgment interest.  The Court of Appeal, relying on the Ninth Circuit's *Showa* decision, ruled:

> Applying these principles to the facts before us, it is clear the amount of damages owed by CCB to Wisper was not subject to calculation until after the completion of a trial. Although the universe of Wisper's damage was calculable - that is, the number of checks totaling in excess of $1.4 million - the question of whether and to what extent CCB had any liability for Wisper's loss was hotly disputed.  At the end of the battle, Wisper emerged with a mere 25 percent of its claimed damages.  Thus, there is a significant disparity between that which was sought and

that which was ultimately found appropriate.
Only one element was certain until the jury
made its findings ....

More importantly, it is clear the policy
underlying prejudgment interest where the
damages are deemed 'certain' or 'capable of
being made certain ...' ... is that in
situations where the defendant could have
timely paid that amount and has thus deprived
the plaintiff of the economic benefit of
those funds, the defendant should therefore
compensate with appropriate interest.

...

[B]ecause of the vast disparity between the
claimed damage and that which was awarded,
arising from a factual environment in which
it could reasonably be inferred and was
decided that most, if not all, of Wisper's
loss was a result of its own irresponsible
behavior.  At the end of the day, Wisper,
because of its own carelessness, was found by
the trier of fact to have three times the
responsibility for the loss than could
properly be attributed to CCB for any
contribution its negligence made to the loss.
The amount of damage could not be determined
until trial.

Relying on *Showa* and *Wisper*, Lee argues that "Lee's claims against Aon related to whom, if anyone, would be required to reimburse USF&G for the amounts paid out to Diana Conley and the proportional share of those payments.  Without that determination, the amount owed by Lee could not be determined and was thus, unliquidated."  This ignores entirely that the amount USF&G paid to or on behalf of Diana Conley under the USF&G policy and to Dowling, Aaron & Keeler is not subject to apportionment or reduction.  Nor is there any uncertainty as to the exact amount and date of each payment to Conley and counsel that is to be

28

1  restored to USF&G.

2      Also of assistance is *Safeway Stores, Inc. v. National Union*

3  *Fire Insurance Company,* 64 F.3d 1282 (9th Cir.1995). Safeway had

4  defended and settled  shareholders' class action lawsuits against

5  directors and officers.  Safeway brought an action for

6  reimbursement of costs under its directors' and officers'

7  liability policy.  The District Court ruled allocated 25% of the

8  settlement and defense costs to Safeway and denied prejudgment

9  interest.  The Ninth Circuit ruled that all of the settlement and

10 defense costs were allocable to National Union, further:

11         Finally, Safeway argues that it is entitled
           to prejudgment interest.  It maintains that
12         the amount of its damages has been certain
           and uncontested from the beginning.  National
13         Union denies this and points to the issue of
           allocation, which it insists made the amount
14         of damages uncertain.  We hold that Safeway
           was entitled to prejudgment interest and
15         reverse the judgment of the district court on
           this issue.
16
           ...
17
           ... National Union concedes that Safeway
18         provided documents to support its claims
           under the D & O policy and apparently does
19         not contest the accuracy of those documents.
           Nevertheless, National Union contends that
20         Safeway's damages were uncertain because the
           extent of allocation remained to be decided
21         by the district court.

22         This argument is unpersuasive.  The fact that
           the amount that National Union was required
23         to pay might be reduced as the result of
           allocation did not in itself make the amount
24         of damages uncertain.  The California courts
           of appeal have rejected similar arguments in
25         analogous situations.  In *E.L. White[, Inc.*
           *v. City of Huntington Beach*, 133 Cal.App.3d
26         366 (1982)], for example, the court held that

the parties, an insured (White) and its insurer (Royal Globe) were entitled to prejudgment interest in an indemnity action. 187 Cal.Rptr. at 887.  The City of Huntington Beach from whom they were seeking indemnity, argued that prejudgment interest was improper 'because the amount of White and Royal Globe's recovery was uncertain until the trial court made the determination of comparative fault [in the indemnity action].'  *Id.*  The court rejected this argument:

> Here, White and Royal Globe's claim for indemnity was certain in amount from the date the underlying judgments were satisfied, but was subject to a possible reduction if White was found to have been more than vicariously liable.  The possibility of that reduction, or even an actual reduction, does not render White and Royal Globe's damages any less certain.

*Id.*

Here, as in *E.I. White*, the amount of damages claimed by Safeway was known as of the final settlement of the class-action suits.  The fact that National Union disputed the issue of coverage does not affect the certainty of Safeway's damages.  The allocation imposed by the district court reflected its judgment that certain items were not covered by the D & O policy, not the uncertainty of the damages claims themselves.  Even with respect to the $11.5 million dividend, the court acknowledged that the dividend was in fact paid out as part of the settlement.  This is not a situation in which 'the *amount* of damage, as opposed to the determination of liability, depends upon a judicial determination based upon conflicting evidence and is not ascertainable from truthful data supplied by the claimant.'  *Fireman's Fund*, 286 Cal.Rptr. at 158 ... National Union did not dispute the amount of money paid out by Safeway as a result of its settlement; it simply claimed that Safeway could not recover that money as covered losses under the D & O policy.

1  64 F.3d at 1290-1292.  The *Safeway* Court characterized *Showa*

2  panel as "holding that prejudgment interest is inappropriate

3  under § 3287(a) where defendant disputes not only liability but

4  the amount of its liability in proportion to other defendants."

5  The dissent in *Wisper* asserted that reliance on *Showa* was

6  misplaced because *Showa* cited no California authority for its

7  ruling and did not cite *E.L. White.*

8      Lee's reliance on *Showa* and *Wisper* is misplaced because

9  USF&G's claim was for restitution of the entire amount paid and

10  was not dependent upon a finding of comparative fault.

11      26.  The payments made by USF&G to and on behalf of Diana

12  Conley under the workers' compensation policy were certain in

13  amount within the meaning of Section 3287(a) because they were

14  made on particular dates in specified amounts.  The amounts and

15  dates of payments made by USF&G to Dowling, Aaron & Keeler for

16  Lee's defense of the workers' compensation proceeding were known

17  and certain; Aaron, Dowling & Keeler generated the bills in

18  specific sums, all of which were paid pursuant to the USF&G

19  policy.

20      27.  California Civil Code § 3289(b) provides: "If a

21  contract entered into after January 1, 1986, does not stipulate a

22  legal rate of interest, the obligation shall bear interest at a

23  rate of 10 percent per annum after a breach."  California

24  Constitution, Art. 15, § 1, provides:

25              The rate of interest on a judgment rendered
            in any court of this state shall be set by
26              the Legislature at not more than 10 percent

31

per annum ....

In the absence of the setting of such rate by
the Legislature, the rate of interest on any
judgment rendered in any court of the state
shall be 7 percent per annum.

28.  Lee cites *Children's Hospital and Medical Center v.
Bonta,* 97 Cal.App.4th 740, 775 (2002) and *Michelson v. Hamada*, 29
Cal.App.4th 1566, 1585 (1994), as authority that a 7% rate should
be imposed.

