1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT FOR THE

7                          EASTERN DISTRICT OF CALIFORNIA

8

| | | |
|---|---|---|
| UNITED STATES FIDELITY & GUARANTY COMPANY, | ) ) | No. CV-F-99-5583 OWW/SMS |
| | ) ) | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND |
| | ) ) | DENYING IN PART USF&G'S BILL |
| Plaintiff, | ) | OF COSTS (Doc. 896) |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| LEE INVESTMENTS LLC dba THE ISLAND, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

18        United States Fidelity & Guaranty Company, American

19  Specialty Insurance Services, Inc., and American Specialty Risk

20  Management, LLC (collectively "USF&G") have filed a Bill of

21  Costs, seeking to recover the following costs from Lee

22  Investments, LLC ("Lee"):[1]

23        Fees of the Clerk                    $150.00
          Fees for service of summons

24  _____

25        [1]USF&G submitted a bill of costs on March 12, 2007 (Docs. 712-
    716).  The bill of costs submitted on August 14, 2009 (Doc. 896),
26  supercedes the earlier bill of costs.

1

| | |
|---|---|
| and subpoena | $7,977.22 |
| Fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case | $35,514.80 |
| Fees for witnesses | $11,546.79 |
| Fees for exemplification and copies of papers necessarily obtained for use in the case | $31,842.09 |
| Docket fees under 28 U.S.C. 1923 | $20.00 |
| Other costs | <u>$14,335.50</u> |
| | $101,386.40 |

Lee has filed objections to the Bill of Costs, asserting that it should be reduced by $64,986.64, resulting in a total cost bill of $36,399.76.

A.   <u>Fees for Service of Summons and Subpoena</u>.

Lee objects to these costs on a number of grounds.

1.   <u>Deposition Subpoenas</u>.

Lee objects to taxing the full costs of deposition subpoenas in this action.  Lee contends that the full amount, $1806.50, should be reduced by half, to $903.25.  In support of this objection, Lee relies on the Declaration of Daniel O. Jamison:

> 2.  I have been the lead attorney for Lee in the above captioned matter since approximately February 2006 and was the lead attorney for Lee in the January/February 2007 jury trial and the April 2007 court trial in this case.  Since spring 2006, I have also represented Lee as lead counsel in the defense of the claim of ... USF&G ... in California Workers' Compensation Appeals

2

Board ('WCAB') Case No. SB 0288749, entitled *Conley v. The Island, et al.,* that USF&G is entitled to rescind the workers' compensation insurance policy that has been the subject of the above captioned action.

3.   Since becoming involved in these two matters, I have read most, if not all, of the depositions that were taken in the two cases before I became involved.  On the record in several of the depositions, there were stipulations between Lee and USF&G that the deposition would be taken jointly in the two proceedings and could be used in both proceedings.  Although USF&G may dispute the application of the stipulation to expert witness depositions, it is and was my understanding that by stipulation and/or notice all of the depositions taken in this action were being taken in both proceedings.

4.   USF&G's claim for rescission in WCAB Case No. SB 0288749 has not yet been adjudicated before the WCAB.  There has been no determination in the WCAB proceeding whether or not USF&G is entitled to rescind the subject insurance policy and no prevailing party has been determined in that proceeding. At the present time, the above captioned court has issued an injunction preventing Lee from seeking to have the WCAB make a determination whether or not USF&G is entitled to rescind the subject policy.

Exhibit A to Mr. Jamison's Declaration are partial copies of the depositions of Richard Miler, Elaine Bartsch, and Stan Sheehan. The Miler and Bartsch depositions were taken in the Federal action.   The Miler deposition states:

MR. SMYTH: [¶] Let's put a stipulation on the record.  This is going to be used in both - potentially used in the Workers' Compensation and the Federal action, but we'll stipulate that the court reporter is relieved of her obligations under the California Code of Civil Procedure with respect to the Workers' Compensation portion; that the witness can sign the deposition under penalty of perjury

3

1     and that if he doesn't sign it within 30 days
     of having received it for his signature, that
2     a certified copy may be used with the same
     force and effect as a signed original.
3

The same stipulation was entered into in the Bartsch deposition.
4
In the Sheehan deposition, the following stipulation was entered
5
into:
6
     **MR SMYTH**: Okay, while we were off the record,
7     we discussed the fact that this deposition
     had been noticed only in the workers'
8     compensation action.  We, among the
     stipulations that I'll propose here ... is
9     that the deposition may be used and should
     have a duplicate cover page for not only the
10     workers' compensation action, but the federal
     court action.  And that the deposition may be
11     used in ... both the federal court and the
     workers' compensation action.  We
12     additionally propose ... for stipulation that
     the witness may have 30 days after receipt of
13     the transcript to make any changes as are
     appropriate and to sign the transcript.  And
14     that if a signed copy is not received and
     copies to the changes provided to counsel and
15     the signature page within 30 days, that a
     certified copy may be used in all proceedings
16     in these two matters with the same force and
     effect as a ... signed original.  This
17     deposition is being taken in connection with
     a case pending in the federal court in
18     California and in a California workers'
     compensation action.  To the extent that
19     there's a stipulation required that the - in
     the event that the deponent does not sign the
20     document in the presence of the court
     reporter, the parties stipulate that that
21     requirement has been relieved and the
     deponent may sign the document under penalty
22     of perjury.