In *Bonta*, eleven out-of-state hospitals that had provided
services to California residents covered by the Medi-Cal program
brought an action against the Department of Health Services and
its director to recover the difference between the reimbursement
of in-state and out-of-state hospitals for costs incurred in the
treatment of Medi-Cal beneficiaries.  The trial court ruled in
favor of plaintiffs, finding that defendants had undercompensated
plaintiffs in violation of state and federal constitutional
standards.  The Court of Appeal ruled that because the plaintiff
hospitals' right to reimbursement from the Department of Health
Services was not based on contract, the rate of prejudgment
interest was 7%.

In *Hamada,* a doctor who contracted with a second doctor to
provide billing services for his medical practice brought an
action for breach of contract, breach of fiduciary duty, and
fraud against the second doctor.  A jury awarded damages to
plaintiff in the amount of $140,000 for breach of contract and
$500,000 for each of the other two causes of action.  The trial

32

judge reduced the award of actual damages to $500,000, and
ordered prejudgment interest at 10%.  The Court of Appeal ruled:

> There is no legislative act specifying the
> rate of prejudgment interest for a fraud
> claim, and therefore the constitutional rate
> of 7 percent applies to the $500,000 awarded
> as tort damages. ... In addition, because the
> agreements entered into before 1986 did not
> stipulate a rate of interest chargeable after
> breach, the 7 percent rate also applies to
> the award of contract damages.

29.  USF&G contends that "[i]f the right which provides a
basis for recovery is contractual in nature, even where equitable
principles are involved, the applicable rate of prejudgment
interest is 10% per annum."  USF&G cites *Clarendon National
Insurance Company v. Insurance Company of the West*, 2006 WL
2594452 (E.D.Cal.2006); *Bell v. Farmers Ins. Exchange*, 135
Cal.App.4th 1138, 1149 (2006); and *George v. Double D Foods*, 155
Cal.App.3d 36, 47 (1984).

In *Clarendon National Insurance Company,* Clarendon alleged
that it had paid money to defend and settle an underlying
liability action, that the Clarendon policy did not cover the
loss, that the ICW policy covered the loss, and, therefore,
Clarendon was entitled to recoup the entire amount from ICW under
the law of equitable subrogation and equitable indemnity.  The
district court ruled that ICW's policy provided coverage and
Clarendon's did not and rejected ICW's contention that Clarendon
was required to provide primary coverage and a defense pursuant
to the MCS-90 attached to Clarendon's policy.  The District Court
found that where an insurer's liability arises only from a

governmentally required filing, the insurer is entitled to indemnity for defense fees from the insurer whose policy provided coverage, and that ICW must reimburse Clarendon for its costs of defense and settlement.  With regard to the rate of prejudgment interest, Magistrate Judge Snyder ruled:

> The right to which Clarendon has become subrogated is the right to coverage, defined by the ICW policy ... It is thus a contractual right to which Clarendon has succeeded and which defines the obligation in question.  *Hartford Accident & Indemnity Co. v. Sequoia Ins. Co.*, 211 Cal.App.3d 1285, 1307-07 (1989), which applied the seven percent interest rate and which was cited by ICW, involved a contribution action where the dispute concerned which of multiple policies was primary and which was excess or secondary ... and the parties conceded that the relevant statute was Cal.Civ. Code § 3287(a). The precise question of the applicable rate of prejudgment interest was not addressed and the discussion of interest was in the context of the certainty of the sum due.

> In *North River Ins. Co. v. American Home Assurance Co.*, 210 Cal.App.3d 108, 116 (1989), also cited by ICW, the parties agreed that the prejudgment interest rate of seven percent per annum applied pursuant to Cal.Civ.Code § 3287, which provided for prejudgment interest generally and specifically for every person entitled under a judgment to receive damages based on a cause of action in contract where the claim was unliquidated ... However, as Clarendon notes, this case, as well as *Hartford Accident and Indemnity Co.,* predated the enactment of Cal.Civ.Code § 3289 in its present form, in which § 3289(b) provides that if a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of ten percent per annum after a breach ....

> An action for breach of an insurance contract

34

against an insurance company to recover
policy benefits is an action to recover
damages for breach of contract. *Pilmai v.
Farmers Ins. Exchange Co.*, 39 Cal.4th 133,
146 (2006).  The California statutory rate of
prejudgment interest chargeable after a
breach of contract is ten percent per annum
....

In summary, even though equitable principles
are involved in Clarendon's recovery, the
right to which Clarendon succeeded and which
provides the basis of its recovery is the
contractual obligation of ICW under its
policy of insurance.  Therefore, the Court
concludes that pursuant to Cal.Civ.Code §
3289(b), the applicable rate of prejudgment
interest is ten percent.

In *Bell*, the plaintiffs were former or current claims

representatives working for Farmers Insurance Exchange (FIE)

seeking unpaid overtime compensation under Labor Code § 1194.

FIE argued on appeal that the 10% prejudgment interest rate was

first authorized by the enactment of Labor Code § 218.6,

effective January 1, 2001, which incorporated the interest rate

provided by Section 3289 for breach of contract.  Prior to this

date, FIE argued, the applicable prejudgment interest rate was

the 7% rate provided by the California constitution.  The Court

of Appeal ruled:

[W]e find the authority construing the
employment contract as incorporating
statutory duties more persuasive than the
analogy to the choice of statute of
limitations.  At the very least, the argument
for the application of the breach-of-contract
prejudgment interest rate of Civil Code
section 3289 carries sufficient logic to
support the assumption that the Legislature
regarded the reference to section 3289 in
Labor Code section 218.6 as a clarification
of existing law ....

35

1  *Bell* is irrelevant to the rate of prejudgment interest to which

2  USF&G is entitled.

3        In *George v. Double D Foods,* the administrator of a deceased

4  employee's estate brought a quantum meruit action against the

5  former employer, seeking recovery, on the basis of the employer's

6  alleged oral promises of bonuses and a stock purchase option, of

7  the unpaid balance due for the reasonable value of the employee's

8  services during a specified period.  The Court of Appeal ruled:

9              While recognizing that a contract may be
             either express or implied ..., defendant
10           argues a proceeding in quantum meruit does
             not evince a transaction within the
11           definition of an implied contract; i.e., a
             contract 'the existence and terms of which
12           are manifested by conduct' ... Rather,
             defendant argues, a quantum meruit action is
13           quasi-contractual in nature, or implied in
             law to bring about justice without reference
14           to the intent of the parties ... So far,
             defendant is substantially correct; where
15           recovery is sought on a quantum meruit theory
             in the face of an unenforceable express
16           contract, the relief is deemed quasi-
             contractual in nature ... However, the
17           distinction between a contract implied in
             fact and a quasi-contract avails defendant
18           nothing.

19           Repeatedly, statutes relating to claims
             'arising upon contract' have been applied to
20           quasi-contractual obligations.  (See, e.g.,
             *Smith v. Minnesota Mut. Life Ins. Co.* (1948)
21           86 Cal.App.2d 581, 590 .... Moreover, for
             most purposes, an action to recover the
22           reasonable value of services is considered an
             action on the contract.  (See *Philpott v.*
23           *Superior Court* (1934) 1 Cal.2d 512, 518-520
             ...; *H. Russell Taylor's Fire Prevention*
24           *Service, Inc. v. Coca Cola Bottling Corp.*
             (1979) 90 Cal.App.3d 711, 720 ... Hence,
25           there is ample authority for viewing the
             instant proceeding as an action in contract
26           within the meaning of Civil Code section

36

1          3287, subdivision (b).