23 The parties so stipulated.

24   Citing *Parkerson v. Borst*, 256 F. 827 (5th Cir.1919), for

25 the proposition that "[u]ntil final judgment, the incidence of

26 costs is not determinable," Lee argues that, because there has

4

been no final determination in the WCAB case, the costs of the depositions should be split between this action and the WCAB case.

USF&G responds that Lee's contention that these costs should be halved because the parties agreed that the depositions would be admissible in the WCAB proceeding is without merit:

> Such costs were incurred in the District Court action. More importantly, the judgment of the District Court under which costs were awarded constitutes a final judgment resolving USF&G's complaint in all forums and is res judicata.

By Memorandum Decision filed on December 2, 2008, (Doc. 864), and by Order filed on December 19, 2008, (Doc.872), the Court ruled that Lee was precluded by res judicata from proceeding with the WCAB action. While this ruling is on appeal to the Ninth Circuit, it nonetheless remains that there is a final Judgment pursuant to Rule 54(b), Federal Rules of Civil Procedure, in this action. Lee's contention that the costs of the deposition subpoenas should be halved because of the possibility that the Ninth Circuit will reverse this Court's rulings has no basis in law. The requested deposition costs are allowed as all three depositions were used in the federal case.

2. Witness Subpoenas.

Lee argues that the cost of witness subpoenas for those witnesses who did not testify at trial should be disallowed, seeking a reduction of $934.56. Specifically, Lee objects to the following costs:

5

| Date | Invoice | Vendor | Description | Amount |
|------|---------|--------|-------------|--------|
| 1/27/07 | 1621 | SoCal Trial Subpoena | Attempt to serve Richard Miler | 110.00 |
| 1/26/07 | 1620 | SoCal Trial Subpoena | Subpoena of Dawn Wilson | 65.63 |
| 2/2/07 | | SoCal Trial Subpoena | Subpoena of Richard Miler & Witness Fee | 448.93 |
| 2/07/07 | 1662 | SoCal Trial Subpoena | Subpoena of Nathan Hoagland | 100.00 |
| 2/11/07 | 1717 | SoCal Trial Subpoena | Attempt to serve Mark Stewart | 100.00 |
| 3/2/07 | 1718 | SoCal Trial Subpoena | Attempt to serve Steve Chadwick | 110.00 |

"In order to award costs for service of subpoenas, the court need only determine whether the subpoenas were reasonable and necessary in light of the facts known at the time of service." *Movitz v. First National Bank of Chicago,* 982 F.Supp. 571, 574 (N.D.Ill.1997), citing *Shea v. Galaxie Lumber & Constr. Co.,* 1997 WL 51655 at *8 (N.D.Ill., Feb. 5, 1997)(costs of service of subpoenas are "recoverable even if the witnesses do not testify at trial; the relevant question is whether the plaintiff 'reasonably believed ... that the testimony would be helpful.'")

USF&G argues that these costs are recoverable, relying on he Declaration of Bruce T. Smyth, counsel for USF&G:

6

**3.   Three of the witnesses who are the
subject of Lee's request for reduction for
costs for subpoenas for witnesses who did not
testify, Nathan Hoagland, Mark Stewart and
Steve Chadwick, were current or former Lee
employees who did not testify because they
could not be located by the process server.
Since they were performing construction work
for Lee at the time of the injury to Diana
Conley, if we had located them, they would
have testified at trial.   The other witness,
Richard Miler, a former Lee employee, would
have been called to testify except that the
testimony of another Lee witness, Lisa
Ehrlich, covered the same topics.   Miler also
could have been called as a witness dependent
on the testimony introduced in Lee's case for
its defense or counterclaims.**

Fees for service of potential trial witness subpoenas are
not made inadmissible if the witness is not called to testify if
it was necessary that the witness be available to give relevant
testimony.   USF&G makes no showing that Miler's testimony was not
cumulative.   Miler's witness and subpoena fees are disallowed.
USF&G has demonstrated that the fees of the other challenged
witnesses were necessary.

USF&G is allowed costs of $7,418.29.

B.   **Fees of Court Reporter**.

1.   **Motion and Trial Transcripts**.

Lee seeks disallowance of $11,269.35 of the $35,514.80 of
costs of the court reporters, which pertain to daily trial
transcripts and motion hearing transcripts.   Lee notes that USF&G
did not obtain prior court approval for these transcripts and did
not obtain Lee's agreement that some or all of the costs of daily

7

transcripts would be a recoverable cost by the prevailing party.[2]
Lee seeks disallowance of the following costs:

| Date | Invoice | Vendor | Description | Amount |
|------|---------|--------|-------------|--------|
| 4/29/02 | 17738 | VARS | COD for transcript of hearing on motion to compel discovery | 286.00 |
| 5/1/02 | 51 | Shavavian Crump | Transcript of hearing | 57.00 |
| 5/20/02 | 990462 | Robert R. Molezzo | Transcript of motion to dismiss amended complaint | 68.00 |
| 1/2/07 | 2814 | Petrilla Reporting | Hearing transcript | 441.60 |
| 1/04/07 | 31290 | Karen Lopez | Hearing transcript 11/20/06 | 489.50 |
| 1/17/07 | 20070013 | Karen Lopez | Hearing transcript | 17.97 |
| 1/19/07 | 31290 | Peggy Crawford | Hearing transcript | 764.50 |
| 1/19/07 | 31290 | Karen Lopez | Motions in limine hearing transcript | 1,034.36 |
| 2/7/07 |  | Peggy Crawford | Trial transcript | 501.62 |