2          30.  The restitutionary amounts sought arose out of USF&G's

3     obligations under an insurance contract in a rescission action

4     based on fraud.  It was Lee's fraud that gave rise to the right

5     of rescission.  The action relates to an underlying contract

6     which was abrogated *ab initio,* as if there had been no contract,

7     based on the jury's finding of Lee's fraud.  Contract defenses

8     include fraud.  An action based on fraud is not one "in

9     contract," even if the remedy sought is rescission.  The seven

10    percent (7%) rate for prejudgment interest applies.

11         31.  USF&G is entitled to prejudgment interest at the rate

12    of 7% on the amounts paid to or on behalf of Diana Conley through

13    April 4, 2007 in the amount of $366,777.93.  This amount does not

14    include interest on amounts paid in January and February, 2007

15    and thereafter.  USF&G is entitled to prejudgment interest at the

16    rate of 7% on the amounts paid to Dowling, Aaron & Keller through

17    April 4, 2007 in the amount of $50,300.81.  Lee is entitled to an

18    offset for prejudgment interest at the rate of 7% on the amount

19    of reimbursed premiums paid for the USF&G workers' compensation

20    policy through April 4, 2007 in the amount of $22,123.71.  The

21    total amount of prejudgment interest to which USF&G is entitled

22    through April 4, 2007 is $394,955.03.  USF&G is entitled to

23    prejudgment interest at the rate of 7% on amounts paid to or on

24    behalf of Diana Conley pursuant to the workers' compensation

25    policy from March 2007 to the date judgment is entered, and to

26    prejudgment interest on amounts paid to Dowling, Aaron & Keller

from April 4, 2007 to the date judgment is entered, less an offset for prejudgment interest at the rate of 7% on the amount of reimbursed premiums paid for the USF&G workers' compensation policy from April 4, 2007 to the date judgment is entered.

II.   **AON**.

A.   **FINDINGS OF FACT**.

To the extent that any finding of fact can be interpreted as a conclusion of law, it may be so construed.

i.   **Claim for Attorneys' Fees and Costs - Tort of Another**.

a.   **Statute of Limitations**.

1.   Lee filed a third-party counterclaim against Aon, American Specialty and USF&G on February 7, 2000, alleging claims for negligence, intentional misrepresentation, indemnity, breach of fiduciary duty, conspiracy to defraud, declaratory relief, and breach of contract.   [Court Trial Exhibit 863; Doc. 40].   Aon filed an answer to Lee's counterclaim on March 2, 2000, which answer did not specifically assert a "tort of another" counterclaim against Lee or any other counterclaim, but did allege as affirmative defenses that Lee and its agents "failed and neglected to use reasonable care to mitigate, minimize or avoid the damages alleged," [mitigation], and "were careless and negligent with respect to the matters alleged in the third-party complaint" which proximately caused the alleged injury to Lee [negligence of Lee], and that "[a]nother person or entity was careless or negligent, [comparative fault] or breached a duty or

contractual relationship and that such negligence, carelessness, or breach of duty or contract proximately contributed to the losses and damages complained of." [Lee's breach].  [Court Trial Exhibit 870; Doc. 43].

    2.  Lee dismissed its third-party counterclaim against Aon without prejudice on August 16, 2000 pursuant to a Tolling Agreement between Lee and Aon effective as of August 14, 2000. The Tolling Agreement stated:

> WHEREAS, as of the effective date of this Agreement, the parties desire to toll, but not revive, the running of any applicable statute of limitations, contractual time limitations, the equitable defense of laches, and any other time-related defense or bar (collectively and separately referred to as 'Time Defense') on any and all claims that they may presently have, or may have in the future, against each other in connection with the matters at issue in the Lawsuit; and
>
> WHEREAS, Aon Risk Services and Lee Investments do not intend to revive or alter any applicable Time Defense in any matter now existing or which may arise in the future between them, except as set forth in this Agreement;
>
> ...
>
> 2.  All following terms of this Agreement cover any claims, actions or causes of action, whether based on statute or common law, that Lee Investments and Aon Risk Services might have against each other in connection with any matter at issue in the aforementioned Lawsuit, as well as any defense, claim, cause of action or other matter which could be asserted by either of them as an affirmative defense, offset or credit in the Lawsuit (hereinafter collectively referred to as the 'Covered Actions').

3.   The time that passes while the Agreement remains in effect shall not be taken into account in applying any Time Defense to any Covered Action brought after this Agreement terminates (see Paragraph 5 below), nor shall any such time be taken into account in determining whether the parties have acted reasonably by delaying the filing of any Covered Actions. Further, in the event that either of the parties seeks in the future to file any Covered Action against the other, both parties hereby waive any defense that such Covered Action was a compulsory cross-claim or third-party claim in the Lawsuit, or that such Covered Action was for any reason required to have been filed and/or pursued as part of the Lawsuit.

...

5.   This Agreement shall remain in effect from August 14, 1999, until the earlier of the following dates:

(a) sixty (60) days after the parties receive written notice of the termination of the Lawsuit by final order, decree or judgment, including the resolution of all appeals in connection therewith;

(b) sixty (60) days after the effective date of any settlement of the lawsuit; or

(c) sixty (60) days after the date on which either party gives written notice to the other that it wishes to terminate this Agreement

7. ... This Agreement does not revive any claim that on the effective date of this Agreement was barred by any Time Defense. Finally, except as expressly stated herein, this Agreement shall not preclude or impair any defense, affirmative defense, counterclaim or cross claim that a party to this Agreement might raise in any action.

...

40

1
2
3

          9.   This Agreement contains the entire agreement of the parties with respect to the subject matter hereof and may not be modified in any way except by written consent of the parties hereto.

4
[Jury Trial Joint Exhibit 88].

5     3.  On May 3, 2001, USF&G filed a third-party complaint for

6   indemnity and declaratory relief against Aon. [Court Trial

7   Exhibit 864; Doc. 83].

8     4.  On June 25, 2001, Aon filed an answer to USF&G's third-

9   party complaint. [Court Trial Exhibit 765; Doc. 84]

10    5.  Pursuant to a stipulation and order filed on September

11  12, 2001, between Lee, USF&G and Aon, it was agreed "that Lee

12  Investments LLC be permitted to file its Third Party Complaint

13  against Aon Risk Services Inc. of Central California" and that

14  Aon's responsive pleading shall be due on or before October 4,

15  2001." [Court Trial Exhibit 764; Doc. 98].

16    6.  On September 12, 2001, Lee filed a third-party complaint

17  against Aon, alleging claims for negligence, intentional

18  misrepresentation, indemnity, conspiracy, declaratory relief, and

19  breach of contract. [Court Trial Exhibit 871; Doc. 99].