---

[2]Although Lee notes that the Eastern District of California's Local Rules of Practice do not require prior Court approval for a daily transcript, Lee refers to the local rules for the Northern and Central Districts of California and the District of Arizona, which provide that the cost of daily transcripts are not regularly taxable without prior court approval or stipulation by the parties. The local rules of other jurisdictions have no application or relevance in the Eastern District of California.

| | | | | |
|---|---|---|---|---|
| 2/13/07 | | Peggy Crawford | Trial transcript | 637.40 |
| 2/16/07 | | Peggy Crawford | Trial transcript | 46.20 |
| 2/16/07 | | Karen Lopez | Trial transcript | 222.44 |
| 2/21/07 | | Peggy Crawford | Trial transcript | 110.00 |
| 2/21/07 | | Karen Lopez | Trial transcript | 96.80 |
| 3/26/07 | 20070047 | Karen Lopez | Hearing transcript | 27.39 |
| 3/26/07 | 03232007C | Peggy Crawford | Hearing transcript | 47.31 |
| 4/1/07 | 04012007A | Peggy Crawford | Trial transcript | 62.50 |
| 4/4/07 | 041122007A | Peggy Crawford | Trial transcript | 1,949.20 |
| 5/31/07 | 53107 | Peggy Crawford | Trial transcript | 2,522.64 |
| 6/1/07 | 20070085 | Karen Lopez | Trial transcript | 1,840.92 |
| 11/5/08 | 3333 | Petrilla Reporting | Hearing transcript | 45.80 |

28 U.S.C. § 1920(2) allows taxation of "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." As explained in Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 3677, pp. 438-440:

> The basic standard applied by the courts in determining whether to allow the expense of a transcript as a taxable cost is whether the transcript was 'necessarily obtained for use in the case.' This does not mean that the transcript must have been 'indispensable' to the litigation to satisfy this test; it simply must have been 'necessary' to counsel's effective performance or the

9

court's handling of the case.  The transcript
may have been procured either for use at the
trial or after the trial.  But the words 'use
in the case' in Section 1920 mean that the
transcript must have a direct relationship to
the determination and result of the trial.
Taxation will not be allowed if the
transcript was procured primarily for
counsel's convenience.

"As a general rule, daily trial transcript costs should not

be awarded absent court approval prior to the trial ... However,

a District Court may overlook the lack of prior approval if the

case is complex and the transcripts proved invaluable to both the

counsel and the court."  *Manildra Mill. Corp. v. Ogilvie Mills,*

*Inc.*, 76 F.3d 1178, 1184 (Fed.Cir.1996); *see also Maris*

*Distributing Co. v. Anheuser-Busch, Inc.,* 302 F.3d 1207, 1226

(11th Cir.2002), *cert. denied*, 537 U.S. 1190 (2003):

Although we do not believe that the costs
associated with expedited trial transcripts
should be allowed as a matter of course, lest
litigation costs be unnecessarily increased,
the district court found that expedited
transcripts were necessary in this case given
its length and complexity.  Under the
circumstances, we cannot say that the
district court clearly abused its discretion
by reaching this conclusion.

*But see Battenfield of America Holding Co., Inc. v. Baird*, 196

F.R.D. 613, 618 (D.Kan.2000):

While the court expresses no opinion as to
whether daily copy was necessary for counsel
at trial, the court is in the best position
to assess the value of the daily copy to it
... Suffice it to say, daily copy was not
necessary for the court's handling of the
case ... The court cannot recall any
occasions in which it even looked to daily
copy for guidance in analyzing an evidentiary
issue.  While daily copy may have aided the

10

parties in resolving various disputes amongst
themselves, the court is fairly confident
that it could have resolved those issues for
the parties in the absence of daily copy.  In
short, this case was neither so complex nor
so lengthy as to justify imposing such
'special costs' on BKD.

In arguing that the challenged costs should be allowed,
USF&G relies on Mr. Smyth's Declaration:

4.  The trial and hearing transcripts
referenced in Exhibit 3 to the cost bill were
utilized for motions to the Court prior to
and during trial and for preparation for
motions for judgment and closing argument
....

5.  Most of the trial transcript costs to
which Lee objects included only selected
portions of testimony utilized for trial or
specific hearings necessary for preparation
of motions before the Court.  The first
challenged hearing transcript, for April 29,
2002, was the transcript of the hearing
before Magistrate Judge Snyder on motions by
USF&G to compel further responses by Lee to
interrogatories.  The transcript of the
hearing was necessary to understand the scope
of the Court's rulings.  The next challenged
transcript, for May 1, 2002, was for the
hearing on the motions for summary judgment.
The transcript obtained for May 20, 2002,
concerned the 2000 motion by USF&G to dismiss
the amended counterclaim.

6.  The next series of transcripts which Lee
challenges, dated January 2, 4, 17 and 19,
2007, are for transcripts of the hearings
before the Court on November 13 and 20, 2006
and on the hearings on the motions in limine
on January 17 and 18, 2007.  Those
transcripts were necessary to understand the
Court's rulings on key issues concerning the
pretrial proceedings, and in particular, on
the motions in limine.  Indeed, the parties
agreed to split the costs of the transcript
of the hearing on motions in limine three
separate ways, in order to prepare orders on
the motions and to understand the scope of

11

the Court's rulings in order to instruct witnesses as to the scope of their testimony and to conduct examination and cross-examination.