20    7.  There is no evidence that Lee gave any written notice

21  pursuant to the Tolling Agreement that Lee wished to terminate

22  the Tolling Agreement.  No evidence is presented that Aon

23  objected to Lee's third-party complaint on the ground that Lee

24  had not given written notice of its wish to terminate the Tolling

25  Agreement.

26    8.  On September 8, 2005, Aon filed an answer to Lee's

1   third-party complaint. [Court Trial Exhibit 865; Doc. 204].  This

2   answer alleges as the Ninth Affirmative Defense "(Fault of

3   Another)" that "[t]o the extent that Lee is damaged, if at all,

4   such damage is the proximate result of the carelessness,

5   negligence, acts, and/or omissions of a third party or of third

6   parties."

7       9.   On March 3, 2006, Aon moved to amend its answer to Lee's

8   third-party complaint to assert a counterclaim against Lee

9   pursuant to the doctrine of tort of another. [Doc. 228].  By

10   Order filed on July 18, 2006, Aon's motion to amend was granted,

11   as were the motions to amend of USF&G and Lee.  [Doc. 256].

12       10.  A Joint Status Report was filed on August 29, 2006 for

13   a scheduling conference set for September 1, 2006.  The Joint

14   Status report referred to the July 18, 2006 Order, granting the

15   motions to amend, and stated: "The parties have discussed, and

16   would like confirmation from the Court, as to when the amended

17   pleadings asserting those claims, and pleadings responding to

18   them, should be filed." [Doc. 260, 7:19-20].  The Supplemental

19   Scheduling Conference Order filed on September 5, 2006 does not

20   address the timing of filing the various amended pleadings and

21   responses thereto. [Doc. 266].

22       11.  On September 7, 2006, Aon filed an amended answer to

23   Lee's third-party complaint and Aon's counterclaims. [Court Trial

24   Exhibit 866; Doc. 269].  The First Claim for Relief in Aon's

25   counterclaim alleges that Aon is entitled to recover from Lee

26   Aon's damages under the tort of another doctrine:

21.  On or about August 12, 1998 Lee's General Counsel, Lisa Ehrlich, represented to Aon broker Hugh Awtry that Lee was no longer using its employees to perform construction work, and that any construction work at The Island would be performed by independent contractors who would maintain their own workers' compensation insurance.  Christy Platt confirmed and reiterated these representations to Mr. Awtry by informing him on the same day that she had discussed the contents of the August 12, 1998 letter with Ms. Ehrlich and that Ms. Platt would sign it on behalf of Lee.

22.  At the time that these representations were made, Lee knew that these representations were false.  In fact on the very same day, Ms. Ehrlich advised Whitewater that Lee was 'maintaining a labor force to erect [water slides],' and promised that it would provide 'ample labor' to construct Whitewater's slides when they were delivered to The Island.  Lee had superior or exclusive knowledge of the fact that Lee's employees would perform, or likely would perform, further construction work at The Island.  At no time did Lee inform Aon that its employees would be performing construction tasks at The Island and Aon had no knowledge of this fact.

23.  Justifiably relying on its communication with Lee, Aon drafted the August 12, 1998 letter for Lee to send to American Specialty. The August 12, 1998 letter contained representations that Lee was no longer using its employees as construction laborers that any construction at The Island would be performed by independent contractors that maintained independent insurance.  Lee reviewed and signed the letter before sending it to American Specialty.

24.  American Specialty and USF&G allege that they relied on the August 12, 1998 letter in deciding to issue, and in issuing, the insurance policy and would not have issued such a policy had these representations not been made, or if the true facts had been disclosed.  The August 12, 1998 letter, and the accuracy of the representation in that

43

letter, has become the central focus of the disputes in this lawsuit.

25.  As a direct and proximate result of Lee's misrepresentations to Aon, Aon has become embroiled in this litigation both as a non-party from time to time, and a third party defendant.  Aon has been forced to retain and pay for counsel to, among other things, defend its employees as witnesses in the factual investigation of this case, and to respond to third party discovery even when Aon was not a party.  Aon also has been forced to retain counsel and experts to defend itself against claims brought by USF&G and American Specialty, and to pursue affirmative claims against them. Furthermore, in defense of its interests, Aon has been forced to monitor, evaluate and analyze numerous complex factual, legal, and expert issues litigated by and between Lee, American Specialty, and USF&G, because the resolution of those issues may affect Aon's exposure in this matter, if any, even though they have little or nothing to do with Aon. Aon also has expended internal resources, including time spent by Aon employees and Aon's in-house counsel, defending and prosecuting its interests in this litigation. For all these reasons, among others, Aon has been damaged in an amount to be proven at trial and, under the tort of another doctrine, is entitled to recover such damages, and damages to be incurred through the conclusion of this matter, from Lee.

           b.  <u>Tort of Another</u>.

12.  At all times relevant, Aon was Lee's broker for the purposes of obtaining workers' compensation insurance for Lee's water park.  Aon had a direct oral contractual relation with Lee to represent Lee as an insurance broker.

13.  There is no evidence that Aon was a designated statutory agent, California Insurance Code § 1704, for USF&G or American Specialty.

14.   Aon was sued by USF&G, a third party, for alleged negligence, fraud, and other breaches of duty to Lee, which USF&G and Aon alleges committed the tort of fraud, which resulted in issuance of the USF&G policy, and Lee's tort caused Aon to be sued by USF&G on account of Lee's fraud.

15.   Aon failed to prove that Aon made a demand that Lee assume Aon's defense to USF&G's third party complaint against Aon.

B.   <u>CONCLUSION OF LAW</u>.

To the extent any conclusion of law can be interpreted as a finding of fact, it may be so construed.

i.   <u>Claim for Attorneys' Fees and Costs - Tort of Another</u>.

a.   <u>Statute of Limitations</u>.

1.   Aon's failure to object to Lee's filing of the third-party complaint against Aon on September 12, 2001 on the ground that Lee had not given written notice of termination of the Tolling Agreement pursuant to its terms and Aon's execution of the stipulation on September 12, 2001, allowing Lee to file the third-party complaint waives any contention that Lee's third-party complaint is barred by the Tolling Agreement.

2.   No California authority has been cited or located specifically stating the statute of limitations applicable to the "tort of another."

3.   Under the America rule, in the absence of some special

agreement, statutory provision, or exceptional circumstances, attorneys' fees are to be paid by the party employing the attorney.  An exception is recognized in California for attorneys' fees and costs incurred by the tort of another. *Prentice v. North American Title Guaranty Corp., Alameda Division,* 59 Cal.2nd 618, 620 (1963): "A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred."

    4.   The exception recognized in *Prentice* is in fact an element of tort damages.  *Prentice* stated that it was "not dealing with 'the measure and mode of compensation of attorneys' but with damages wrongfully caused by the defendant's improper actions."  *Prentice, supra*, 59 Cal.2d at 621.  To recover attorneys' fees as an element of tort damages, there must be a clear violation of a traditional tort duty between the tortfeasor who is required to pay the attorneys' fees and the person seeking compensation for those fees.  *Sooy v. Peter*, 220 Cal.App.3d 1305, 1310 (1990).

    5.   The statute of limitations applicable to Aon's counterclaim for the tort of another is the three year statute of limitations applicable to actions for relief based on fraud. California Code of Civil Procedure § 338(d).