7.   The next series of transcripts which Lee challenges all involve portions of relevant testimony and statements in the case, invoices dated February 1, 13, 16, 21, and March 26 and April 1, 2007.  All of those invoices were provided for extremely limited portions of the trial or testimony, such as opening statements, the hearings on the Rule 50 motions and copies of specific testimony. In most cases, the invoices were for copies of testimony ordered by *other* parties, Lee or Aon.  All of these costs were necessarily incurred in the trial.  In the case of copies of transcripts ordered by other parties, the copies were necessary to prepare responses to the issues likely raised by other parties in the testimony.  For example, if other parties intended to raise issues before the Court based on the trial testimony, USF&G required its own copy to verify the correctness and immediate context of the testimony cited. Portions of the opening statements and transcripts of the testimony of Lee's key witness, Lisa Ehrlich, were needed for preparation of closing argument and cross-examination.

8.   The April 7, 2007 invoice, for a copy of the transcript of the April 4-6 trial, was necessary for the preparation of proposed Findings of Fact and Conclusions of Law for submission to the Court.

9.   The charges in invoices for May 31, 2007 and June 1, 2007, were for USF&G's copies of the transcripts of the entire trial obtained by Lee in connection with its appeal. Although such copies would be needed in the appeal, USF&G obtained the copies in response to any portions of those transcripts which might be referenced by Lee in any future trial of other trial phases, although the other phase issues were subsequently resolved by summary judgment.

10.   The invoice dated November 5, 2008 was

12

1                      for USF&G's copy of the hearing on its motion
for summary judgment on the remaining of
Lee's claims in its counterclaim and that of
the Rexford Parties (as well as of the motion
for injunction) and were needed in case of a
challenge to the Court's rulings.

Based on the standards set forth above, the transcripts for
April 29, 2002, May 1, 2002, May 20, 2002, and November 5, 2008,
were not necessarily obtained for use in the case.  All of these
transcripts were hearings on motions that were subsequently
resolved by Court orders and USF&G provides no valid reasons why
the transcripts were necessary after the motions were taken under
submission.  These costs, totaling $458.80, are disallowed.

The transcripts of the hearings on the motions in limine and
the partial transcripts of the jury trial and the court trial
were necessarily obtained for use in the case.  The motions in
limine were voluminous and complex and counsel was required to
submit proposed orders based on the Court's oral rulings.  Both
the jury trial and the Court trial involved complicated issues
and, as to the Court trial, the transcript was necessary to
prepare Findings of Fact and Conclusions of Law.

However, the cost of the entire trial transcript described
in paragraph 9 of Mr. Smyth's declaration has not been shown to
have been necessarily obtained for use in the case because the
remaining issues in the case were resolved by summary judgment
motions.  Mr. Smyth's declaration makes clear that these costs
were incurred on the possibility that reference to them might
become necessary.  These costs, totaling $4,363.56, are

13

disallowed.

    2.   <u>Deposition Transcripts</u>.

    Lee objects to the $24,245.80 in costs for deposition transcripts.

    Lee argues that only half of these costs should be taxed because of the stipulation that the depositions could be used in both the Federal action and the WCAB action.

    For the reasons stated above, Lee's objection is without merit.

    Lee contends that $1,681.85 of these costs should be disallowed because certain of the depositions were taken purely for investigative purposes and not for trial preparation:

| DATE | INVOICE | DESCRIPTION | AMOUNT |
|------|---------|-------------|--------|
| 9/29/00 | 85747 | Mark Stewart | 388.50 |
| 8/09/01 | 97523ELA | Richard Miler | 796.45 |
| 4/3/02 | 85312 | Deborah Long | 269.80 |
| 4/26/02 | 85615 | D. Wilson | 74.80 |
| 4/30/02 | 17738 | Pamela Lilly | 152.30 |

    In response, USF&G relies on Mr. Smyth's Declaration:

        11.  Although Lee has asserted that costs of
        the transcripts of the depositions it
        challenges were not necessarily taken in
        preparation for trial, portions of the
        deposition testimony of Debra Long, Dawn
        Wilson and Richard Miler were designated for
        trial in the designation of transcripts filed
        with the Court by USF&G.  Lee counter-
        designated substantial portions of that
        testimony ....

This averment is substantiated by Exhibit A to Mr. Smyth's

14

declaration.   In addition, Mr. Smyth avers:

>    12.   Although Lee complains that the costs of
>    the transcripts ... were not prepared for
>    trial, as to the depositions of Debra Long,
>    Dawn Wilson and Pamela Lilly, those
>    depositions were all noticed by Lee in this
>    matter.

That Lee noticed the depositions of Debra Long and Pamela Lilly

is substantiated by Exhibit B to Mr. Smyth's Declaration.   Mr.

Smyth further avers:

>    13.   Although Lee objects to the costs of
>    transcripts of Mark Stewart and Richard
>    Miler, both were employed by Lee or
>    affiliated entities.   Mr. Stewart had
>    responsibility for construction in the water
>    park.   We did not call him as a witness
>    because we were unable to serve him with a
>    subpoena and because we subsequently
>    determined that his testimony would be
>    duplicative of that of Bruce Calomires, who
>    did testify.   Mr. Miler was knowledgeable
>    about the payment of water park construction
>    expenses and of water park construction
>    employees.   USF&G was prepared to call him at
>    trial and in fact had subpoenaed him for
>    testimony, but determined that his testimony
>    would be duplicative of that of Lisa Ehrlich
>    after she testified.