    6.   A cause of action for relief based on fraud "is not

deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud ...."  California Code of Civil Procedure § 338(d).  "Since a cause of action *accrues* when the *elements* of the cause of action, including damage occur, the appreciable and actual harm that results in accrual must be the harm of the specific type that is recoverable as damages on that type of cause of action."  *County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal.App.4th 292, 317 (2006); *see also City of Vista v. Robert Thompson Securities, Inc.*, 84 Cal.App.4th 882, 886-887 (2000): "When damages are an element of a cause of action, the cause of action does not accrue until the damages have been sustained ... 'Mere threat of future harm, not yet realized is not enough.'"

7.   Aon's claim against Lee for damages for tort of another did not accrue until USF&G filed its third-party complaint against Aon on May 3, 2001, thereby causing Aon to incur attorneys' fees in defending USF&G's claims against it.[3]

8.   Because Aon did not file its Amended Counterclaim against Lee alleging a claim for damages for tort of another until September 7, 2006, more than three years later, Aon's tort

---

[3]Because of this conclusion, Lee's argument that Aon's tort of another counterclaim was compulsory to Lee's third-party counterclaim against Aon, American Specialty and USF&G filed on February 7, 2000 is without merit.  Rule 13(a)(1)(A), Federal Rules of Civil Procedure, defines a compulsory counterclaim as "any claim that - at the time of its service - the pleader has against an opposing party if the claim [¶] arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."  Aon had no claim for tort of another damages against Lee until USF&G sued Aon.

of another

claim is time-barred unless the amendment relates back pursuant

to Rule 15(c)(1), Federal Rules of Civil Procedure.

9.   Rule 15(c)(1) provides that an amendment relates back to

the date of the original pleading when: (A) the law that provides

the applicable statute of limitations allows relation back, or

(B) the amendment asserts a claim or defense that arose out of

the conduct, transaction, or occurrence set out - or attempted to

be set out - in the original pleading.

10.   California law determines whether Aon's amendment

relates back.   Rule 15(c)(1)(A) was added as Rule 15(c)(1) by

amendment in 1991.   The Advisory Committee Notes provide:

> This provision is new.  It is intended to
> make clear that the rule does not apply to
> preclude any relation back that may be
> permitted under the applicable limitations
> law.  Generally, the applicable limitations
> law will be state law.  If federal
> jurisdiction is based on the citizenship of
> the parties, the primary reference is the law
> of the state in which the district court
> sits. ... Whatever may be the controlling
> body of limitations law, if that law affords
> a more forgiving principle of relation back
> than the one provided in this rule, it should
> be available to save the claim.

11.   Under California law, an amendment will relate back if

the amended pleading (1) rests on the same general set of facts,

(2) involves the same injury, and (3) refers to the same

instrumentality, as the original pleading.   *Norgart v. Upjohn*

*Co.*, 21 Cal.4th 383, 409 (1999).   The relation-back doctrine is

grounded on the strong policy in California that cases should be

decided on their merits, *Idding v. North Bay Construction Co.*, 39 Cal.App.4th 1111, 1114 (1995), and focuses on factual similarity rather than rights or obligations arising from the facts. *Dudley v. Department of Transportation*, 90 Cal.App.4th 255, 266 (2001).

12. The relation-back doctrine requires the court to compare the factual allegations in the original and amended pleadings to determine if the amended pleading relates back to the filing of the original pleading. *Davaloo v. State Farm Ins. Co.*, 135 Cal.App.4th 409, 415 (2005).  A party who changes the essential facts upon which recovery is sought is not entitled to the benefits of the relation back doctrine. *Id.*  "Different acts leading to distinct injuries are not part of the 'same general set of facts' even though they may be part of the same 'story.'" *McCauley v. Howard Jarvis Taxpayers Assn.*, 68 Cal.App.4th 1255, 1262 (1998).

13. Aon's tort of another counterclaim against Lee does not involve the same injury as was alleged in Aon's Answer to Lee's third party complaint filed in February 2000 or in September 2001.  Aon's Answer alleged as affirmative defenses that Lee and its agents "failed and neglected to use reasonable care to mitigate, minimize or avoid the damages alleged," and "were careless and negligent with respect to the matters alleged in the third-party complaint" which proximately caused the alleged injury to Lee, and that "[a]nother person or entity was careless or negligent, or breached a duty or contractual relationship and that such negligence, carelessness, or breach of duty or contract

49

proximately contributed to the losses and damages complained of."

Aon's tort of another counterclaim alleges that Aon has incurred damages in the form of attorneys' fees because of USF&G's third-party complaint against Aon.  Until USF&G filed its third-party complaint against Aon, Aon could not seek to recover attorneys' fees from Lee as a result of USF&G's complaint against Lee and Lee's third-party complaint against Aon.

14.  Aon's tort of another counterclaim against Lee does not involve the same instrumentality as was alleged in Aon's Answer to Lee's third party complaint filed in February 2000 and in September 2001.  The instrumentality causing Aon's alleged harm, attorneys' fees and related court costs, was USF&G's third-party complaint against Aon.

15.  Aon's tort of another counterclaim does not relate back to Lee's third party complaint filed in 2000 or in 2001.

16.  Aon's tort of another counterclaim is barred by the three year statute of limitations.

b.  <u>Tort of Another</u>.

17.  A further issue is presented whether California's common law "tort of another" has been superseded by California Code of Civil Procedure § 1021.6.[4]

---

[4]California Code of Civil Procedure § 1021.6 provides:

> Upon motion, a court after reviewing the evidence in the principle case may award attorney's fees to a person who prevails on a claim for implied indemnity if the court finds (a) that the indemnitee through the tort of the indemnitor has been required to act in the

18.   In *Prentice v. North American Title Guaranty Corp.*, *Alameda Division, supra*, 59 Cal.2d 618, the Plaintiffs agreed to sell certain property to the Hortons, to accept the Hortons' deed of trust for most of the purchase price, and to subordinate their interest to any loan the Hortons might obtain for the purpose of constructing an apartment building on the land.  The Hortons obtained a loan from Neal and gave their promissory note, secured by a first deed of trust on the purchased land.  Defendant acted as the escrow holder and closed the transaction pursuant to written instructions from the parties.  Upon completion of the sale, the Hortons held title to the land, subject to a first deed of trust in favor of Neal and a second deed of trust in favor of Plaintiffs for the balance of the purchase price.  The Hortons did not use the proceeds of the loan from Neal to construct an apartment building, but diverted the money to other purposes, later filing a bankruptcy petition.  Plaintiffs' brought an action against the Hortons, Neal and Defendant.  The action against Defendant was based on negligence.  The trial court found

_____

protection of the indemnitee's interest by bringing an action against or defending an action by a third person and (b) if that indemnitor was properly notified of the demand to bring the action or provide the defense and did not avail itself of the opportunity to do so, and (c) that the trier of fact determined that the indemnitee was without fault in the principle case which is the basis for the action in indemnity or that the indemnitee had a final judgment entered in his or her favor granting a summary judgment, a nonsuit, or a directed verdict.

51

that Defendant had been negligent in closing the sale and awarded
Plaintiffs as damages the amount of attorney's fees incurred by
them in the prosecution of the claims against the Hortons and
Neal.   The Supreme Court affirmed the award of attorneys' fees as
damages, noting that "[i]n the absence of some special agreement,
statutory provision, or exceptional circumstances, attorney's
fees are to be paid by the party employing the attorney,"
nonetheless:

> A person who through the tort of another has
> been required to act in the protection of his
> interests by bringing or defending an action
> against a third person is entitled to
> recovery compensation for the reasonably
> necessary loss of time, attorney's fees, and
> other expenditures thereby suffered or
> incurred.