Deposition transcripts are taxable as costs under 28 U.S.C.

§ 1920(2).   Here, from the record, all of the challenged

depositions were taken for trial preparation.   Lee's challenge is

disallowed.

USF&G is awarded costs for fees of the court reporter in the

amount of $30,692.44.

C.   <u>Fees for Witnesses</u>.

1.   <u>Directors or Officers of American Specialty</u>.

Lee objects to the taxation of fees for the following

15

witnesses on the ground that each is an officer or director of American Specialty:

| Witness | Amount |
|---|---|
| Stan Sheehan (senior vice-president & chief underwriting officer | 1,800.49 |
| Dan Weir (chief financial officer) | 1,362.38 |
| Lowell Gratigny (senior vice-president of litigation) | 1,800.87 |

Parties are generally not able to recover witness fees for their own trial attendance. *Barber v. Ruth*, 7 F.3d 636, 646 (th Cir.1993). Lee contends that, where a party is a corporation, generally its officers or directors are required to be present at trial as the corporation's representative or to manage the litigation. Citing *Kemart Corporation v. Printing Arts Research Lab.*, 232 F.2d 897, 901-902 (9th Cir.1956), Lee asserts that, if such representatives are personally involved in the litigation, the cost to attend the trial should not be recoverable.

In *Kemart,* the Ninth Circuit adopted the reasoning of *Perlman v. Feldmann,* 116 F.Supp. 102, 115 (D.Conn.1953), which allowed witness fees as costs for corporate officers:

> 'No recovery [in the action to which they were called as witnesses] was sought from them individually; their interest was not shown to be other than the natural concern of an officer for the welfare of his corporation.  The Clerk's ruling [allowing the fees] was amply supported by the cases which he cited ... Though these were admiralty cases the principle involved is equally applicable to the situation here.

*See also El Dorado Irrigation Dist. v. Traylor Bros., Inc.,* 2007

16

WL 512428 at *9 (E.D.Cal., Feb. 12, 2007)("[I]t is proper for the
court to assess witness fees for directors and officers of a
corporate party who are not personally involved in the
litigation.")

In response to Lee's objections, Mr. Smyth avers:

> 14.  Although Lee seeks to exclude some of
> the costs of witnesses who were also officers
> of American Specialty, USF&G seeks recovery
> only for the costs where those witnesses
> testified or were made available for
> testimony.  Both Dan Weir and Stan Sheehan
> testified during the trial.  Although Lowell
> Gratigny attended large portions of the
> trial, the only expenses submitted are those
> for which he was available for testimony,
> after having been subpoenaed for his trial
> testimony by Lee.  Although it was ultimately
> determined that he need not testify, Mr.
> Gratigny was available for testimony.

Here, none of these witnesses was personally involved in
this action; none were named as parties.  Lee's objection is
without merit.

Although not raised by Lee in its objections to USF&G's bill
of costs, several of the witness fee costs sought by USF&G exceed
the amounts allowed by Section 1920(3) and 28 U.S.C. § 1821.

Stan Sheehan is listed on Exhibit 4 as attending the trial
for two days, incurring a total witness fee of $80.00.  However,
Exhibit 4 seeks subsistence (hotel/meals) for seven days in the
amount of $1,133.49.  The Minutes of the jury trial show that
Stan Sheehan testified in the jury trial on February 7, 2007
(Doc. 627).  Exhibit 4 shows that Mr. Sheehan arrived in Fresno
on February 1, 2007 and departed on February 9, 2007.  USF&G is

17

1  entitled to the witness fee for the two days sought in the bill

2  of costs pursuant to 28 U.S.C. § 1821(b):

3         A witness shall be paid an attendance fee of
       $40 per day for each day's attendance.  A

4         witness shall also be paid the attendance fee
       for the time necessarily occupied in going to

5         and returning from the place of attendance at
       the beginning and end of such attendance or

6         at any time during such attendance.

7  Section 1821(d) provides for a subsistence allowance to a witness

8  "when an overnight stay is required at the place of attendance

9  because such place is so far removed from the residence of such

10  witness as to prohibit return thereto from day to day" "in an

11  amount not to exceed the maximum per diem allowance prescribed by

12  the Administrator of General Services."  In 2007, the GSA per

13  diem for Fresno, California was $79 for lodging and $54 for meals

14  and entertainment.  USF&G is entitled to costs for lodging and

15  meals for Mr. Sheehan in the total amount of $266.00.  USF&G is

16  allowed costs of $1,013.00 for Mr. Sheehan's attendance at trial

17  as a witness, disallowing $876.00 of the $1,880.00 in costs

18  sought by the bill of costs.

19      Dan Weir is listed on Exhibit 4 as attending the trial for

20  one day, incurring a total witness fee of $40.00; Exhibit 4 seeks

21  subsistence for three days in the amount of $489.79.  Mr. Weir

22  testified in the jury trial on February 9, 2007.  (Doc. 629)

23  Exhibit 4 includes a hotel bill for the Radisson Hotel,

24  Indianapolis Airport for the night of February 7, 2007 ($142.60).

25  Mr. Weir arrived in Fresno on February 8, 2007 and departed on

26  February 9, 2007.  USF&G is entitled to the cost of Mr. Weir's

witness fee, lodging in the amount of $158 and meals in the amount of $32.66 (the actual costs sought).  USF&G is allowed costs of $1,066.25, disallowing $566.13 of the $1,362.38 in costs sought by the bill of costs.