*Id.* at 620.   The *Prentice* Court ruled that California Code of
Civil Procedure § 1021 is "not applicable to cases where a
defendant has wrongfully made it necessary for a plaintiff to sue
a third person."   *Id.* at 621.   "[T]here is no reason why recovery
of such fees should be denied simply because the two causes of
action (the one against the third person and the one against the
party whose breach of duty made it necessary for the plaintiff to
sue the third person) are tried in the same action."   *Id.*

19.   *Davis v. Air Technical Industries, Inc.*, 22 Cal.3d 1
(1978), involved an action against a manufacturer and a retailer
for strict liability, negligence and breach of express warranty.
The retailer cross-complained against the manufacturer for
indemnification following the manufacturer's refusal to defend on

1  the retailer's behalf.  The retailer's motion for nonsuit on the

2  breach of warranty issue was granted and Plaintiff voluntarily

3  dismissed the negligence claim.  Following an award of damages

4  against both Defendants on the strict liability claim, the trial

5  court awarded the retailer indemnity for the damages and

6  attorney's fees.  The Supreme Court ruled:

7           [I]n ordinary products liability cases, a
           manufacturer is not liable for attorney's
8           fees incurred by an indemnified party solely
           in defense of alleged wrongdoing on its part.
9           Since Davis defended exclusively against
           allegations of his own negligence, he is not
10          entitled to recover attorney's fees.

11 *Id.* at 6.  The Supreme Court distinguished *Prentice*, noting that

12 *Prentice* is limited to "exceptional circumstances:"

13          Far from involving 'exceptional
           circumstances,' the present case is a
14          products liability action of the garden
           variety.  A manufacturer and retailer were
15          held strictly liable for injuries caused by
           the manufacturer's defectively designed
16          product.  Since ultimate responsibility for
           the defect was placed on the manufacturer, it
17          was required to pay plaintiff's damages.  If
           the court upheld an award of attorney's fees
18          in this wholly unexceptional case, the
           legislative mandate of section 1021 would be
19          completely undermined.

20 *Id.* at 7.  The Supreme Court noted that *Prentice's* description of

21 the tort of another "could be read to entitle exonerated

22 defendants in commonplace, multiparty tort actions to recover

23 their attorney's fees from unrelated codefendants who were held

24 liable[, but s]uch a rule was not intended by this court." *Id.* at

25 fn. 8.

26      Justice Mosk dissented from the *Davis* majority:

1
2
3

> The principal error of the majority is in
> looking to the charges in the complaint
> against Davis, rather than to the actual
> facts known by the indemnitor, as developed
> during the course of litigation ....

4
5
6
7
8
9
10
11
12
13
14

> Originally, out of an abundance of caution,
> Nagatsuka sued both Air Technical and Davis.
> But Davis was completely exonerated of
> responsibility.  On the breach of warranty
> cause of action his motion for a nonsuit was
> granted.  The negligence cause of action was
> voluntarily dismissed by Nagatsuka.  On the
> cross-complaint Air Technical's contention
> that Davis was negligent was rejected by the
> trial court.  By simple process of
> elimination, then, it is clear that Davis was
> in the lawsuit solely because Air Technical
> manufactured a defective product and it
> passed through his hands.  As a result the
> majority of this court agree, and Air
> Technical apparently now concedes, that
> indemnification of Davis is compelled.  That
> being so, Davis is entitled to recover all,
> not a small portion, of the damage he
> suffered.

15
16
17
18
19
20
21

> The majority find a problem with recovery of
> attorney's fees as an item of expense.  Davis
> did not gratuitously undertake a defense and
> incur obligations for attorney's fees; he
> requested Air Technical to defend him and it
> declined to do so.  As established by
> subsequent events, though it was known or
> should have been known by the defendants at
> all times, Air Technical was alone
> responsible for the accident and thus it
> should have undertaken the entire defense.
> Under these circumstances all Davis is
> required to prove in this proceeding is the
> judgment and the amount of his loss.

22 *Id.* at 9.  Justice Mosk stated that in *Prentice*, "[w]e made it

23 abundantly clear ... that even though an indemnitee may be

24 protecting his own interests by defending a lawsuit, he is

25 entitled to recover his expenditures, including attorney's fees,

26 if his involvement is due to the tort of another."  *Id.* at 10:

> The majority seek to avoid the unequivocal *Prentice* rule by declaring it covers only 'a limited class of cases.'  True enough.  But this case comes squarely within that limited class ....
>
> Davis is not claiming attorney's fees for pressing his indemnity claim, but only those fees incurred in defending the lawsuit in which he was absolved of all responsibility and in which the sole responsibility was found to be that of the indemnitor.  These are paradigm circumstances for full indemnification.

*Id.*

20.  Section 1021.6 was enacted in 1979.  Section 1021.6 was amended in 1982 to add the final alternative clause to subdivision (c) relating to final judgments for indemnitees granting summary judgment, nonsuit or a directed verdict.  *See* Historical and Statutory Notes to Section 1021.6, West's Annotated California Code of Civil Procedure.  Some California Court of Appeals decisions have ruled that Section 1021.6 was enacted to overrule *Davis* to permit an indemnitee to recover attorney's fees incurred in the principal action where that indemnitee is determined to be without fault.

In *Bear Creek Planning Com. v. Title Ins. & Trust Co.*, 164 Cal.App.3d 1227 (1985), disapproved on other grounds*, Bay Development, Ltd. v. Superior Court*, 50 Cal.3d 1012 (1990), the defendant, a title insurance company, was sued for indemnification by plaintiff homeowners' association.  Damages and attorney's fees were assessed against the association in a prior slander of title action arising out of the title insurance

company's failure to timely record CC&Rs.  In the prior action,
the association was sued by a homeowner after the association
attempted to enforce the CC&Rs and after the association filed a
notice of violation against the homeowner.  The trial court
ordered the title insurance company to pay the damages and
attorneys' fees assessed against the association in the prior
slander of title action, the attorney's fees incurred by the
association in defending the prior underlying suit, and the
attorney's fees incurred by the association in prosecuting this
action.  In pertinent part, the title insurance company contended
that the trial court erred in awarding the association attorney's
fees it incurred in defending the slander of title action.  After
discussing the holdings of *Prentice* and *Davis*, the Court of
Appeals ruled:

> We need not determine the applicability of
> *Prentice* and *Davis* in the case before us as
> the question of attorney fees in implied
> indemnity actions is now governed by section
> 1021.6 of the Code of Civil Procedure.
> Section 1021.6 was enacted in 1979 ...
> reportedly to overrule *Davis* and to permit an
> indemnitee to recover attorney fees incurred
> in the principle action where that indemnitee
> is determined to be without fault in that
> action ....

*Id.* at 1244.  Because the association had complied with the
requirements of Section 1021.6(a)-(c), the award of attorney's
fees to the association was appropriate.  *Id.* at 1244-1245.