Lowell Gratigny is listed on Exhibit 4 as attending the trial for one day, incurring a witness fee of $40.00; Exhibit 4 seeks subsistence for four days in the amount of $727.46. Exhibit 4 establishes that Mr. Gratigny submitted hotel bills for only three nights.  USF&G is entitled to lodging costs in the amount of $237 ($79 x 3) and meals costs in the amount of $179.62 (the actual costs sought).  USF&G is allowed costs of $1,540.03, disallowing $350.84 in costs sought by the bill of costs.

The costs for lodging for Jack Zygner are reduced from $352.28 to $158.00 ($79 x 2) and for meals from $230.45 to, $162.00 ($54 x 3).  USF&G is allowed costs of $642.90, disallowing $262.73 in costs sought by the bill of costs.

As to the costs for Kathy Hacker, Ms. Hacker testified on Friday, February 2, 2007 (Doc. 618) and on Tuesday, February 6, 2007 (Doc. 625).  Exhibit 4 describes costs for hotel and meals for six days (January 29, 2007, January 30, 2007, January 31, 2007, February 1, 2007, February 5, 2007 and February 6, 2007). Costs for hotel and meals on January 29-31, 2007 are disallowed. $237.00 for hotels on February 1, 5, and 6, 2007 are allowed. Costs for food in the amount of $56.43 (actual amount) are allowed.  USF&G is allowed costs $3,293.81, disallowing $643.97 in costs sought by the bill of costs.

19

2. <u>**Expert Witnesses**</u>.

Lee objects to the witness fees for Bennett Bibel ($192.00) and Stan Sheehan ($1,800.49) on the ground that these were expert witnesses who were not appearing as such pursuant to contract, statute, or appointment by the Court.  Therefore, Lee contends, these witness fees must be limited to the $40.00 per day fee paid to other fact witnesses, citing 28 U.S.C. § 1920(6); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987).

Exhibit 4 to USF&G cost bill establishes that Bibel was paid a total of $80 for two days attendance at trial and $112.00 for one day's stay at a hotel.  The cost for the hotel is reduced to $79.00.  Costs of $159.00 are allowed.

As to Mr. Sheehan, Mr. Smyth avers:

> 15.  Although Lee objects to the recovery of the expenses of Mr. Sheehan incurred in connection with his testimony on the additional ground that in testifying as a percipient witnesses he also testified as an expert on the areas of his percipient testimony, as a key witness to the circumstances under which the worker's [sic] compensation policy was issued, he would have testified to the facts even if his testimony as an expert had been excluded.

Lee's objection is meritless.  USF&G is entitled to recover the costs set forth above for Mr. Sheehan's attendance at trial.

USF&G is awarded fees for witnesses in the amount of $8,814.12.

D. <u>**Copying Costs**</u>.

Lee objects to the $31,842.09 in copying costs on several grounds.

20

28 U.S.C. § 1920(4) enables the Court to allow copying costs for any document "necessarily obtained for use in the case" and does not specifically require that the copied document be introduced into the record to be an allowable cost. *Haagen-Dazs Co., Inc. v. Double Rainbow Gourmet Ice Cream, Inc.,* 920 F.2d 587, 588 (9th Cir.1990). "Fees for exemplification and copying 'are permitted only for the physical preparation and duplication of documents, not the intellectual effort involved in their preparation.'" *Zuill v. Shanahan*, 80 F.3d 1366, 1371 (9th Cir.1996), *cert. denied*, 519 U.S. 1090 (1997), quoting *Romero v. City of Pomona,* 883 F.2d 1418, 1428 (9th Cir.1989). Expert research expenses incurred in assembling and preparing the content of exhibits are not recoverable costs. *Romero*, *id.*[3]

Lee asserts that "the majority of USF&G's requests for copies are without any reference or description as to what the copy charges were incurred for or whether they are related to this case" and that "Lee cannot discern whether the copy charges

---

[3]**Lee cites *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 892 (5th Cir.1993) as stating, "The mere recitation with talismanic regularity of the phrase 'necessarily obtained for use in the case' is not sufficient ... Some further showing is necessary." However, there is no such statement in *Coats*. Lee also cites *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 38 F.3d 1429, 1441 (7th Cir.1994), as holding that expenses for copies made solely for the convenience of counsel or the litigant's own use are not recoverable. *Haroco* does not so hold.**
**Lee also cites *M.T. Bonk Co. v. Milton Bradley Co.,* 849 F.2d 1404, 1410 (7th Cir.1991) for the proposition that copying costs may be disallowed when there is no indication whether the charges were in connection with pleadings, correspondence or other documentation in the case or were for USF&G's counsel's own convenience. Again, the case does not support Lee's contention.**

were for USF&G's counsel [sic] own convenience."