    In *Fidelity Mortgage Trustee Service, Inc. v. Ridgegate East
Homeowners Assn.*, 27 Cal.App.4th 503, 514 (1994), a professional
foreclosure trustee, which had been retained by a homeowners'

association and a property management company to conduct a

foreclosure sale, brought an action against those two parties for

indemnification of attorney fees and costs incurred in

successfully defending an action for negligence and

misrepresentation brought by the owner of the foreclosed

property.  The trial court found that the plaintiff's claim for

attorney's fees was barred by Section 1021.6 because it failed to

tender the defense of the action to defendants, as required by

the statute.  The Court of Appeal reversed, stating in pertinent

part:

> The language of section 1021.6 reflects
> Justice Mosk's reasoning.  It tracks the
> language in *Prentice* ... at page 620, quoted
> by Justice Mosk.  It includes a requirement
> that the indemnitee tender its defense of the
> third party action to the indemnitor.  It
> mandates a finding that the indemnitee was
> without fault.  In short, section 1021.6
> imposes liability on a tortious indemnitor
> for attorney fees it causes an innocent
> indemnitee to incur.  We agree ... that
> section 1021.6 was enacted to overrule *Davis*.
>
> In contrast to the circumstances section
> 1021.6 was enacted to address, plaintiff does
> not allege it was involved in Ms. Vrba's
> action due to the tort of Ridgegate or Bali.
> The trier of fact in that underlying action
> was asked to determine whether Mr. Katz, as
> president of plaintiff, had acted improperly
> or negligently and whether Ridgegate was
> liable for that improper conduct under agency
> principles.  Plaintiff did not allege it was
> required to defend the underlying action
> 'through the tort of' (§ 1021.6) Ridgegate or
> Bali.  Further, no evidence was cited in the
> separate statements of undisputed facts that
> plaintiff was required to defend the
> underlying lawsuit because of tortious
> conduct engaged in by Ridgegate or Bali.
> Instead, plaintiff's cause of action for

1                     **indemnification arises out of its alleged**
                     **agency relationship with Ridgegate and Bali.**

2                     **Therefore, a triable controversy exists as to**
                     **whether section 1021.6 is applicable to this**

3                     **case.**

4  *Id.* **at 514.**

5     *See also John Hancock Mutual Life Ins. Co. v. Setser*, 42

6  Cal.App.4th 1524, 1531–1535 (1996):

7                     **Apparently, the Legislature agreed with**
                     **Justice Mosk, adopting some - but not all -**

8                     **of the language he quoted from** *Prentice* **...**
                     **as the basis of section 1021.6 ... But the**

9                     **Legislature also appears to have adopted**
                     **Justice Mosk's characterization of the 'tort**

10                    **of another' doctrine as just another form of**
                    **'implied indemnity.' ... Indeed, section**

11                   **1021.6 is arguably broader than the 'tort of**
                   **another' doctrine, in that [it] provides**

12                   **attorney fees to** *any* **'innocent indemnitee'**
                   **who has incurred attorney fees to defend**

13                   **itself and has otherwise satisfied the**
                   **requirements of section 1021.6 ..., including**

14                   **one who has been found to be a joint**
                   **tortfeasor but has been relieved of all**

15                   **responsibility in the fault allocation ...,**
                   **or who claims implied** *contractual* **indemnity**

16                   **....**

17  *Id.* **at 1533.**

18     *See also Unocal Corp. v. United States*, 222 F.3d 528 (9th

19  Cir.2000), where the owner of a pipeline that ruptured during

20  construction of a railway station brought an action against the

21  rail authority and others, seeking reimbursement of cleanup costs

22  arising from the oil spill under theories of negligence, breach

23  of contract, and quasi-contract, among others.  The Central

24  District entered judgment upon jury verdict for the pipeline

25  owner.  The rail authority appealed and the owner cross-appealed

26  for, *inter alia*, the district court's refusal to award attorney's

fees.   The Ninth Circuit affirmed the refusal to award attorney's
fees:

> Unocal next asserts that the district court
> should have awarded fees pursuant to
> California's 'tort of another doctrine,'
> codified at California Code of Civil
> Procedure section 1021.6 ... Unocal argues
> that it deserves fees under this provision
> because it was forced to incur the costs of
> rendering a defense under the OPA, when the
> true tortfeasor in the case was Metrolink.
>
> The district court properly rejected Unocal's
> argument, noting that section 1021.6 applies
> only where the prevailing party has been
> required to bring or defend an action against
> a third person ... In this case, Unocal
> neither brought nor defended any action
> against any third party prior to filing this
> suit.   Therefore, the 'tort of another'
> doctrine simply does not apply.

*Id.* at 546.

21.   Other cases have continued to apply the *Prentice* "tort
of another" doctrine since the enactment of Section 1021.6 in
1979.   *Gray v. Don Miller & Associates, Inc.*, 35 Cal.3d 498
(1984), involved an action for fraud by a prospective buyer of
real property against a real estate brokerage firm, arising from
a broker's misrepresentation to the buyer that the sellers had
accepted the buyer's offer, and against the seller for specific
performance.   The trial court awarded the buyer damages,
including attorney's fees.   The Supreme Court affirmed:

> The next question is whether plaintiff is
> entitled to recover attorney fees on the
> basis of the 'tort of another' exception to
> the general rule because he was required to
> protect his interest by bringing an action
> against the sellers as the result of Fitch's
> wrongdoing.   We can see no escape from the

validity of plaintiff's claim in this regard.
If Fitch had not first falsely notified
plaintiff that his offer had been accepted
and several months later told him that the
sellers declined to sell the property,
plaintiff would not have incurred attorney
fees in seeking to obtain the property in a
suit for specific performance against the
sellers.   Thus, Fitch's misrepresentation was
the direct cause of plaintiff's action for
specific performance against the sellers.

*Id.* at 507.   The *Gray* Court ruled that *Davis* was not controlling:

While the rationale of *Davis* has been applied
in products liability litigation to deny
attorney fees to the innocent defendant
against his wrongdoing codefendant ... in a
nonproducts liability context the rule of
*Prentice* ... has been applied when it has
been found that the party seeking attorney
fees was required by the wrong of the
defendant to protect his interests by
bringing or defending an action ... Some of
these cases distinguish *Davis* on the ground
that it involved products liability
litigation ... or view as the 'exceptional
circumstance' the fact that the plaintiff was
required by the wrongdoing of the defendant
to file suit against a third party to
vindicate his rights ....

We also note that the 'tort of another'
exception as embodied in the Restatement of
Torts does not contain an 'exceptional
circumstances' requirement.   (Rest.2d Torts,
§ 914, subd. (2)); we have been cited to no
cases from the many jurisdictions which apply
this exception limiting its application to
"exceptional circumstances."

*Id.* at 508-509.