Lee further objects to $10,649.12 of the $31,842.09 copying costs on the ground that USF&G has not substantiated that these costs were for copies of papers necessarily obtained for use in the case.  Lee specifically objects to the following costs:

| Date | Invoice | Description | Amount |
|------|---------|-------------|--------|
| 9/27/99 | 10480 | Outside Document Reproductions Complex | 601.05 |
| 10/8/99 | 10480 | Outside Document Reproductions Complex | 654.21 |
| 10/25/99 | 10480 | Outside Document Reproductions Complex | 101.40 |
| 11/8/05 | CC-14004 | Copying and binding of various documents | 132.21 |
| 11/28/06 | CC-144108 | Heavy Litigation Copies | 276.77 |
| 11/30/06 | 282303-1 | Document copy | 138.03 |
| 1/18/07 | CC-26311 | Heavy Litigation Copies | 212.25 |
| 1/11/07 | CC-26132 | Medium Litigation Copies | 416.75 |
| 12/20/06 | CC-25698 | Heavy Litigation Copies | 71.45 |
| 12/29/06 | CC-25852 | Medium Litigation Copies | 261.88 |
| 12/30/06 | CC-25864 | Medium Litigation Copies | 792.45 |
| 12/31/06 | CC-25891 | Medium Litigation Copies | 517.91 |
| 1/9/07 | CC-26105 | Heavy Litigation Copies | 149.22 |

| 2/2/07 | 23849 | Heavy Litigation Copies | 354.80 |
|---|---|---|---|
| 2/2/07 | 9514 | Printing Costs | 1,028.30 |
| 2/5/07 | 9517 | Imaging, Printing & CD creation | 381.97 |
| 2/5/07 | 9521 | Imaging, Printing & CD creation | 109.10 |
| 2/6/07 | 9526 | Imaging, Printing & CD creation | 110.22 |
| 2/8/07 | 9536 | Imaging, Printing & CD creation | 138.26 |
| 2/15/07 | 29460 | Messenger Service to Secretary of State | 153.00 |
| 2/16/07 | 24039 | Heavy Litigation Copies | 170.68 |
| 2/25/07 | CC-26476 | PDF, CD creating, Blowbacks | 51.00 |
| 1/30/07 | 29314 | Messenger Service Dept. of Assessment and Taxation for USF&G corporate records | 294.70 |
| 1/31/07 | | Certificate of Status via Internet of USF&G | 40.00 |
| 1/19/07 | | Expedited copies of Articles of Incorporation of USF&G | 79.00 |
| 2/27/07 | 466131 | Meeting with Bruce Smyth to get case overview and discuss options for graphics (2 hrs @ $195/hr) | 390.00 |
| 2/2/07 | 466131 | Prepared first draft of graphics | 780.00 |

23

| | | | |
|---|---|---|---|
| | | and scanned key documents for use in slides (4 hrs @ $195/hr) | |
| 2/2/07 | 466131 | Met with B. Smyth to review graphics (1 hr @ $195/hr | 195.00 |
| 2/2/07 | 466131 | Continued work on slides (1 hr @ $195/hr) | 195.00 |
| 2/2/07 | 466131 | Met at client's office to revise graphics; continued work back at office (4.5 hrs @ $195/hr) | 877.50 |
| 2/2/07 | 466131 | GoPal revised slides per client's notes | 395.00 |
| 2/2/07 | 466131 | Revised slides/timeline (3 hrs @ $195/hr) | 585.00 |

In response, USF&G relies on Mr. Smyth's Declaration:

17. All of the copying and exemplification costs set forth in Exhibit 5 were incurred by the counsel for USF&G and American Specialty in connection with the litigation of the case. The 'litigants,' American Specialty and USF&G, are located in Indiana and the East Coast and have their own copying facilities for their own use. The costs of copying in-house at Charlston, Revich & Wollitz LLP and through outside vendors, where necessary, were incurred to obtain copies of documents from Lee Investments, Rexford Properties, Aon Risk Services, GAB and Diana Conley and providing service and filing copies regarding the various and numerous motions filed by USF&G and American Specialty and in opposition to Lee's various

24

motions ....

18.  Although Lee challenges the copy charges
as improperly including fees paid to experts
for intellectual efforts in assembling and
preparing the copies, the costs sought are at
the in-house rate of $.10 per page or the
actual charges of the copy service vendors
for the physical preparation and duplication
of documents.

19.  Exhibit 5 also includes the cost of
obtaining certified copies of the articles of
incorporation of USF&G from the Maryland
Department of Assessment and Taxation to
establish that USF&G was in fact incorporated
in the State of Maryland.  Although the
status of incorporation of USF&G in the State
of Maryland was determined from reliable
computerized research records, Lee refused to
accept that computerized information and
required USF&G to incur the expenses of
obtaining articles of incorporation on an
expedited basis and obtain copies.

20.  Exhibit 5 also included sums included
for the preparation of a timeline of events
utilized in USF&G's opening and closing
statements and referred to during the trial
and provided to the jury as well as for the
preparation of graphics setting forth the
relations of the parties from Paulson
Reporting.  USF&G has sought recovery only
for the costs of the expenses utilized to
prepare and revise the presentation slides
and subsequently [sic] documentary timeline
in the sum of $3,412.50, and not the full
expenses of that vendor.

21.  Although Lee objects to the in-house
charges for copies, the charges that reflect
the copying costs which were in fact charged
to USF&G and American Specialty in this
matter, for copies of documents produced,
pleadings, motions, service copies and
exhibits.  The largest portion of the in-
house copy charges were incurred in the
filing and service of motions, pleadings and
deposition designations with this Court and
filings and exhibits utilized during the jury
trial.  Thus, large charges were incurred

25

with the pre-trial motions including USF&G's motion in limine to resolve the case, motions to strike USF&G's affirmative defenses and its motion to dismiss the counterclaim of Rexford Parties. *See* charges dated 9/28/2006 for $343.00 and 10/30/2006 for $960.00 (for a total of $1,303.00).