In *Watson v. Department of Transportation*, 68 Cal.App.4th

885 (1998), a motorist, Watson, brought a personal injury action

against the other driver, Huffman, involved in an automobile

collision with her and against Caltrans.   A power outage affected

60

traffic control at an intersection of a street and Highway 99,
causing the traffic lights to flash red in all directions.
Watson drove into the intersection and stopped because his vision
of the southbound lanes of Highway 99 was obstructed by traffic
in the turning lane.  In the interim, a Caltrans employee reset
the traffic control signal block which resulted in the lights
turning green for the Highway 99 through lanes.  Huffman, talking
on her cell phone while driving south on Highway 99, drove into
the intersection and collided with Watson.   Huffman cross-
complained against Caltrans on a theory of equitable indemnity.
In the personal injury action, the jury found that Caltrans bore
90% of the fault, that defendant driver was not negligent, and
that plaintiff was 10% at fault.  The trial court granted
defendant driver's motion for recovery of his attorney's fees
from Caltrans based on Section 1021.6.  The Court of Appeal
reversed.  The Court of Appeal, noting that Section 1021.6 does
not establish the criteria for implied indemnity, agreed with
Caltrans that, under the facts of the case, there was no
relationship between itself and Watson giving rise to indemnity
under the established categories of implied indemnity, e.g.,
implied contractual indemnity, vicarious liability, or an
intentional tort giving rise to complete equitable indemnity,
*Id.* 890-891, and concluded that liability for implied indemnity
cannot be founded merely upon the absence of fault of one
codefendant.  *Id.* at 893.  The Court of Appeal also rejected
Watson's argument that he had a claim for indemnity under the

61

"tort of another" doctrine articulated in *Prentice*:

> The extension of the *Prentice* rule to the commonplace case of an exonerated alleged tortfeasor would go a long way toward abrogation of the American rule that each party to a lawsuit must ordinarily pay his or her own attorney's fees.  It would substantially expand the notion of duty under the law of torts to compensation of the litigation expenses incurred by all persons, however connected to any tortious event, whom the injured plaintiff elects to sue who succeed in establishing lack of liability. Watson makes no policy argument justifying such an extension of duty.  There is no warrant for such a wholesale extension in the general language of *Prentice*.
>
> Watson makes only one narrow claim of duty. He also founds the duty of indemnity on Caltrans's duty to him as a motorist to maintain the intersection in a safe condition and to correct any dangerous condition within a reasonable period of time.  This duty is imposed on Caltrans to protect Watson's interest in the avoidance of bodily injury to himself or damage to his chattels ... This differs in kind from a duty of indemnity to hold Watson harmless from the consequences of such an injury to a third party.  Every motorist owes a duty of care to avoid injury to other motorists.  When an injured motorist sues two or more other motorists, their duty to avoid injury to each other is immaterial to the question whether there is a duty of indemnity between the defendants.  That duty must be founded upon a relationship which under the exemplars of the common law or statute gives rise to a duty of complete indemnity, as to which an ancillary duty to defend arises. Watson identifies no such duty in the facts of this case.

In *Burger v. Kuimelis*, 325 F.Supp.2d 1026 (N.D.Cal.2004), insureds brought suit based on allegations that they were secretly overcharged for insurance and insurance brokerage services provided by an insurance broker in connection with

certain construction contracts.  The insurance broker filed a
counterclaim, alleging that EBMC directed Kuimelis not to itemize
the premiums, but, for each project, to combine all charges for
property, general liability, umbrella liability, service fees and
finance charges under single invoices, that this arrangement was
for sound business reasons internal to EBMC and its operations,
and that this representation was false because counterdefendants
intended to use the non-itemized arrangement in a plan to defraud
HUD and its projects.  Kuimelis sought damages for attorney's
fees and expenses under the "tort of another" doctrine.  *Id.*  at
1040-1041.  After reviewing the case law, the district court
ruled:

> [S]ection 1021.6 codifies the tort of another
> doctrine, if at all, only for claims of
> implied indemnity.  Because Kuimelis' claim
> under the tort of another doctrine is not a
> claim for implied indemnity, section 1021.6
> is not applicable.

*Id.* at 1043.  The district court further ruled that Kuimelis had
alleged sufficient facts to state a claim for relief under the
"tort of another" doctrine recognized in *Prentice*.

22.  This case entails a suit over insurance coverage where
the insurer, USF&G, was defrauded when its insured, Lee, falsely
represented that Lee would not engage in construction activities.
USF&G claimed Lee misrepresented its intent in a writing prepared
by Aon.  Lee claimed Aon failed to explain USF&G's conditions for
issuance of the workers' compensation policy and that Aon
negligently failed to obtain a workers' compensation policy

applicable to water parks.  Lee was found to be fraudulent.  Aon
was totally exonerated.  Nonetheless, Aon's alleged fraud,
negligence, and breach of brokerage contract caused it to be sued
by its principal, Lee.  This is not an equitable indemnity case,
as Aon had to defend against Lee's claims in any event, whether
or not USF&G sued Aon based on Lee's claims against Aon and the
alleged misconduct of Aon.  Aon failed to prove that it timely
demanded a defense by Lee to USF&G's third party complaint
against Aon; Aon is not entitled to implied indemnity under
Section 1021.6.

23.  Because the third party "tort of another" exception is
an element of tort damages, to recover attorneys' fees, there
must be a clear violation of a traditional tort duty between the
tortfeasor who is required to pay the attorneys' fees and the
person seeking compensation for those fees.  *Sooy v. Peter*,
*supra*, 220 Cal.App.3d at 1310.

24.  The attorneys' fees recoverable as damages under the
tort of another are only those attorneys' fees attributable to
Aon's defense of USF&G's third party complaint against Aon.  *See
Third Eye Blind, Inc. v. Near North Entertainment Ins. Services,
LLC*, 127 Cal.App.4th 1311, 1325-1326 (2005).

25.  Even if, arguendo, the tort of another were proved,
Lee's fraud caused USF&G to sue Aon, because the substantial
majority of USF&G's claims against Aon arose out of Aon's duties
of contract performance and professional duty to Lee, Aon had to
defend Lee's claims and expend attorney's fees in any event and

the evidence at trial did not establish a reasonable basis for
allocation.

26. Lee, as an applicant for insurance, had a duty to make
full disclosure.  "Each party to a contract of insurance shall
communicate to the other, in good faith, all facts within his
knowledge which are or which he believes to be material to the
contract and as to which he makes no warranty, and which the
other has not the means of ascertaining."  California Insurance
Code § 332.  "Concealment, whether intentional or unintentional,
entitles the injured party to rescind insurance."  California
Insurance Code § 331.  "Neglect to communicate that which a party
knows, and ought to communicate, is concealment."

27.  To the extent the tort of another claim of Aon is,
arguendo, not barred by the statute of limitations, no reasonable
basis exists for severally apportioning attorneys' fees for Aon's
defense of USF&G's claims against Aon, which were the same as
Lee's claims against Aon.  Aon had no claim for recovery against
USF&G arising out of Lee's fraud.

28.  Aon has no independent basis to recover damages against
Lee for Lee's tortious conduct in committing fraud, negligent
misrepresentation and/or negligence against USF&G, except under
the tort of another doctrine.

## CONCLUSION

Based on the above Findings of Fact and Conclusions of Law,
judgment shall be entered as set forth in the accompanying
Judgment Pursuant to Rule 54(b), Federal Rule of Civil Procedure.

IT IS SO ORDERED.

**Dated:**   **August 5, 2009**                    _____/s/ Oliver W. Wanger_____
                                            UNITED STATES DISTRICT JUDGE