22.   The next large group of charges centers on the designation of deposition transcripts, the preparation of drafts and responses regarding the pretrial order and the briefing in support of and oppositions to almost 40 motions in limine. *See* in-house charges dated 12/27/2006 for $202.40, $217.70, $448.70, and $12.80 (for a total of $886.60). The next grouping of charges for in-house copies all took place for work shortly before the trial and includes copies of trial exhibits, trial briefs and copies of deposition transcripts. *See* charges dated 1/29/2007 for $10.00, $155.30, $231.70, $6.80, $553.10, $2.00 and $1652.40 and charge dated 2/28/2007 for $906.50 (for a total of $3,517.80). As a result, the in-house copying charges in connection with the jury trial total $5,707.40 alone.

23.   The final large grouping of costs were incurred in connection with the April 4-6, 2007 bench trial, the preparation of proposed findings of fact and conclusions of law and the responses to Lee's various motions to amend the judgment and for new trial. *See* in-house copy charges dated 3/28/2007 for $294.60 and 4/26/2007 for $289.40 (for a total of $584.00).

24.   Although Lee contends that various of the changes of the outside vendors could have been used for other purposes, the records of those invoices demonstrates that such costs were in fact incurred in obtaining documents from third parties in the case or for trial. While in some circumstances, the charges or billing invoices do not set forth the specific documents copied, other available information establishes that the copies were necessarily made in and for the litigation in the case. For example, the entries for October 8, 1999 and October 25, 1999 for

1

2

3

outside document reproductions, were incurred
at the time I worked on the production of
documents for USF&G to Lee and reviewed
documents produced by Lee.

25.  Other document copying costs for outside
services, such as those for November 8, 2005
and November 28, 2006, December 20, 29, 30
and 31, 2006, were ordered by my legal
assistants at the time, Carsi Beechler and
Anna Tom.  Other charges, dated January 18,
2007 and January 9, 2007, reference documents
bearing a 'U' prefix, the prefix utilized for
USF&G trial exhibits in exchanges of
documents among the parties.  The entries for
January 11, 2007 were ordered by the
paralegal assigned only to the trial of the
case, Tom Hayden.  One charge, dated February
2, 2007, was a copy charge for GAB Robbins
documents by another attorney in this office,
Chad Wooten, in connection with documents
obtained for use at trial.  The invoices for
February 2, 5, 6, and 8, 2007 were costs of
copying in connection with the trial of this
matter ordered by the temporary trial
assistant, Jan Williams, located out of the
temporary Fresno office utilized by USF&G's
counsel during the pendency of the trial.

The litigation involved an extended time period, a

construction project, and an injured employee who incurred over

$1,000,000 in medical expenses.  There were three sides to the

case and a large volume of documents.  Because the copying costs

were limited to 10¢ per page and all parties needed voluminous

documents to prepare for and to try the case, the copying costs

have not been shown to unnecessary or excessive.  These costs are

allowed.

USF&G is awarded copying costs in the amount of $31,842.09.

E.   OTHER COSTS.

Lee objects to $9,070.50 of the $14,335.50 of "other costs"

listed on the bill of costs.  These costs are expert witness fees of Arthur Levine on April 25, 2006 ($2,655.00), June 2, 2006 ($2,065.00), June 20, 2006 ($3,613.00, and September 9, 2006 ($737.50).  Lee asserts that Dr. Levine was not a court-appointed expert nor was he authorized pursuant to any statute and that these costs should be entirely disallowed.  *See* 28 U.S.C. § 1920(6); *Crawford Fitting Co., supra,* 482 U.S. at 442.

In response, USF&G relies on Mr. Smyth's Declaration:

> 24.  USF&G and American Specialty also seek the recovery in the interest of justice of all, or at least part, of the expert witness fees paid to Arthur Levine for his deposition testimony, a sum which totaled $9,071.25.  In the case, USF&G and American Specialty were unfairly forced to incur these fees to take extremely lengthy depositions of Dr. Levine necessitated by his repeated changes to his testimony and his lengthy, exhaustive and exhausting testimony about topics which were not properly the subject of expert testimony.  In the limited circumstances when such testimony might be admissible, Dr. Levine's testimony was so obviously biased and lacking in reasonable foundation that it had no probative value.  Most of the topics of Dr. Levine's testimony were excluded by this Court on the motion in limine of USF&G and American Specialty.  In the limited areas where Dr. Levine did testify, his testimony was inherently unbelievable and involved simply the biased taking of a side in litigation rather than appropriate testimony of an expert.  USF&G respectfully request the award of all or at least a portion of the expert witness fees they were compelled to pay in order to elicit largely inadmissible, biased and inherently unbelievable testimony of Dr. Levine.

USF&G cites no authority permitting the Court to award these costs in the interests of justice and none has been found.

28

*Crawford Fitting* **and Section 1920(6) preclude allowance of these**

**other costs.   These costs are disallowed.**

### CONCLUSION

**For the reasons stated, USF&G's Bill of Costs is taxed at**

**the amount of $78,936.94.**

IT IS SO ORDERED.

**Dated:** __**August 2, 2010**__                          _____/s/ Oliver W. Wanger_____
                                                            UNITED STATES DISTRICT JUDGE